Stephen F. Noel (7952)
Ken Brown (15554)
**SMITH KNOWLES, P.C.**
2225 Washington Blvd., Suite 200
Ogden, UT  84401
Telephone:      (801) 476-0303
Facsimile:       (801) 476-0399
Email:            snoel@smithknowles.com
                     kbrown@smithknowles.com

*Attorney for Defendant*

---

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| OGDEN REGIONAL AIRPORT ASSOCATION, INC., a Utah Non-Profit Corporation; *et al*.<br><br>Plaintiffs,<br><br>v.<br><br>OGDEN CITY AIRPORT; and OGDEN CITY, a municipality in the State of Utah,<br><br>Defendant. | **DEFENDANT'S MOTION TO DISMISS**<br><br>Civil No. 1:21-cv-00075-JNP-DBP<br>Judge Jill N. Parish |

Defendant, Ogden City,[1] by and through its counsel of record, Steve Noel and Ken

Brown of the law firm Smith Knowles, hereby submits this motion to dismiss pursuant to Rule

12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[1] Ogden City Airport is one of the municipal divisions within Ogden City's Community and Economic Development department. It is not a separate entity for purposes of municipal governance and management and will be referred to jointly with Ogden City as "Defendant."

## REQUESTED RELIEF AND GROUNDS THEREOF

Defendant respectfully request that the Court dismiss Plaintiffs' complaint in its entirety. Plaintiffs have failed to properly seek certification pursuant to Rule 23 of the Federal Rules of Civil Procedure and could not substantiate their claim for class certification even if properly brought before the Court. The Class Action Fairness Act ("CAFA") deprives the Court of jurisdiction of this matter and Plaintiffs have failed to satisfy the "commonality" requirement of Rule 23 of the Federal Rules of Civil Procedure. *See* 28 U.S.C.A. § 1332(d)(4), (5). In addition, Plaintiffs fail to state a cause of action for promissory estoppel, physical or regulatory takings, or a deprivation of a right to access the Ogden City Airport secured by Section 1983. Finally, Plaintiffs have failed to exhaust their administrative remedies concerning their claim to have been deprived of access to the airport.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that a defendant may move to dismiss a claim for "lack of subject-matter jurisdiction" and for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(1), (6). Rule 12(b)(1) motions to dismiss "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject-matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). On a facial attack, the Court must consider the complaint's allegations to be true. *See Ruiz*, 299 F.3d at 1180.

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 2 of 27

sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In the context of a motion to dismiss, this requires the plaintiff to plead facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. If the allegations state a plausible claim for relief, the claim survives the motion to dismiss. *Id*. at 679.

In this case, the Court lacks subject matter jurisdiction as to Plaintiffs' class action claim and Plaintiffs have failed to state a claim that can withstand dismissal as to their claims for estoppel, physical and regulatory takings, and loss of airport access. While the Court must presume that Plaintiffs' factual allegations are true, Plaintiffs have failed to provide the proper foundation of facts necessary to sustain their claims.

## RELEVANT FACTS

1.      Ogden City is a municipality located in the State of Utah; Ogden City Airport is a division of Ogden City.

2.      Plaintiff ORAA is a Utah non-profit corporation with its principal place of business in Weber County, State of Utah.

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 3 of 27

3.      The remaining Plaintiffs are either individuals residing in the State of Utah or limited liability companies incorporated in Utah with their members residing in the State of Utah. *See* Amended Class Action Complaint for Declaratory Relief, Injunctive Relief, and Just Compensation ("Amended Complaint"), ¶¶ 2-74, Docket No. 7, filed on June 15, 2021.

4.      Plaintiffs have alleged that Defendant deprived them of rights secured pursuant to the parties' respective lease agreements. *See* Amended Complaint, generally, Docket No. 7.

5.      Plaintiffs' injuries are alleged to have occurred in Utah. *See* Amended Complaint, generally, Docket No. 7.

6.      Plaintiffs do not allege that Defendant ever entered into any written promise or assurance that any Lease Agreement would be renewed. *See* Amended Complaint, ¶¶ 125-30, Docket No. 7.

7.      Plaintiffs have not alleged that Defendant ever waived expressly or in writing any right to enforce the provisions of the Lease Agreements. *See id.*

8.      Plaintiffs have not alleged any "taking" of the respective properties for public use; instead, Plaintiffs have alleged that Defendant is intending to not renew lease agreements "whilst the hangar still has useful life and value and using the remainder of that hangar's useful life to earn a profit." *See* Amended Complaint, ¶ 104, Docket No. 7.

9.      Plaintiffs have not alleged that they pursued—let alone exhausted—any administrative remedies in conjunction with their claim that they have been deprived of access to the Airport. *See* Amended Complaint, ¶¶ 147-50, Docket No. 7.

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 4 of 27

## ANALYSIS

1. ***Plaintiffs are not entitled to certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.***

      *a.    Lack of Jurisdiction as to Class Actions where Primary Defendant is a Governmental Entity*

28 U.S.C. § 1332 provides that federal district courts "shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which — (A) any member of a class of plaintiffs is a citizen of a State different from any defendant; (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state." 28 U.S.C. § 1332(d)(2). That section, however, expressly denies the Court jurisdiction over class actions where "the primary Defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief." 28 U.S.C. § 1332(d)(5).

In this case, Defendant is a government entity. As such, the Court lacks original subject matter jurisdiction over this matter and must decline Plaintiffs' request for certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.

      *b.    Class Actions Generally*

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 563 U.S. 338, 348 (2011) (quotation omitted). Rule 23 sets forth the requirements for class certification. Rule 23(a)

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 5 of 27

requires the party seeking certification to demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there is a question of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). These requirements are typically summarized as numerosity, commonality, typicality, and adequacy.

Rule 23 is more than a pleading standard. *Wal–Mart*, 564 U.S. at 350. Hence, the "party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id*. Further, the district court has an independent obligation to conduct a "rigorous analysis" before concluding that Rule 23's requirements have been satisfied. *Id*. Often that analysis requires looking at the merits of a plaintiff's claims. *See id*.

In addition, the parties seeking certification "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). In *Comcast v. Behrend*, the Supreme Court emphasized that the district court has a "duty to take a close look at whether common questions predominate over individual ones." *Id*. at 34 (quotation omitted). The Supreme Court stressed that it may be necessary for a district court to probe behind the pleadings before deciding whether Rule 23(b)'s requirements have been met. *Id*. at 33 (holding that district court abused its discretion by failing to entertain arguments regarding damages, "simply because those arguments would also be pertinent to the merits").

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 6 of 27

Every proposed class action "must be decided on its own facts, on the basis of practicalities and prudential considerations." *Reed v. Bowen*, 849 F.2d 1307, 1309-10 (10th Cir. 1988) (quotation omitted). To gain class-action certification under Rule 23(b)(3), the named plaintiff must demonstrate, and the District Court must find, "that the questions of law or fact common to class members predominate over any questions affecting only individual members." This predominance requirement is meant to "tes[t] whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance is not established simply by alleging a uniform injury. *See Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010)* ("A plaintiff may claim that every putative class member was harmed by the defendant's conduct, but if fewer than all of the class members enjoyed the legal right that the defendant allegedly infringed, or if the defendant has non-frivolous defenses to liability that are unique to individual class members, any common questions may well be submerged by individual ones."); *see also Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326-29 (5th Cir. 2008) (stating that the trial court must look beyond defendant's common course of conduct to consider "how a trial on the merits would be conducted if a class were certified" (quotation omitted)).

In their Amended Complaint, Plaintiffs claim that they are entitled to certification pursuant to Rule 23. Plaintiffs allege numerosity, typicality, and adequacy and that certification as a class is justified. *See* Amended Complaint, ¶¶ 80-83, Docket No. 7. In addition to the lack of jurisdiction stated above, there are at least two other grounds for the Court to decline to exercise

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 7 of 27

jurisdiction over this matter. The first is the "local controversy exception" and the second is the absence of sufficient commonality amongst Plaintiffs' claims.

### b.     The Local Controversy

The Class Action Fairness Act of 2005 ("CAFA") gives parties in class action and mass class action lawsuits access to the federal courts. *See* 28 U.S.C. §§ 1332(d), 1453, and 1711-1715. There are exceptions to this access, however, including the "local controversy exception." The local controversy exception requires federal courts to decline to exercise jurisdiction if (1) more than two-thirds of the proposed class members are citizens of the forum state; (2) the "principal injuries" resulting from the alleged conduct were incurred in the forum state; (3) no class action asserting similar factual allegations has been filed against Defendant in the preceding three years and (4) at least one defendant from whom "significant relief is sought" and whose alleged conduct is a "significant basis" of the claims is a citizen of the forum state.

Congress created the local controversy exception to CAFA to address those removed cases that were primarily intrastate disputes. *See, Coffey, et al. v. Freeport McMoran Copper & Gold, et al., 581 F.3d 1240, 1243 (10th Cir. 2009).* Senate Report 109-14 states:

> This provision is intended to respond to concerns that class actions with truly local focus should not be moved to federal court under this legislation because state courts have a strong interest in adjudicating such disputes. At the same time, this is a narrow exception that was carefully drafted to ensure that it does not become a jurisdictional loophole. Thus, [ ] in assessing whether each of these criteria is satisfied by a particular case, a federal court should bear in mind that the purpose of each of these criteria is to identify a truly local controversy-a controversy that uniquely affects a particular locality to the exclusion of all others.

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 8 of 27

S. Rep. No. 109-14 (2005) available at https://www.congress.gov/congressional-report/109th-congress/senate-report/14/1.

In this case, each of the four conditions for the local controversy exception are met. First, more than two-thirds of the proposed class members are citizens of the forum state. As noted by Plaintiffs in their Amended Complaint, each of the Plaintiffs is an individual, limited liability company, or non-profit corporation residing in Utah. *See* Amended Complaint, ¶¶ 1-74, Docket No. 7. Second, the "principal injuries" were incurred in the forum state; Plaintiffs' allege that their injuries occurred in Utah, not any other state or jurisdiction. *See* Amended Complaint, ¶¶ 87-150, Docket No. 7. Third, there has been no class action asserting similar factual allegations against Ogden City in the last three years. Finally, Ogden City is a municipality located in the State of Utah. This is a local controversy. It involves local claims against local parties. The Court should decline to certify this matter as a class action pursuant to Rule 23.

c.     *Lack of Commonality*

Plaintiffs must demonstrate that there are questions of fact common to their proposed class. Fed. R. Civ. P. 23(a)(2). They must demonstrate that the class members "have suffered the same injury," and this "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. 338, 349 (internal citations omitted). "What matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 9 of 27

generation of common answers." *Wal-Mart*, 564 U.S. at 350 (citing Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)).

In addressing the "commonality" requirement of Rule 23, Plaintiffs must establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (citing Rule 23(b)(3)). It is Plaintiffs' responsibility to demonstrate the validity of the commonality of their claims before the Court can certify this matter as a class action. "[T]he mere raising of a common question does not automatically satisfy Rule 23(a)'s commonality requirement." *Roderick v. XTO Energy*, 725 F.3d 1213, 1218 (10th Cir. 2013). Instead, the common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350; *see Roderick*, 725 F.3d at 1218 ("What matters to class certification ... [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." (quotation omitted)).

Plaintiffs' allegations are insufficient for purposes of Rule 23. While Plaintiffs have implied a kind of universality amongst themselves vis-à-vis their shared status as tenants of Ogden Airport hangars, they have not actually done the work of establishing the basis of their common claims. For example, Plaintiffs allege that improvements have been made to the hangars rented by them. *See* Amended Complaint, ¶¶ 107, 111, 117-18, 135, 138, Docket No. 7.

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 10 of 27

Plaintiffs allege that Defendant's decision to exercise its rights under the contract and not renew the leases constitute a taking of these improvements. Plaintiffs fail, however, to describe or even allege the nature and distribution of these improvements amongst themselves, and thus deprive the Court of the means of assessing this claim. Have all the Plaintiffs installed improvements? Most? Only a few? Plaintiffs also fail to identify what statements were made by Defendant and to whom that form the basis of their "reliance" upon Defendant renewing their lease agreements. Did Defendant promise or imply to each of Plaintiffs that the city would continue to renew their leases? Some of Plaintiffs? One of the Plaintiffs? Plaintiffs have failed to provide the Court with the tools by which the commonality requirements may be reviewed.

Furthermore, there is no elucidation concerning how Rule 23 will provide a streamlined resolution of Plaintiffs' claims. What relief should be made available to Plaintiffs? Guaranteed rights to renew their lease agreements? For how long? Based on what additional criteria? While Plaintiffs have alleged similar violations in Ogden City's "taking" of their hangar improvements, there is no indication or even allegation that the Court may fashion a suitable method of relief for the parties collectively. Rather, what is the case is that the Court will be required to attend to Plaintiffs' individual claims of individual transactions, negotiations, and harms to first verify and then rectify those claims. This is antithetical to a class action matter. The Court should deny Plaintiffs' request to certify this matter as a class action.

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 11 of 27

2.      *Plaintiffs have failed to allege facts sufficient to sustain a claim for estoppel and waiver.*

Plaintiffs' first cause of action is for estoppel. Plaintiffs do not indicate whether their claim for estoppel is equitable or promissory in nature. "The distinction [Utah courts] have drawn between these two legal concepts is essentially that in the case of equitable estoppel the representation is made of an existing or previously existing fact, and in promissory estoppel it is of a future fact. In both situations, it is the representor of the incorrect fact who is seeking to avoid responsibility for the error. [Utah courts] have treated equitable estoppel as a defense raised by a party against whom relief is sought when the other party misrepresented facts, and promissory estoppel as a cause of action against the misrepresentor when it fails to perform." *Youngblood v. Auto-Owners Ins. Co.*, 158 P.3d 1088, 1091-92. As the court in *Youngblood* noted, the distinction between equitable and promissory estoppel has been "mixed and muddled." *Id.* at 1092. In this case, Plaintiffs are seeking to prevent Ogden City from enforcing provisions of the Lease Agreements based on the city's historical conduct and "waiver" of the relevant provisions. Because Plaintiffs are seeking affirmative relief, rather than presenting a defense against a claim brought by Ogden City, Plaintiffs' claim is most appropriately characterized as one for promissory estoppel.

a.      *Promissory Estoppel*

i.      Estoppel claims are generally unavailable against government entities.

As a rule, estoppel may not be invoked against a government entity. *Terry v. Retirement Bd.,* 157 P.3d 362, 364-65 (Utah Ct. App. 2007) (quoting *Anderson v. Public Serv. Comm'n,* 839

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 12 of 27

P.2d 822, 827 (Utah 1992)). This is because the doctrine of estoppel—were it to have full force against governmental entities—would "interfere with the discharge of governmental duties or where the officials on whose conduct estoppel is sought to be predicated acted beyond their power." *Kitsap-Mason Dairymen's Ass'n v. Washington State Tax Comm'n*, 467 P.2d 312 (Wash. 1970). There is a "limited exception" in "unusual circumstances where it is plain that the interests of justice so require." *Terry*, 157 P.3d at 364-65 (citation omitted). This exception may be applied "only if the facts may be found with such certainty, and the injustice suffered is of sufficient gravity, to invoke the exception." *Id.* (citations and internal quotation marks omitted).

The rare exceptions where Utah courts have allowed estoppel to be employed against the government have involved very specific **written** representations by authorized government entities. For example, in *Celebrity Club, Inc. v. Utah Liquor Control Commission, 602 P.2d 689 (Utah 1979)*, an applicant for a liquor license inquired whether its proposed location would comply with a statutory requirement that it not be located within "six hundred feet of any public or private school, church, library, public playground or park...." Utah Code Ann. § 16-6-13.5 (repealed 1985). The Liquor Control Commission responded in writing that "the location of the proposed liquor store in your proposed private club facility satisfies the six hundred foot requirement." *Celebrity Club, Inc., 602 P.2d at 691.* In reliance on this explicit representation, the applicant expended roughly two hundred thousand dollars to complete construction on the club. When the Commission subsequently refused to issue a license, the court held that the government was estopped from denying the license for violation of the statute.

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 13 of 27

In *Eldredge v. Utah State Retirement Bd.,* 795 P.2d 671 (Utah Ct.App.1990), a representative of the Utah State Retirement Office assured a county employee that he would receive credit toward retirement for over six years of service he had accrued prior to a temporary break in his employment with the county. Eldredge received promises orally and **in writing** that he would be credited with the years in question. *Eldredge,* 795 P.2d at 672–73. Relying on these explicit representations, Eldredge chose to participate in an early retirement option. The court held that the county was later estopped from denying Eldredge credit for the improperly credited years. *Id.* at 678.

Each of those cases involved clear, written, and well-substantiated representations by persons with authority on the part of the government entity in question. There was no such representation here. Instead, Plaintiffs have simply alleged a "course of conduct" on the part of Defendant that they claim should be read proscriptively against the government's decision to not renew lease agreements. This is insufficient. The parties' agreements are contained in the Lease Agreements, which contain anti-waiver provisions, abandonment clauses, limited rights of renewal, and integration clauses. Plaintiffs cannot read additional rights into those contracts absent written consent on the part of Ogden City.

      ii.      Plaintiffs have failed to plead the necessary facts to sustain a claim for promissory estoppel.

Even if Plaintiffs could employ estoppel against Defendant, they have failed to plead the necessary facts to sustain a claim for promissory estoppel. Utah courts have adopted the

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 14 of 27

Restatement (Second) of Contracts, § 90. *See Tolboe Construction v. Staker Paving & Construction*, 682 P.2d 843, 845-46 (Utah 1984). That section states in pertinent part:

> A promise made which the promisor should reasonably expect to induce action or forbearance on the part of the promisee ... and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

To prove promissory estoppel, a plaintiff must demonstrate that (1) they acted with prudence and in reasonable reliance on a promise made by the defendant; (2) the defendant knew that the plaintiff had relied on the promise which the defendant should reasonably expect to induce action or forbearance on the part of the plaintiff or a third person; (3) the defendant was aware of all material facts; and (4) the plaintiff relied on the promise and the reliance resulted in a loss to the plaintiff. *Skanchy v. Calcados Ortope SA*, 952 P.2d 1071, 1077 (Utah 1998) (citing *Tolboe Constr.*, 682 P.2d at 845-46; *Andreason v. Aetna Cas. & Sur. Co.*, 848 P.2d 171 (Utah Ct. App.1993)).

A party claiming promissory estoppel must show that an offer or promise was made on which the party based his or her reliance. See *Skanchy*, 952 P.2d at 1077; *Tolboe Constr.*, 682 P.2d at 845-46; *Restatement (Second) of Contracts § 90 (1979)*. In addition, the alleged promise must be reasonably certain and definite, and a claimant's subjective understanding of the promisor's statements cannot, without more, support a promissory estoppel claim. *See, e.g., Rose v. Allied Dev. Co.*, 719 P.2d 83, 87 (Utah 1986) *criticized on other grounds by Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033 (Utah 1989).

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 15 of 27

In this case, while Plaintiffs have claimed estoppel, they have not identified or even alleged **any promise** on the part of Ogden City that would qualify for estoppel. Plaintiffs fail to allege any statement or promise on the part of Ogden City that would constitute a statement sufficient to justify a reasonable expectation of forbearance on their part. Indeed, all Plaintiffs have alleged are "historical business dealings and course of conduct" that "created a reliance amongst members of the class to warrant estoppel and injunctive relief." This, however, is not sufficient, as all Plaintiffs have alleged is that Ogden City behaved consistent with the city's rights pursuant to the Lease Agreements. No provision of the Lease Agreements required Defendant to renew the leases in perpetuity or conferred a kind of "life estate" to the tenants. *See, e.g.,* Durbano Lease Agreement, Exhibit A. While nothing would prevent Ogden Airport from entering into a subsequent Lease Agreement following the termination of the original leases, there was no contractual obligation to do so. This is especially the case where, as here, the Lease Agreements at issue contain Renewal Provisions, Title 8 Provisions, and Anti-Waiver Provisions.[2] Ogden City cannot be estopped from exercising its rights pursuant to the Lease Agreements.

---

[2] For example, a typical lease in this matter contains a "First Right of Refusal to Renew Lease" provision that provides the tenant with a first right of refusal for a renewal term of up to five years. *See* Durbano Lease Agreement, p. 3, Exhibit A. The lease also makes clear that the tenant acknowledges that Ogden City Ordinances are applicable to the lease, and that the amendment of Title 8 may affect the terms thereof. *Id.* at p. 9. The lease also states that "[t]he failure of the Lessor to insist upon strict enforcement of any of the terms, conditions, and covenants herein shall not be deemed a waiver of any rights or remedies that the Lessor may have and shall not be deemed a waiver of any subsequent breach or default by Lessee of the terms, conditions, and covenants herein contained."

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 16 of 27

Were Plaintiffs' argument concerning estoppel to be sustained, the ramifications for municipal contracts would be enormous. Governmental entities would be liable for the perpetual renewal of all lease agreements if the tenant claimed that they subjectively "understood" that the lease would be renewed ad infinitum. Plaintiffs have not alleged the existence of any promise to enter into new and subsequent lease agreements between themselves and Defendant, but instead have cited a "course of conduct" on the part of Defendant that gave them a false sense of security. This does not meet the standard set forth in Utah law. *See* *Skanchy*, 952 P.2d at 1077. A such, Plaintiffs' claims for promissory estoppel must be dismissed.

iii.   <u>Defendant has not waived any right to enforce the<br>provisions of the Lease Agreements.</u>

Plaintiffs do not allege that Defendant has breached any of the provisions of the Lease Agreements. Instead, Plaintiffs claim that Defendant "waived" its right to the enforcement of these provisions. *See* Amended Complaint, ¶¶ 108, 153-54, Docket No. 7. Plaintiffs have failed to allege facts sufficient to justify this claim. "A waiver is the intentional relinquishment of a known right. To constitute waiver, there must be an existing right, benefit or advantage, a knowledge of its existence, and an intention to relinquish it." *Soter's, Inc. v. Deseret Fed. Sav. & Loan Ass'n*, 857 P.2d 935, 942 (Utah 1993) (quotations and citation omitted). Courts do not lightly consider a contract provision waived; a party may establish waiver only where there is an "intentional relinquishment of a known right." *Wilson v. IHC Hosps., Inc.*, 289 P.3d 369, 387 (Utah 2012) (citation omitted). The intent to relinquish or waive a contractual right must be distinct. *See* *Soter's, Inc.*, 857 P.2d at 942. While the waiver may be implied, the party asserting

implied waiver must establish that the other party "intentionally act[ed] in a manner inconsistent with its contractual rights...." *Meadow Valley Contractors, Inc. v. State Dep't. of Transp.*, 266 P.3d 671, 682-83 (Utah 2011) (citation omitted); *abrogated on other grounds by Mounteer Enterprises, Inc. v. Homeowners Ass'n for the Colony at White Pine Canyon*, 422 P.3d 809, 812 (Utah 2018).

In this case, there is simply no allegation that Defendant ever waived in writing any rights pursuant to the Lease Agreements. There is also no evidence or allegation that Defendant "intentionally act[ed] in a manner inconsistent with its contractual rights...." *Meadow Valley Contractors, Inc.*, 266 P.3d at 682-83. Plaintiffs have failed to allege a prima facie case of waiver. As such, Plaintiffs cannot invoke promissory estoppel on the basis that Defendant has expressly or impliedly waived the right to enforce any provisions of the Lease Agreements.

### 3.   *Plaintiffs cannot satisfy the requirements for a physical or regulatory takings claim.*

Plaintiffs claim that Ogden Airport's Business Plan "lays out its scheme and intent to take possession of each and every hangar located within its compound whilst the hangar still has useful life and value in order to turn a profit thereon through facility lease agreements." *See* Amended Complaint, ¶ 134, Docket No. 7. Ogden Airport will do this, Plaintiffs claim, by exercising its rights pursuant to the Lease Agreements or not renewing those Lease Agreements at the time of their termination. "[T]he Business Plan and Title 8 effect a physical taking by depriving The Separate Hangar Owners of their personal property rights, including the significant improvements installed at the various hangars, and deprives the Hangar Owners of core property rights including the right to exclude others from their hangars, the right to possess

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 18 of 27

and use their hangars for their own enjoyment, and the right to dispose of their property as they see fit."

Plaintiffs' claim is nonsensical. In the first place, if Plaintiffs' claim that Defendant has deprived them of a right secured pursuant to the Lease Agreement, their proper cause of action is for breach of contract—not physical or regulatory takings. Second, it is not and cannot be the case that a municipality exercising its rights pursuant to contract is a "taking" of a property right belonging to the opposite party, because the party has no right to the government entity not exercising its rights pursuant to the contract. Any such right would, of course, need to be bargained for in the contract. And Plaintiffs do have rights to renew their leases, they just do not have the right to do so in perpetuity—nor could they. As discussed below, Plaintiffs' claim that Ogden City's actions constitute a taking is without support and will be analyzed jointly.

   a.   *Plaintiffs' claims properly sound in breach of contract—not physical or regulatory takings.*

As noted by the Tenth Circuit, "[p]roperty interests are not created by the Constitution, but rather by independent sources such as state law." *Kirkland v. St. Vrain Valley Sch. Dist. No. Re-1J,* 464 F.3d 1182, 1189 (10th Cir. 2006). "Thus, constitutionally protected property interests are created and defined by statute, ordinance, contract, implied contract and rules and understandings developed by state officials." *Id.* (quotation omitted). A plaintiff suing in connection with a government contract "is entitled to a takings remedy only if it is foreclosed from bringing a breach of contract action, *i.e.,* if its contract rights have been 'taken'." *Pi Electronics Corp. v. United States,* 55 Fed.Cl. 279, 285 (Fed. Cl. 2003); *Hughes*

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 19 of 27

*Communications v. United States,* 271 F.3d 1060, 1070 (Fed. Cl. 2002); *Castle v. United States,* 301 F.3d 1328, 1342 (Fed. Cir. 2002). In other words, "[a] takings claim has limited applicability when a claimant has a viable breach remedy." *Pi Electronics,* 55 Fed. Cl. at 285. "This is so because '[v]irtually every contract operates, not as a guarantee of particular future conduct, but as an assumption of liability in the event of non-performance.' " *Id.*

As the Court of Federal Claims explained in *Hughes,* "[t]akings claims rarely rise under government contracts because the Government acts in its commercial or proprietary capacity in entering contracts, rather than its sovereign capacity. *Hughes,* 271 F.3d at 1070." "[T]he concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim." *Sun Oil Co. v. United States,* 215 Ct.Cl. 716, 572 F.2d 786, 818 (1978) (citation omitted). "Accordingly, remedies arise from the contracts themselves, rather than from the constitutional protection of property rights." *Id.* If the government's breach of a contract could serve as a taking under the Fifth Amendment, "then nearly all government contract breaches would give rise to compensation under the Fifth Amendment." *Hughes*, 271 F.4d at 1070.

While a lease interest is a property interest, "the concept of a taking as a compensable claim theory has limited application ... [even when a lease is involved] when those rights have been voluntarily ... created by contract." *Sun Oil Co. v. United States,* 572 F.2d 786, 818 (Ct. Cl. 1978). In such instances, as with other government contracts, interference with such contractual

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 20 of 27

rights generally gives rise only to a breach of contract action. *Id.*; *see also Zoeller v. United States,* 65 Fed.Cl. 449, 460-62 (Fed. Cl. 2005).

In this case, Plaintiffs have brought takings claims to obtain redress for a breach of contract. Plaintiffs allege that they have obtained rights pursuant to their Lease Agreements and that Defendant is acting in violation of those rights by refusing to renew their leases. This is a claim for a breach of contract and the Court should dismiss Plaintiffs' taking claim on this basis.

        b.      *Plaintiffs' claims for physical and regulatory takings fail as a matter of law.*

Even if Plaintiffs' claims could be construed as physical and regulatory takings claim as opposed to ones for breach of contract—Plaintiffs have failed to state a claim for relief. The Fifth Amendment to the United States Constitution provides, in relevant part, that "private property [shall not] be taken for public use, without just compensation." U.S. CONST. AMEND. V. The Constitutional proscription on uncompensated takings, which has come to be known as the "Just Compensation Clause," applies to the States through the Fourteenth Amendment. *See Chicago, B. & Q.R. Co. v. Chicago,* 166 U.S. 226, 239 (1897). "To make a cognizable claim of a taking in violation of the Fifth Amendment, the plaintiffs must first show that they possess a recognized property interest which may be protected by the Fifth Amendment. The plaintiffs must point to credible sources for their claimed property interest ... 'such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.' " *Wash. Legal Found. v. Mass. Bar Found.,* 993 F.2d 962, 973 (1st Cir. 1993) (quoting *Bd. of Regents v. Roth,* 408 U.S. 564, 577 (1972)). Assuming that the plaintiff can establish a constitutionally

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 21 of 27

protected property interest, the plaintiff must next show that the challenged action "cause[d] an illegal taking of th[at] interest[ ]." *Wash. Legal Found.,* 993 F.2d at 974. A physical taking occurs when "the government physically intrudes upon a plaintiff's property." *Id.* A regulatory taking occurs when a governmental enactment leaves a property owner with "*no* productive or economically beneficial use" of his property, *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1017 (1992) (emphasis in original), or prevents the property owner from enjoying "some—but not all—economic uses." *Harris v. City of St. Clairsville,* 330 Fed.Appx. 68, 76 (6th Cir. 2008).

      In this case, Plaintiffs have failed to allege a credible property interest or a governmental "taking" on the part of Defendant for a public use; the alleged "taking" is Ogden City's decision to not renew a lease agreement. The Lease Agreement clearly spells out the rights of the parties concerning the leased premises and their rights and obligations consistent therewith. As discussed above, the leases provide for fixed terms, rights of first refusal for tenants and the right to renew for a certain period, and the right for the tenant to remove any improvements erected on the premises. There is no right in the Lease Agreements to unlimited, guaranteed, and perpetual renewals. Plaintiffs are claiming a right secured by the Lease Agreement—the right to perpetual renewal—without having bargained for or negotiated such a right. Even assuming the truth of Plaintiffs' claim, this is not a physical or regulatory taking but a breach of the parties' agreement and should be characterized as such.

      Second, Plaintiffs have failed to allege that Defendant is "taking" any property interest for public use. This is recognized by Plaintiffs in their Complaint:

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 22 of 27

> The Airport's Business Plan lays out its scheme and intent to take possession of each and every hangar located within its compound whilst the hangar still has useful life and value in order to turn a profit thereon through facility lease agreements.

*See* Amended Complaint, ¶ 134, Docket No. 7. There is no allegation or claim that the property is going to be converted or used for a public purpose such as to justify the invocation of eminent domain. This is because no such use is contemplated and no such invocation is necessary; this is a contractual matter between Ogden City and Plaintiffs. It is not a "taking for public use" of any property interest owned by Plaintiffs.

Finally, Plaintiffs' claim for a physical and regulatory taking is contrary to the plain purpose of the Fifth Amendment and would wreak havoc upon governmental entities' efforts to manage their lease and license agreements. Governmental entities such as Ogden City and Ogden Airport enter into leases and similar kinds of agreements all the time. Plaintiffs' claim, that Ogden Airport's refusal to renew lease agreements constitutes a taking of physical property, would subject municipalities to an endless slew of takings claims. Cities could not enter into lease or license agreements without being exposed to the risk that upon the conclusion of the lease or license term they would be on the hook for a renewal guaranteed by the tenant or licensee's threat of litigation for a taking. It is one thing to be subject to potential liability for the breach of a contract, it is a wholly other thing to be exposed to liability grounded in the contract but totally independent of its provisions through a misappropriation of the Fifth Amendment.

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 23 of 27

**4.      *Plaintiffs' claim that they have been unlawfully deprived of access to the airport is a breach of contract claim—not a claim under Section 1983—and they have failed to exhaust their administrative remedies concerning this claim.***

Finally, as discussed above, Plaintiffs' claim that their unauthorized deprivation of airport access is a violation of a right guaranteed by Section 1983 is wholly without support—as recognized by Plaintiffs' own complaint. Plaintiffs claim that they "lawfully applied for and received security badges under the Airport's Tenant Security Program in compliance with the regulations set forth by TSA." *See* Amended Complaint, ¶ 148, Docket No. 7. That TSA required Defendant to establish the security program is irrelevant; the alleged infringement concerns Plaintiffs' right to access the premises in accordance with the guidelines set forth by Defendant in the Airport's Tenant Security Program. This claim, like Plaintiffs' claim for takings, is a claim for a breach of contract on the part of Defendant—not a violation of federal rights.

The United States Supreme Court has held that a simple breach of contract claim does not give rise to a claim under 42 U.S.C. § 1983. In *Shawnee Sewerage & Drainage Co. v. Stearns,* 220 U.S. 462, 31 S.Ct. 452, 55 L.Ed. 544 (1911), the Court held that when "[a] simple breach of contract is ... alleged[,] .... [t]he breach of a contract is neither a confiscation of property nor a taking of property without due process of law." *Id.* at 471, 31 S.Ct. 452. Other federal courts have also found that breach of contract claims do not fall within the scope of constitution violations that Section 1983 protects. The Supreme Court has affirmed that, where a state provides a remedy thought a breach of contract suit in state court, there is no due process violation where a contract is breached by the state. *See Lujan,* 532 U.S. at 195-96.

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 24 of 27

If the state provides a remedy through a breach of contract action in state court, there is no due process violation. *Lujan,* 532 U.S. at 195-96. As noted by the Sixth Circuit, "it is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a state into a federal claim." *Taylor Acquisitions, L.L.C. v. City of Taylor,* 313 Fed.Appx. 826, 831 (6th Cir. 2009) (quotation omitted). *Ramsey* explained that "[a] state breach of contract action is most clearly an adequate remedy for a property deprivation when the only basis for federal jurisdiction is that a state actor is one of the contracting parties." *Ramsey v. Bd. of Educ. of Whitley County, Ky.,* 844 F.2d 1268, 1274-75 (6th Cir.1988). If Plaintiffs claim that they have been deprived of their right to access the premises in accordance with the Airport's Tenant Security Program, they should bring a claim for a breach of contract against Defendant—not fabricate a supposed right of access under Section 1983.

Furthermore, Plaintiffs have failed to exhaust their administrative remedies. Ogden City Code, Section 8-1-5 outlines the grievance procedure for any person challenging a decision of the Ogden Airport Manager. *See* Ogden City Code, § 8-1-5. That section states that any "person aggrieved by a decision of the Airport Manager or any person whose compliance with this title would create severe hardship may request a hearing before the Chief Administrative Officer or his/her designated representative. Such request shall be made in writing and such hearing shall be held within ten (10) days of receipt of said request." *See id*. Following the request, the person may present all evidence, records, and testimony pertinent to the challenged decision. *See id*. The Chief Administrative Officer has fifteen days to provide a final decision concerning the challenge. *See id*. Plaintiffs have not alleged that they were denied relief pursuant to this

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 25 of 27

section—because no such relief was ever sought. Before Plaintiffs bring a claim concerning a decision to deny keycard access, they should be at least required to present that claim in accordance with the proper municipal procedures.

## **CONCLUSION**

In light of the foregoing, Defendant respectfully request that the Court grant their motion to dismiss and dismiss Plaintiffs' complaint in its entirety.

DATED this 23rd day of August, 2021.

SMITH KNOWLES, P.C.
/s/ Stephen F. Noel
Stephen F. Noel
Ken Brown
*Attorneys for Defendant Ogden City*

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 26 of 27

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of August, 2021 I filed the foregoing pleading electronically through the E-filing/Tybera system.  I certify that on such date I served the foregoing pleading on the following parties by electronic means through the federal courts online filing system:

Douglas M. Durbano
John E. Keiter
DURBANO LAW FIRM, P.C.
3103 S. 1730 E.
Salt Lake City, Utah 84106
office@durbanolawfirm.com
john@durbanolawfirm.com

Bruce R. Baird
2150 S. 1300 E., 5th Floor
Salt Lake City, Utah 84106
bbaird@difficultdirt.com

/s/ Shannon Strausbaugh
Paralegal

Defendant Ogden City's Motion to Dismiss
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 27 of 27

# EXHIBIT A

ai - 0401

# CONTRACT CHECKLIST

*date: 6/11/08*
*sent to Recordas*

| | |
|---|---|
| **Contracting Agency:** | Durbano Properties LLC |
| **Project:** | New Hangar Lease S-631 |
| **Dept/Division:** | CED |
| **Contact:** | Ed Rich |
| **Phone:** | 629-8251 |
| **Explanation/reason for agreement:** | New Hangar Lease Agreement w/ Durbano Prop. LLC |

***Please verify and check off the following boxes before forwarding to the Recorder's Office for routing. If not applicable, indicate by lining through the item.***

☑ Ogden City Corporation  **OR**  ☐ Redevelopment Agency

Contract is for: ☐ Public improvement/construction ☐ Goods ☐ Services

☐ Preliminary review by Attorney's Office – Name: _____

☑ Minimum of 2 (two) *original* copies of agreement. Does the agreement include the following:

- ☐ *Original* signature of contracting agency
- ☐ Address/phone # of contracting agency
- ☐ All exhibits (including scope of services)
- ☐ Notice of Award
- ☐ Insurance/Worker's Comp provisions/certificates
- ☐ Performance/payment bond
- ☐ Indemnification/hold harmless agreement
- ☐ Initials of Department Director/Division Manager

Purchasing procedures: ☐ Competitively bid ☐ Telephone quotes ☐ Other

☐ Sole source – *SIGNED AUTHORIZATION MUST BE ATTACHED*

☐ Agreement requires expenditure of funds – budget account number: _____

☐ Amends previously approved agreement – agreement identifying number: _____

☐ Agreement will use grant funding – indicate agency: _____

### To avoid delays in routing, please ensure ALL required information has been included as indicated above.

| NOTES: | ROUTING: | INITIALS: | DATE: |
|---|---|---|---|
| | Recorder's Office | lp | 6/11 |
| | ☑ Comptroller's Office | | |
| | Recorder's Office | | |
| | ☑ Attorney's Office-final review | lp | 6/17 |
| | Recorder's Office | | |
| | ☐ Management Services Director | | |
| | Recorder's Office | | |
| | ☑ Dept/Div/CAO/Mayor | | |
| | ☑ Recorder's Office – attesting | cm | 6/17 |
| | Identifying Number: 2008-297 | | |
| | Add'l agreements/copies returned | lp | 6/11 |

## HANGAR S-631

### HANGAR GROUND LEASE AGREEMENT

### OGDEN HINCKLEY AIRPORT

### LESSOR: OGDEN CITY CORPORATION

### LESSEE:  **Durbano Properties LLC**

### DATE:  **May 1, 2008**

### INDEX

| | | |
|---|---|---|
| SECTION I | PREMISES | PAGE  3 |
| SECTION II | TERM | PAGE  3 |
| SECTION III | FIRST RIGHT OF REFUSAL TO RENEW LEASE | PAGE  3 |
| SECTION IV | LESSEE'S RIGHT TO REMOVE IMPROVEMENTS | PAGE  4 |
| SECTION V | RENTALS, FEES AND CHARGES | PAGE  4 |
| SECTION VI | USE OF PREMISES | PAGE  5 |
| SECTION VII | CONSTRUCTION IMPROVEMENTS | PAGE  6 |
| SECTION VIII | OBLIGATIONS OF LESSEE | PAGE  6 |
| SECTION IX | INDEMNIFICATION AND HOLD HARMLESS | PAGE  8 |
| SECTION X | TITLE 8, OGDEN CITY ORDINANCES | PAGE  9 |
| SECTION XI | INSURANCE | PAGE  9 |
| SECTION XII | PERMITS, LICENSES AND CERTIFICATES | PAGE  10 |
| SECTION XIII | ASSIGNMENT | PAGE  11 |
| SECTION XIV | RIGHT OF ENTRY AND INSPECTION | PAGE  11 |
| SECTION XV | RULES AND REGULATIONS | PAGE  11 |
| SECTION XVI | GOVERNMENTAL RESERVATIONS AND RESTRICTIONS | PAGE  12 |
| SECTION XVII | LESSOR'S RIGHT OF CANCELLATION | PAGE  12 |

| SECTION XVIII | LESSEE'S RIGHT OF CANCELLATION | PAGE | 13 |
| SECTION XIX | FORCE MAJEURE | PAGE | 14 |
| SECTION XX | DESTRUCTION OF PREMISES | PAGE | 14 |
| SECTION XXI | COSTS OF SUSTAINING AN ACTION FOR BREACH OR DEFAULT | PAGE | 15 |
| SECTION XXII | PARTIAL INVALIDITY | PAGE | 15 |
| SECTION XXIII | ABANDONMENT | PAGE | 15 |
| SECTION XXIV | AFFIRMATIVE ACTION | PAGE | 15 |
| SECTION XXV | UNLAWFUL USE | PAGE | 16 |
| SECTION XXVI | NONDISCRIMINATION | PAGE | 16 |
| SECTION XXVII | LEASE SUBORDINATE TO AGREEMENTS WITH U.S.A. | PAGE | 16 |
| SECTION XXVIII | WAR OR NATIONAL EMERGENCY | PAGE | 17 |
| SECTION XXIX | DEVELOPMENT OF AIRPORT | PAGE | 17 |
| SECTION XXX | AIRPORT FACILITIES | PAGE | 17 |
| SECTION XXXI | BANKRUPTCY | PAGE | 17 |
| SECTION XXXII | TAXES AND ASSESSMENTS | PAGE | 18 |
| SECTION XXXIII | MARGINAL CAPTIONS | PAGE | 18 |
| SECTION XXXIV | AMENDMENTS TO BE IN WRITING | PAGE | 18 |
| SECTION XXXV | SUCCESSORS IN INTEREST | PAGE | 18 |
| SECTION XXXVI | NONEXCLUSIVE RIGHTS | PAGE | 19 |
| SECTION XXXVII | WAIVER OF RIGHTS | PAGE | 19 |
| SECTION XXXVIII | NOTICES | PAGE | 19 |
| SECTION XXXIX | HOLDOVER | PAGE | 19 |
| SECTION XXXX | TIME | PAGE | 19 |

## HANGAR GROUND LEASE AGREEMENT

LEASE AGREEMENT effective _____ **May 1, 2008** , between OGDEN CITY, a municipal corporation of the State of Utah, herein called Lessor, and **Durbano Properties, L.L.C.** ,of **Layton**, Utah, herein called Lessee.

## RECITALS

A.    Lessor owns and operates at the OGDEN-HINCKLEY AIRPORT located in Weber County, State of Utah, herein called Airport.

B.    Lessee desires to lease a parcel of land on the Airport premises for the purpose of erecting and/or maintaining an existing aircraft hangar owned by Lessee for the storage of aircraft.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the parties agree as follows:

I.    PREMISES.  Lessor hereby leases to Lessee the Parcel of land only which is known as **Hangar   S-631** at the Ogden Hinckley Airport, Weber County Utah more fully described on Exhibit "A" attached and made part hereof.

II.    TERM.  Subject to all other provisions of this Agreement regarding termination reserved herein, the term of this lease shall commence on _____ **May 1, 2008** and end on **December 31, 2023** at 5:00 PM.

III.    FIRST RIGHT OF REFUSAL TO RENEW LEASE.  Lessee shall have the first right of refusal to renew this lease agreement on the condition that Lessee is not in default hereunder at the time of such renewal and provided the renewal term does not exceed five (5) years.  To renew this Lease, Lessee shall provide a minimum of thirty (30) days written notice to Lessor prior to the expiration of the initial lease term stating Lessee's intent to renew this lease.

3

The terms and conditions contained herein shall govern any renewal of this lease unless otherwise agreed between the parties hereto.

IV.  <u>LESSEE'S RIGHT TO REMOVE IMPROVEMENTS</u>.  Upon the termination of this lease, Lessee shall have the right to remove any improvements erected by Lessee on the premises during the lease term or any renewal.  Lessee, upon removal of any improvements shall restore the land to as good condition as it was in prior to the erection of any improvements thereon.  Lessee hereby agrees that removal of any and all improvements shall be completed on or before sixty (60) days from termination of this lease.  Lessee hereby consents and agrees that any improvements remaining on the premises after the sixty (60) day removal period shall be deemed abandoned and owned by Lessor without any claim or right whatsoever in Lessee.

V.    <u>RENTALS, FEES AND CHARGES</u>.  Subject to re-negotiation and change of rental rates as hereinafter provided, the Lessee agrees to pay the City for the use of the premises, facilities, rights, services and privileges granted herein, the following rental, payable to Ogden City Corporation.

A.    Rental for the above-described parcel shall be at the current rate of nineteen and two tenths cents ($0.192) per square foot of improved land and ten and one tenths cents ($0.101) per square foot of unimproved land.

| Parcel | Area | | Rate |
|--------|------|---|------|
| A.  (80  x 75 ) | __6000__ | sq.  feet | Improved Land |
| B.  (60x 10 ) | __600__ | sq.  feet | Unimproved Land |

B.    Rent shall commence on  __May,1 2009__.  In the event the Lease term commences on some date other than January 1, the first years annual rent will be pro-rated

4

to reflect the actual first year occupancy period of this agreement.  The rental amount pro-rated is

__**none**__.

C.     The rent of the above described land for 2008 and each following

year of the agreement shall be $ __**1,212.60**__ , as adjusted by the Consumer Price Index

(CPI)and is due and payable to Ogden City Corporation, in advance, on the first day of each

calendar year of the Agreement.

D.     Rents provided for herein are subject to change as provided in

Ogden City Ordinances, Title 8, which is hereby incorporated herein by reference.

E.     All payments due Lessor under this lease, including rent, that are

not paid on or before thirty (30) days from the due date shall incur a late fee of one (1%) percent

per month or $5.00, whichever is greater.

F.     All payments due Lessor under this lease shall be delivered to the

Director of Management Services, Ogden City Corporation, 2549 Washington Blvd., 7th Floor,

Ogden, Utah 84401 or as otherwise directed in writing by Lessor.

VI.     <u>USE OF PREMISES</u>.  The leased premises and any and all improvements

located thereupon shall be used solely for conducting the following activities:

A.     Repair and Maintenance of aircraft.

B.     Storage of aircraft and aviation related equipment.

C.     Non-Aviation storage as an incidental use on the condition the

space is principally used for aviation purposes.

Lessee acknowledges that the premises may not be used for Residential purposes as

prohibited by City Zoning Ordinance and Federal Aviation Administration Regulations and may not

5

be used for commercial purposes or as a fixed-base operator without Lessee meeting, complying with and obtaining approval for the minimum standards as may exist at that time for such operation. In the event these minimum standards are met, Lessee would need to negotiate a new lease allowing the expanded use of the premises. Further, Lessee agrees to maintain the storage in this area in neat condition.

     VII.    <u>CONSTRUCTION OF NEW HANGERS AND IMPROVEMENTS</u>.

Lessee will make improvements on the premises as a hangar facility or facilities of approximately _____ square feet.

     VIII.  <u>OBLIGATIONS OF LESSEE</u>.

        A.     Lessee agrees to notify the airport manager, in writing, within ten (10) days of its basing, of the registration number of the aircraft and the person(s) responsible for it, including off hours emergency phone numbers, for all aircraft stored on the leased premises.

        B.     Lessee shall be solely responsible for all costs or charges for utility services required by the Lessee during the term of this lease.

        C.     Lessee agrees to maintain the demised premises in a reasonably neat, orderly and safe condition, and free from waste, rubbish, snow or other hazards throughout the term of this Lease. Lessee shall not store or let stand any equipment or property belonging to the Lessee or under the Lessee's custody, outside the boundaries of the leased areas without prior consent of the Lessor's Airport Manager, except when such equipment or property is in the process of being loaded or unloaded. Should the Lessee fail to repair and maintain the leased premises in proper condition, the Lessor's Airport Manager shall so notify the Lessee in writing. If the Lessee then fails to make such repair or maintenance within ten (10) days after the notice

6

has been sent the Lessor may cause such repair or maintenance service to be made. Lessee agrees to pay all Lessors costs incurred thereby and reimburse Lessor therefore on demand. If said costs and expenses are not paid within fifteen (15) days after demand therefore, this Lease shall be deemed to be in default and the Lessor shall be entitled to all legal remedies provided hereunder, including termination of this Lease.

D.   Lessee shall exercise due and reasonable caution to prevent fire, accidents, hazards or nuisances on the premises including annual fire inspections. Should the Lessee fail to remove or abate said hazard or nuisance after notified to do so, the City may abate said hazard or nuisance and charge the cost thereof to the Lessee as provided in C above.

E.   Lessee agrees at its own expense to cause the premises and improvements and appurtenances thereto to be maintained in a presentable condition consistent with good maintenance practices. This shall include, although not be limited to, the obligations of the Lessee to maintain the premises in a clean, neat and orderly condition at all times, and to perform the necessary mowing and snow removal on the premises during the appropriate periods of the year. The Airport will assist in snow removal when capability and priority permit.

F.   Lessee shall not erect, install, or cause to permit to be erected, installed or operated upon the premises herein any sign or advertising device without first having obtained the City's consent thereto as to size, construction, location and general appearance.

G.   Lessee shall not have the right to sell or distribute any parts, fuels, oils, or similar products upon said demised premises or upon said airport pursuant to this Lease.

H.   Lessee agrees to keep the demised premises free of any mechanic's or materialmen's liens or other lien of any kind or nature for any work done, labor performed or

7

material furnished thereon at instance or occasion of the Lessee and the Lessee further agrees to indemnify and save the Lessor harmless from and against any and all claims, demands, costs and expenses of any nature whatsoever from any such work done, labor performed or materials furnished.

       I.    Lessee shall obey all applicable rules, regulations, ordinances and laws that may be from time to time promulgated by the City, State and Federal Government or agency thereof.

       J.    Lessee agrees to cause to be removed from the premises at its own expense all waste, garbage and rubbish and agrees not to deposit same, except temporarily in connection with collection for removal in Airport designated locations, on any part of the premises or other property of the city constituting the Airport.

       K.    The Lessee shall provide the City with a copy of the bond to protect mechanics and materialmen as required by 14-1-5 of the Utah Code, as amended, during the course of construction of any improvements on the leased land.

      IX    <u>INDEMNIFICATION AND HOLD HARMLESS</u>.  Lessee expressly agrees to defend, protect, indemnify and hold harmless the Lessor, its officers, agents and employees free and harmless from and against any and all claims, demands, damages, expenses, losses or liability of any kind or nature whatsoever which the Lessor, its officers, agents or employees may sustain or incur or which may be imposed upon them for injury to or death of persons or damages to property arising out of or resulting from the negligent acts or negligent omissions of the Lessee, its officers, agents or employees use or misuse of the demised premises. Lessee agrees to defend at its own cost, expense and risk all claims or legal actions that may be

8

instituted against either the Lessee or the Lessor, which arise out of the negligent acts or omissions of the Lessee. Lessee agrees to pay any settlement entered into and satisfy any judgment that may be rendered against either the Lessee or the Lessor as a result of any negligent injuries or damages which have resulted from or are connected with this Lease or the occupancy or use of the demised premises by the Lessee, or its officers, agents, employees or licensees, including reasonable attorney fees.

  X. <u>TITLE 8, OGDEN CITY ORDINANCES</u>. Lessee hereby acknowledges the applicability of Title 8, Ogden City Ordinances to this Lease Agreement. Lessee hereby acknowledges notice of the terms, conditions and requirements presently contained therein and agrees, so far as said ordinance applies to persons such as Lessee herein, to comply with such ordinance as now in effect or as it may be amended during the term of this Lease or any renewal. **<u>Specifically, the terms and conditions of Title 8-3-3 (A through G) Leases and Agreements as currently existing or as may be amended are incorporated herein by reference and made part hereof as though written herein.</u>**

  XI. <u>INSURANCE</u>. Concurrent with the execution of this Lease and as partial performance of the obligations assumed under Clause IX, (INDEMNIFICATION AND HOLD HARMLESS) hereof, the Lessee shall have from a reliable insurance company or companies authorized to do business in the State of Utah, liability insurance in the minimum amount of $ <u>None</u> or such other minimum amount as may be required by Ogden City pursuant to reasonable exercise of its municipal powers.

The above insurance policy or policies shall contain an endorsement which provides that the Lessee is named insured as it pertains to said leasehold. Lessee shall provide Lessor with written evidence of said insurance at all times this Lease is in effect.

All insurance policies secured by the Lessee providing the coverage's which affect the leasehold premises required under this Lease shall require each insurer to notify the Lessor by registered or certified mail of any modification, termination or cancellation of any policy of insurance that affects the leasehold premises no less than thirty (30) days prior to the effective date of such modification, termination or cancellation. Notice by the insurer shall be effective upon the receipt of said notice by the Lessor. In addition to any other requirements of this Lease, the Lessee shall notify the Lessor of any modification which affects the leasehold premises, termination or cancellation of any policy of insurance secured by the Lessee pursuant to this paragraph as soon as the Lessee learns of any such modification, termination or cancellation. Each of said policies shall stipulate that the policy provided coverage is not subordinate to nor contributing with any other insurance coverage held or maintained by the Lessor. The procuring of such policy or policies of insurance shall not be construed to be a limitation upon the Lessee's liability or a waiver of performance on the Lessee's part of the indemnification and hold harmless provisions of this Lease; and the Lessee understands and agrees that notwithstanding any policy or policies of insurance it remains the Lessee's obligation to protect, indemnify and hold harmless the Lessor hereunder for the full and total amount of any damage, injuries, loss, expense, costs or liabilities caused by or in any manner connected with or attributed to the negligent acts or omissions of the Lessee, its officers, agents, employees, licensees or the operations conducted by the Lessee, or the Lessee's use, misuse or neglect of the premises described herein.

10

XII  <u>PERMITS, LICENSES AND CERTIFICATES</u>.  Lessee shall obtain any and all permits, licenses and certificates which may be required in connection with the improvement and use of the demised premises and aircraft operations.  Lessee shall comply with all applicable federal, state and local laws and regulations and the Lessee shall keep in effect any and all licenses, permits, notices and certificates as are required.

XIII  <u>ASSIGNMENT</u>.  Lessee shall not assign this Lease, or sublease any part of the premises without prior written approval of the Lessor which approval shall not be unreasonably withheld.  Lessor hereby agrees that this Lease may be assigned as security for any loan required by Lessee, provided that such assignment permits Lessee to remain in possession except in the event of foreclosure.  In the event of foreclosure or forfeiture by the holder of such security, the Lessor consents to further assignment to any person, firm or corporation which is fully competent and has the necessary facilities, experience and financial resources to perform the obligations contained in this agreement on the part of the Lessee to be performed, provided such proposed assignee shall expressly assume said obligations in writing.

XIV  <u>RIGHT OF ENTRY AND INSPECTION</u>.  Lessor hereby reserves the right to enter into and upon the leased premises and any improvements thereon at all reasonable times and for all reasonable purposes without prior notice.  The airport manager or his designated representative shall exercise this right.

XV  <u>RULES AND REGULATIONS</u>.  The Lessor shall have the right to adopt and enforce reasonable rules and regulations with respect to the use of the airport and the public terminal building and appurtenances, provided that such rules and regulations shall not be

11

inconsistent with safety and with rules and regulations of the Federal Aviation Administration with respect to aircraft operations at the airport.

XVI  <u>GOVERNMENTAL RESERVATIONS AND RESTRICTIONS</u>.

      A.    During the time of war or national emergency, the Lessor shall have the right to lease the landing area, or any part thereof, to the United States Government for military or naval use, and if such lease is executed, the provisions of this instrument, insofar as they are inconsistent with the provisions of the lease to the government, shall be suspended.

      B.    The Lessor reserves the right to further develop or improve the airport as it sees fit, regardless of the desires or views of the Lessee and without interference or hindrance from Lessee.

      C.    There is hereby reserved to the Lessor, its successors and assigns, for the use and benefit of the public, a right of flight for the passage of aircraft in the airspace above the surface of the premises hereby leased, together with the right to cause such noise as may be inherent in the operation of aircraft, now known or hereafter used for navigation of or flight in the air, using said airspace or landing at, taking off from or operating on the airport.

      D.    The Lessor reserves the right to take any action it considers necessary to protect the aerial approaches of the airport against obstructions together with the right to prevent the Lessee from erecting, or permitting to be erected, or maintaining any building or other structure on or adjacent to the airport which, in the opinion of the Lessor, would limit the usefulness of the airport or constitute a hazard to aircraft.  It is understood and agreed that nothing in this Lease shall be construed to grant or authorize the granting of any exclusive rights to Lessee within the meaning of the Civil Aeronautics Act.

XVII   <u>LESSOR'S RIGHT OF CANCELLATION</u>.  In addition to all other remedies reserved by Lessor, this agreement, shall be subject to cancellation by the Lessor should one or more of the following events occur:

      A.     If the Lessee fails to pay when due the whole or any part of the amounts agreed upon for rents and charges and such default continues for ten (10) days after the Lessor has demanded payment in writing.

      B.     If the Lessee shall fail to perform or keep and observe any of the covenants and conditions contained in this contract to be performed, kept and observed by Lessee, and Lessee fails to correct any breach hereof after thirty (30) days written notice from Lessor, then and in such event the Lessor shall have the right at once to declare this contract terminated.

XVIII   <u>LESSEE'S RIGHT OF CANCELLATION</u>.  In addition to all other remedies available to the Lessee, this agreement shall be subject to cancellation by the Lessee should any one or more of the following events occur:

      A.     The permanent and complete abandonment of the airport as an aviation facility.

      B.     The issuance by any court of competent jurisdiction of an injunction in any way preventing or restricting the use of the airport and the remaining in force of such injunction for at least thirty (30) days.

      C.     The breach by the Lessor of any terms, conditions and covenants of this agreement to be kept, performed and observed by the Lessor and the failure to remedy such a

breach for a period of thirty (30) days after written notice from the Lessee of the existence of such a breach.

         D.     The assumption by the United States Government, or any authorized agents of the same, of the operation, control or use of the airport and its facilities, in such a manner as to substantially restrict the Lessee from normal use, if such restriction is continued for a period of ninety (90) days or more.

         XIX  FORCE MAJEURE.  If either party hereto shall be delayed or prevented from the performance of any act required hereunder by reason or act of God, flood, hurricane, tornado, earthquake, strikes, lockouts, which are beyond the control of the party obligated (financial inability excepted), performance of such act shall be excused for the period of the delay and the period of the performance of any such act shall be extended for a period equivalent to the period of such delays; provided, however, nothing in this clause shall excuse the Lessee from the prompt payment of rental or other charges required hereunder to be paid by Lessee except as may expressly be provided elsewhere in this Lease.

         XX  DESTRUCTION OF PREMISES.  Should the improvements to the demised premises be damaged or destroyed in whole or in part, by fire, earthquake or any other casualty at any time during the term of this Lease so that the same cannot be repaired within ninety (90) working days to substantially the same condition it was in immediately prior to the happening of such casualty, then either the Lessor or the Lessee may, within fifteen (15) working days after the ninety (90) working days after the happening of such casualty, terminate this Lease as of the date of said casualty.  Lessee shall proceed, within ninety (90) working days, with the restoration and reconstruction of the improvements on the demised premises to substantially the same condition

14

in which they were in prior to the happening of the casualty.  In no event shall the Lessor be

liable to the Lessee for any damages resulting to the Lessee from the happening of such fire or

other casualty or from the repair or construction of the demised premises or from the termination

of this Lease as herein provided, nor shall the Lessee be released thereby from any of its

obligations hereunder except as expressly stated in this clause.

XXI  COSTS OF SUSTAINING AN ACTION FOR BREACH OR DEFAULT.

In the event either the Lessor or the Lessee commences legal action against the other claiming a

breach or default of this Lease, the prevailing party in such litigation shall be entitled to recover

from the other reasonable attorney fees and all costs connected with said litigation.

XXII  PARTIAL INVALIDITY.  If any term, covenant, condition or provision of

this Lease is held by a court of competent jurisdiction to be invalid, void or unenforceable, the

remainder of the provisions hereof shall remain in full force and effect and shall in no way be

affected, impaired or invalidated thereby.

XXIII  ABANDONMENT.  If the Lessee shall abandon or be dispossessed by

process of law or otherwise, any personal property belonging to the Lessee and left on the

premises after such abandonment or dispossession shall be deemed to have been transferred to

the Lessor; and the Lessor shall have the right to remove and to dispose of the same without

liability to account therefore to the Lessee or to any person claiming under the Lessee.

XXIV  AFFIRMATIVE ACTION.  The Lessee assures that it will undertake and

comply with the program as required by Title 49, Code of Federal Regulations, Department of

Transportation, Subtitle A, Office of the Secretary, part 21, Nondiscrimination in Federally

Assisted Programs of the Department of Transportation - Effectuation of Title VI of the Civil

Rights Act of 1964, to insure that no person shall on the grounds of race, creed, color, national origin, sex or other prescribed ground, be excluded from participation in any employment activities covered in said Title 49.  The Lessee assures that no person shall be excluded on these grounds from participating in or receiving the services or benefits of any program or activity covered by the subpart.  The Lessee assures that it will require assurances from their sub-organizations to provide assurance to the Lessor that they similarly will undertake and comply with the Title 49 programs and laws.

XXV  <u>UNLAWFUL USE</u>.  Lessee agrees that no improvement shall be erected, placed upon, operated or maintained on the demised premises, nor shall business be conducted or carried on therein in violation of the terms of this Lease or any applicable law, statute, ordinance, regulation, rule or order of any governmental agency having jurisdiction hereover.

XXVI  <u>NONDISCRIMINATION</u>  In the operations to be conducted pursuant to the provisions of this Lease and otherwise in the use of the airport, the Lessee will not discriminate or permit discrimination against any person or class of persons by reason of race, color, creed, sex, national origin or other prescribed ground, in any manner prohibited by Title 49, Code of Federal Regulations, Subtitle A, Part 21 or any amendments thereto.  Lessee shall make its accommodations and/or services available to the public on a fair, reasonable and nondiscriminatory price for each item, article, unit or service; provided that the Lessee may be allowed to make reasonable and non-discriminating discounts, rebates or other similar type of price reduction to volume purchasers.  Noncompliance with provisions of this clause shall constitute a material breach thereof; and in the event of such noncompliance, the Lessor shall have the right to terminate this Lease and the estate hereby created without liability therefore, or

16

at the election of the Lessor or the United States, either or both said governments shall have the right to judicially enforce said provisions.

XXVII  <u>LEASE SUBORDINATE TO AGREEMENTS WITH U.S.A.</u>  This Lease shall be subordinate to the provisions of any existing or future agreement between Lessor and the United States, relative to the operation or maintenance of the Airport, the execution of which has been or may be required as a condition precedent to the expenditures of Federal funds for the development of the Airport.

XXVIII  <u>WAR OR NATIONAL EMERGENCY</u>.  This Lease and all of the provisions hereof shall be subject to whatever right the United States Government has or may have affecting the control, operation and taking over of said Airport, or the exclusive or nonexclusive use of the Airport by the United States during the time of war or national emergency.  In such event, the parties' obligations to each other under this Lease thereby made inconsistent shall be suspended.

XXIX  <u>DEVELOPMENT OF AIRPORT</u>.  Lessor reserves the right to further develop or improve the Airport as it sees fit, regardless of the desires or views of the Lessee and without interference or hindrance by the Lessee.

XXX  <u>AIRPORT FACILITIES</u>.  Lessee is hereby granted the nonexclusive right, in common with all present and future users, to the use of such of the Lessor's Ogden-Hinckley Airport public facilities as are designated by the Airport Manager from time to time.  As an incident to all the other uses provided for in this Lease, the Lessee, its employees, authorized representatives, invitees, permittees, licensees, customers and patrons shall have the right to use all public waiting rooms and public lavatories provided such use shall be in common with others

17

and may be suspended during any period when maintenance, repairs or improvements are being made thereto.

     XXXI  <u>BANKRUPTCY</u>.  Should the Lessee make an assignment for the benefit of creditors or should a voluntary or involuntary petition of bankruptcy or for reorganization or any arrangement be filed by or against the Lessee, or if the Lessee should become bankrupt or insolvent or if a receiver be appointed at the request of the Lessee's creditors (except as a receiver appointed at the request of the Lessor) such action shall constitute a breach of this Lease for which the Lessor at its option, may terminate all rights of the Lessee or Lessee's successors in interest under this Lease.

     XXXII  <u>TAXES AND ASSESSMENTS</u>.  Lessee shall pay before delinquency, all taxes, license fees, assessments and other charges which are levied and assessed against and upon the premises, fixtures, equipment or other property caused or suffered by the Lessee to be installed, located or placed upon the leased premises.  The Lessee shall furnish the Lessor with satisfactory evidence of these payments upon demand from the Lessor.  Lessee acknowledges that this Lease may create a possessory interest subject to property taxation and that the Lessee may be subject to the payment of property taxes levied on such interest.  Lessee agrees to assume and pay any such assessment.

     XXXIII  <u>MARGINAL CAPTIONS</u>.  The various headings and numbers herein and the grouping of the provisions of this Lease into separate section, paragraphs and clauses are for the purpose of convenience only and shall not be considered a part thereof.

XXXIV  <u>AMENDMENTS TO BE IN WRITING</u>.  This Lease sets forth all of the agreements and understandings of the parties and is not subject to modification except in writing, duly executed by the legally authorized representatives of each of the parties.

XXXV  <u>SUCCESSORS IN INTEREST</u>.  The covenants herein contained shall, subject to the provisions as to assignment, apply to and bind the heirs, successors, executors, administrators and assigns of all the parties hereto; and all of the parties shall be jointly and severally liable hereunder.

XXXVI  <u>NONEXCLUSIVE RIGHTS</u>.  It is understood and agreed that nothing herein contained shall be construed to grant or authorize the granting of an exclusive right within the meaning of Section 1349, of the United States code.

XXXVII  <u>WAIVER OF RIGHTS</u>.  The failure of the Lessor to insist upon strict enforcement of any of the terms, conditions and covenants herein shall not be deemed a waiver of any rights or remedies that the Lessor may have and shall not be deemed a waiver of any subsequent breach or default by Lessee of the terms, conditions and covenants herein contained.

XXXVIII  <u>NOTICES</u>.  All notices given or to be given, by either party to the other shall be given in writing and shall be addressed or delivered to the parties at the addresses hereinafter set forth or at such other addresses as the parties may by written notice hereafter designate.  Notices to the Lessor and the Lessee shall be addressed as follows:

**TO:**  **<u>LESSOR</u>**
**Airport Manager**
**3909 Airport Rd.**
**Ogden, Utah 84405**

**TO:**  **<u>LESSEE</u>**
**Durbano Properties L.L.C.**
**476 W. Heritage Park Blvd. #110**
**Layton, Utah 84041**

XXXIX <u>HOLDOVER</u>.  In the event the Lessee shall hold over after the term granted herein, then such holding over shall be construed to be a tenancy from month-to-month only.  Prepayment of rent beyond one month shall not be construed to alter or change the month-to-month status of any holdover tenancy.  Lessee agrees to comply and abide with all other terms and conditions of this Lease in the event Lessee holds over after the term provided in this Lease expires.

XXXX <u>TIME</u>.  Time is of the essence of this Lease.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be duly executed, in triplicate, with all the formalities required by law on the respective dates set forth opposite their signatures to be effective the day and year first above written.

OGDEN CITY, a Municipal
Corporation

*LESSEE*:

_____ Date: 6/5/08

**Durbano Properties L.L.C.-Doug Durbano**

*APPROVED:*

_____ Date: 6/10/08
**Ed Rich, Airport Manager**

*ATTEST*:

_____ Date: 6/17/08
**City Recorder**

*APPROVED AS TO FORM:*

_____ Date: 6/16/08
**Corporation Counsel**

21