DOUGLAS M. DURBANO [4209]
JOHN E. KEITER [16487]
DURBANO LAW FIRM, P.C.
476 W. Heritage Park Blvd., Ste. 105
Layton, UT 84041
Telephone: (801) 633-0559
Fax No.: (385) 278-0519
Email: office@durbanolawfirm.com
       john@durbanolawfirm.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH**

| | |
|---|---|
| **OGDEN REGIONAL AIRPORT ASSOCIATION, INC.**, a Utah Non-Profit Corporation; **WENDY MARSELL**, individually and on behalf of all those similarly situated; *et al.*<br><br>Plaintiffs,<br><br>vs.<br><br>OGDEN CITY AIRPORT; and OGDEN CITY, a municipality in the State of Utah.<br><br>Defendants. | MEMORANDUM OPPOSING DEFENDANTS' MOTION TO DISMISS<br><br>**(Oral Argument Requested)**<br><br><br>Civil No. 1:21-cv-00075-JNP-DBP<br><br>Judge Jill N. Parish |

Plaintiffs Ogden Regional Airport Association, Wendy Marsell, et al. ("Plaintiffs"), through their undersigned counsel of record, respectfully submit their Memorandum Opposing Defendants' Motion to Dismiss.

**<u>INTRODUCTION</u>**

Defendants pray for this action to be dismissed, asserting that this court lacks jurisdiction and that Plaintiffs' have failed to state a claim upon which relief can be granted. The Court should deny Defendants' Motion. First, class certification is not required for this Court to

maintain jurisdiction over matters involving federal question, and Defendants arguments against class certification are premature since this Court has not ordered briefing on class certification. Second, Plaintiffs have sufficiently pled claims for unlawful taking of personal property without just compensation—invoking the Fifth and Fourteenth Amendments. Further, Defendants are unlawfully restricting access to airport property under Federal law and regulation. And third, this Court has pendent jurisdiction over the entire case, including Plaintiffs' state claims, based on considerations of judicial economy, convenience, and fairness to the Plaintiffs. *Belliston v. Texaco, Inc.*, 521 P.2d 379, 381 (1974).

To the extent that Plaintiffs have not properly alleged their claims, the Court should grant leave to amend their amended complaint; or alternatively, as Defendants have not requested dismissal with prejudice, if the Court finds cause to dismiss Plaintiff's Amended Complaint, it should do so without prejudice.

## RESPONSE TO DEFENDANTS' STATEMENT OF FACTS[1]

Plaintiff's hereby incorporate by reference the allegations of the Amended Class Action Complaint for Declaratory Relief, Injunctive Relief, and Just Compensation ("Amended Complaint").

1. *Ogden City is a municipality located in the State of Utah; Ogden City Airport is a division of Ogden City.*

**Response:** Undisputed for purposes of this opposition.

2. *Plaintiff ORAA is a Utah non-profit corporation with its principal place of business in Weber County, State of Utah.*

---

[1] Defendant have not requested dismissal with prejudice and have further not supported their statement of facts with affidavits or other admissible evidence. Accordingly, any dismissal of Defendants' claims should be without prejudice.

2

**Response:** Undisputed for purposes of this opposition.

3.   *The remaining Plaintiffs are either individuals residing in the State of Utah or limited liability companies incorporated in Utah with their members residing in the State of Utah.*

**Response:** Undisputed for purposes of this opposition.

4.   *Plaintiffs have alleged that Defendants deprived them of rights secured pursuant to the parties' respective lease agreements.*

**Response:** Disputed. The Amended Complaint speaks for itself. More specifically, the Amended Complaint asserts, *inter alia*, causes of action for (1) estoppel—asserting that Defendants "lulled The Separate Hangar Owners into a sense of ownership and security in their hangars;" (2) physical taking without just compensation—asserting that Defendants have taken private property for public use without just compensation "in order to turn a profit thereon through facility lease agreements;" (3) regulatory taking without just compensation—asserting that the Ogden City's Title 8 "constitutes a statutory enactment of the Business Plan and is a regulatory taking, inflicting an uncompensated taking by denying property owners, including The Separate Hangar Owners, of an economically viable use of their hangars;" (4) unauthorized deprivation of airport access—asserting that Defendants "unlawfully deprived The Separate Hangar Owners of the use of their security badges and access to airport property for reasons unrelated to the security measures set forth by the TSA;" (5) declaratory relief finding, in part, that Defendants have waived their rights under the Lease Agreement; and, (6) injunctive relief. *See* Am. Compl. at ¶¶ 119-52.

5.   *Plaintiffs' injuries are alleged to have occurred in Utah.*

**Response:** Undisputed for purposes of this opposition.

6. *Plaintiffs do not allege that Defendants ever entered into any written promise or assurance that any Lease Agreement would be renewed.*

**Response:** Disputed that Plaintiffs are required to allege that Defendants entered into any written promise or assurance that any Lease Agreement would be renewed. Further, it is alleged that Defendants "lulled The Separate Hangar Owners into a sense of ownership and security in their hangars . . . invoking in the Hangar Owners a sense of lifetime ownership of their respective hangars, through the City's historic practice of consistently and reliably renewing airport leases." *Id.* at ¶ 128.

7. *Plaintiffs have not alleged that Defendants ever waived expressly or in writing any right to enforce the provisions of the Lease Agreements.*

**Response:** Disputed that Plaintiffs are required to allege that Defendants waived "expressly or in writing" any right to enforce the provisions of the Lease Agreement. Under Utah law waiver may be implied by establishing that the other party "intentionally acted in a manner inconsistent with its contractual rights." [*Mounteer Enterprises, Inc. v. Homeowners Assoc. for the Colony at White Pine Canyon*, 2018 UT 23, ¶ 17, 422 P.3d 809](#) (altered for flow). Further, the Amended Complaint asserts that "the abandonment clause in the lease agreements . . . had long been waived." Am. Compl. at ¶ 108. Defendants' claims for declaratory and injunctive relief likewise seek a finding that Defendants waived their rights under the lease agreement. *Id.* at ¶ 151-58.

8. *Plaintiffs have not alleged any "taking" of the respective properties for public use; instead, Plaintiffs have alleged that Defendant is intending to not renew lease agreements "whilst the hangar still has useful life and value and using the remainder of that hangar's useful life to earn a profit."*

**Response:** Disputed. The Amended Complaint alleges that Defendants "repudiation or denial of their historical treatment of lease renewals has been detrimental to the Hangar Owners' property rights and resulted in damages to them by way of not receiving the benefit of the hangar improvements prior to the City's taking of the hangar property." *Id.* at ¶ 130. It further alleges that Defendants have adopted ordinances to "take possession of each and every hangar located within its compound whilst the hangar still has useful life and value in order to turn a profit thereon through facility lease agreements." *Id.* at ¶ 134.

9. *Plaintiffs have not alleged that they pursued—let alone exhausted—any administrative remedies in conjunction with their claim that they have been deprived of access to the Airport.*

**Response:** Disputed that Plaintiffs are required to exhaust or allege exhaustion of administrative remedies for Defendants' violation of a Federal regulation which provides no administrative remedy.

## ARGUMENT

### I. STANDARD OF REVIEW.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "At the motion-to-dismiss stage, we must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Williams v. Wilkinson*, 645 Fed.Appx. 692, 697 (10th Cir. 2016). In examining the complaint, the Court must "ask whether it is plausible that the plaintiff is entitled to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

5

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (altered for flow).

Defendants assert that Plaintiffs have failed to provide the proper foundation of facts necessary to sustain their claims. Notably, Defendants However, the 158 paragraphs in the Amended Complaint satisfy the simple requirements of Rule 8 and plausibly allege claims of estoppel, physical and regulatory taking, and deprivation of airport access, among others.

Further, Federal Rule of Civil Procedure 15(a) provides that leave to amend should be freely granted; and Plaintiffs' claims, to the extent they are deficient, could be amended. Therefore, a dismissal should have no prejudicial affect without a showing that an amendment would be futile. *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997).

## II.   DEFENDANTS' ASSERTIONS AGAINST CLASS CERTIFICATION ARE PREMATURE AND NOT GROUNDS FOR DISMISSAL.

"At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c). "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Oft times, this means that the Court must do a "rigorous analysis" which "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 351. In other words, "[t]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.*

Defendants assert that Plaintiffs' claims should be dismissed because this suit does not qualify for class certification. This assertion, however, is premature because the Court cannot

adequately perform the necessary "rigorous analysis" at the motion to dismiss stage where it must accept Plaintiff's alleged facts as true. The Court has not yet made any determination regarding this matter proceeding as a class action, nor has it required any briefing on the subject. Therefore, the Court should stay its considerations concerning class certification until such a time where the parties can present evidence sufficient for the Court to rule on the merits of the class certification.

Further, even presuming, *arguendo*, that this suit is not properly a class action under Rule 23, the remedy would be limited to striking the class action elements and allowing Plaintiffs to proceed only on their own behalf. *Lumbermens Mut. Cas. Co. v. Rhodes*, 403 F.2d 2, 5-6 (10th Cir. 1968); *see also Parmer v. National Cash Register Co.*, 346 F.Supp. 1043, 1047 (S.D. Ohio 1972). "[E]ven though a class action does not meet the requirements of Rule 23, it is not subject to dismissal if it also states a claim for relief against the defendant or defendants named individually." *Id.* For reasons explained below, Plaintiffs have properly pled claims under this Court's jurisdiction.

Finally, Defendants seek dismissal of the class action causes of action based on an assertion of diversity jurisdiction—citing to 28 U.S.C. § 1332. (Mot. at p. 5). However, Plaintiffs' claims do not arise in diversity, but in federal question. (*See* Am. Compl. ¶ 78 (citing to 28 U.S.C. § 1331). Therefore, Defendants' arguments premised upon § 1332 are inapposite.

### III.   PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS FOR ESTOPPEL.

#### A.   Elements of Estoppel.

Estoppel, as applicable here, has three elements: (1) a statement or act by one party inconsistent with a claim later asserted; (2) a reasonable action or inaction by the other party taken on the basis of the first party's statement or action; (3) injury to the second party that

would result from allowing the first party to contradict such statement or action. *See CECO Corp. v. Concrete Specialists, Inc.*, 772 P.2d 967, 969-70 (Utah 1989); *see also Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28, ¶ 14, 158 P.3d 1088 (Utah 2007), *Winegar v. Springville City*, 2018 UT App 42, ¶ 21, 424 P.3d 1006. The Utah Court of appeals has also noted that the making of "permanent improvements" to property "assist the court in evaluating the 'reasonable action' and 'injury' elements." *Bahr v. Imus*, 2009 UT App 155, ¶ 8, 211 P.3d 987.

Defendants incorrectly still draw a distinction between promissory and equitable estoppel and assert that because Plaintiffs did not allege facts under a claim for promissory estoppel, their claims should be dismissed. *See* Mot. at p. 16 ("[Plaintiffs] have not identified or even alleged **any promise** on the part of Ogden City") (emphasis in original). However, Utah courts no longer draw this distinction between promissory and equitable estoppel. In *Youngblood*, the case cited by Defendants, the Utah Supreme Court noted that "the difference between equitable and promissory estoppel has become inconsequential." *Id.* at ¶ 23. Accordingly, the Utah Supreme Court concluded "that estoppel, an equitable principal under the court's common law equitable powers, is a sufficient description of such an action." *Id.* at ¶ 22. Courts now "apply the same elements to both." *Id.*

Applying the elements of equitable estoppel, the Amended Complaint clearly alleges sufficient facts to meet its elements. For instance, paragraph 98 alleges that Defendants have historically renewed ground leases "without issue and regardless of the Airport's contractual rights relating to lease renewals." Paragraph 99 asserts "the lease renewals have historically been automatic upon the Lease Owner's request." And paragraph 128 states "[f]or decades, the Defendants have lulled The Separate Hangar Owners into a sense of ownership and security in their hangars . . . through the City's historic practice of consistently and reliably renewing airport

8

leases." These acts are inconsistent Defendants' later "repudiation and denial of Plaintiffs' historical treatment of lease renewals." Am. Compl. at ¶ 130. These allegations assert an act by Defendants inconsistent with a claim later asserted.

Likewise, under the second element, the Amended Complaint asserts that the hangar owners have "placed great stock in being able to reliably and consistently renew their leases," causing them to "pour[] hundreds of thousands of dollars' worth of construction upgrades and upkeep into their respective hangars." Am. Compl. at ¶ 102; *See also* Am. Compl. at ¶¶ 116, 118, and 128. And under the third element, the Amended Complaint asserts that Plaintiffs have been damaged "by way of not receiving the benefit of the hangar improvements prior the City's taking of the hangar property." Am. Compl. at ¶ 124.

Weighing the Amended Complaint against the elements of estoppel, Plaintiffs have clearly and properly asserted a claim which satisfies Rule 8. Accordingly, Defendants' motion should be denied as to Plaintiff's first cause of action.

B.     **Estoppel Can Be Asserted Against Government Entities.**

Defendants also assert that Plaintiffs' claim for estoppel should be dismissed because, "estoppel may not be invoked against a government entity." Mot. at p. 12. However, as Defendants concede, this is not a hard and fast rule. Indeed, "Utah law provides a limited exception to this rule in unusual circumstances where it is plain that the interests of justice so require." *Terry v. Retirement Bd., Public Employee's Health Program*, 2007 UT App 87, ¶ 14, 157 P.3d 362 (citations and quotations omitted). "This exception applies only if the facts may be found with such certainty, and the injustice suffered is of sufficient gravity, to invoke the exception." *Id.* As suggested in *Terry*, whether the exception should apply is a question of fact,

9

and it would be inappropriate to conduct this analysis at a 12(b)(6) stage where the Court must accept the well-pleaded facts as true.

Further, management of the airport's lease agreements is not part of Defendants' "government function," but rather a part of its business or proprietary function. "[T]he government acts in its commercial or proprietary capacity in entering contracts, rather than its sovereign capacity." *Hughes Communications v. United States*, 271 F.3d 1060, 1070 (Fed. Cl. 2002). Utah courts have long recognized that governmental immunity is not available where the government was not performing a governmental function. *See Ledfors v. Emery County Sch. Dist.*, 849 P.2d 1162 (Utah 1993); *see also Clegg v. Wasatch County*, 2010 UT 5, 227 P.3d 1243. The test for determining "government function" is "whether the activity under consideration [1] is of such a unique nature that it can only be performed by a governmental agency or . . . [2] is essential to the core of governmental activity." *Scott v. Universal Sales, Inc.*, 2015 UT 64, ¶ 60, 356 P.3d 1172. The activity invoking Plaintiffs' estoppel claim arises from Defendants' management of various lease agreements. Management of leases is not an activity of such unique nature that it can only be performed by a governmental agency or one that is essential to the core of governmental activity. Indeed, lease management is a major private sector industry.

Government immunity is also not available where the immunity has been waived. *Erickson v. Canyons School District*, 2020 UT App 91, ¶7, 467 P.3d 917. Under Utah's Governmental Immunity Act, immunity is waived for "any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment," and for "any contractual obligation." Utah Code § 63G-7-301(1)(a) and (i). Since estoppel claims arise in contract and tort, *Youngblood*, 2007 UT 28 at ¶ 19, Defendants are not entitled to traditional

application of governmental immunity. Accordingly, Plaintiffs may properly pursue their claims of estoppel against Defendants.

## IV.   DEFENDANTS HAVE PROPERLY ALLEGED A WAIVER.

Defendants' primary assertion against Plaintiffs' allegations of waiver is that "there is simply no allegation that Defendant ever *waived in writing* any rights pursuant to the Lease Agreements. (Mot. at p. 18) (emphasis added). However, in Utah, waiver "can be express or implied." *Mounteer Enterprises, Inc. v. Homeowners Assoc. for the Colony at White Pine Canyon*, 2018 UT 23, ¶ 17, 422 P.3d 809. A party impliedly waives their contractual rights where they "intentionally acted in a manner inconsistent with its contractual rights." *Id.* (altered for flow). "[W]aiver prevents a waiving party from lulling the other party into a belief that strict compliance with a contractual duty will not be required and then enforcing its contractual rights upon default." *Id.* at ¶ 18 (altered for flow).

Plaintiffs properly allege a waiver if they alleged facts that plausibly create a reasonable inference that Defendants intentionally acted in a manner inconsistent with their contractual rights. Indeed, the Amended Complaint so alleges:

- At the end of the lease term, the various leases have historically been renewed without issue and regardless of the Airport's contractual rights relating to lease renewals. (Am. Compl. ¶ 92).

- Although for months the Airport asserted that the Business Plan was never formally adopted, the Airport's course of dealings with the Hangar Owners demonstrated that the business plan was in fact being utilized as a model for assisting the Airport turn a profit, in substantial part through the Airport's newfound intent to cease lease renewals and invoke, for the first time, the abandonment clause in the lease agreements which had long been waived. (Am. Compl. ¶ 102).

- The City's newfound goal is to exploit the reversionary and abandonment clauses in the lease agreements, provisions which

11

    have not been enforced for several decades, to replace the ground leases "with facility leases, whereby the city takes ownership of the improvements and tenant pays fair market rent on the improvements and the land." (Am. Compl. ¶ 108).

- For decades, the Defendants have lulled The Separate Hangar Owners into a sense of ownership and security in their hangars, causing Hangar Owners to invest hundreds of thousands of dollars into their respective hangars and invoking in the Hangar Owners a sense of lifetime ownership of their respective hangars, through the City's historic practice of consistently and reliably renewing airport leases. (Am. Compl. ¶ 122).

- Title 8 exploits the reversionary and abandonment clauses in the lease agreements, provisions which have not been enforced for decades, to replace ground leases with facility leases, allowing the city to take ownership of the hangar improvements and requiring the Hangar Owners to pay fair market rent on the hangars and land. (Am. Compl. ¶ 138).

- Defendants have waived their rights under the Lease Agreement. (Am. Compl. ¶ 147).

Considering the foregoing, the Court should find that Plaintiffs have properly alleged a waiver.

    **V.    PLAINTIFFS PROPERLY SEEK RELIEF FOR PHYSICAL AND REGULATORY TAKINGS WITHOUT JUST COMPENSATION.**

    **A.    The Lease Agreement's Do Not Convey an Ownership Interest in Plaintiffs' Hangars, but Only to the Ground Upon Which They Sit.**

    Defendants assert that the Lease Agreements control Plaintiffs' ownership interests in their hangars. They do not. Rather, the Lease Agreements convey rights to the *ground* upon which the hangars sit. Defendants assertions that they cannot effectuate a taking of personal property because a lease agreement exists between the parties is akin to asserting that a landlord cannot convert tenant's personal property where a lease exists for the premises. This assertion is clearly incorrect.

"A taking plaintiff must have a legally cognizable property interest, such as the right of possession, use or disposal of the property." *Beres v. U.S.*, 104 Fed.Cl. 408, 421 (Fed. Cl. 2012). Here, Defendants can assert no ownership interest over the Plaintiffs' hangars except through an abandonment clause which conditionally takes effect at the end of the lease term—a clause which Plaintiffs assert has been waived. Accordingly, Plaintiffs' ownership in their hangars is in fee simple, entitling them to possession, use and disposal of the property.

"If a plaintiff has a valid property interest, the government takes that interest by destroying, physically occupying, or excessively regulating it for a public purpose." *Id.* at 422. "[A] permanent physical occupation by the government is a per se physical taking requiring compensation under the Fifth Amendment because it destroys, among other rights, a property owner's right to exclude." *John R. Sand & Gravel Co. v. U.S.*, 457 F.3d 1345, 1356 (Fed. Cir. 2006). Thus, if Defendants unlawfully assert an ownership interest or control over Plaintiffs' hangars, they have exercised their eminent domain authority over those hangars entitling Plaintiffs to just compensation.

The Amended Complaint asserts the following:

- The Separate Hangar Owners are Hangar Owners and/or persons who have an ownership interest in a hangar or hangars located at Ogden Airport. (Am. Compl. at ¶ 88).

- Within the Airport's compound are hundreds of aircraft hangars owned by the Hangar Owners and tiedowns that sit on City owned property. (Am. Compl. at ¶ 95).

- The lease renewals have allowed for hangars to be passed down from generation to generation and in some cases put into family trusts for inheritance. (Am. Compl. at ¶ 100).

- The Airport's Business Plan lays out its scheme and intent to take possession of each and every hangar located within its compound whilst the hangar still has useful life and value in

- order to turn a profit thereon through facility lease agreements. (Am. Compl. ¶ 134).

- The Airport's historical course of conduct instilled in Hangar Owners a sense of security and lifetime ownership of their hangars, causing Hangar Owners to invest hundreds of thousands of dollars' worth of improvements into their hangars, and extending the useful life thereof. (Am. Compl. ¶ 135).

- Taken together, the Business Plan and Title 8 effect a physical taking by depriving The Separate Hangar Owners of their personal property rights, including the significant improvements installed at the various hangars, and deprives the Hangar Owners of core property rights including the right to exclude others from their hangars, the right to possess and use their hangars for their own enjoyment, and the right to dispose of their property as they see fit. (Am. Compl. ¶ 138).

Plaintiffs are asserting a taking of their personal property—airplane hangars—which property is theirs to have and to hold. Plaintiffs rights to their hangars are not granted to them through their respective lease agreements. The lease agreements govern only the ground upon which the Plaintiff's property sits, but they grant no rights as it pertains to the Plaintiffs' ownership of the physical hangar. Accordingly, Plaintiffs do not assert that Defendants breached the Lease Agreements. Instead, Plaintiffs argue that Defendants have no rights to occupy or take Plaintiffs' hangars, therefore, *any* occupation or exclusion of Plaintiffs' hangars amounts to a taking.

  **B.**  **Plaintiffs Have Asserted a Taking for a Public Purpose.**

Defendants argue that Plaintiffs "have failed to allege a credible property interest or a governmental 'taking' on the part of Defendant for a public use." (Mot. at p. 22). For reasons explained in the previous section, Plaintiffs have alleged a credible property interest—the ownership of their personal hangars. Plaintiffs have further properly alleged a "taking" by

Defendants. "[I]t is not necessary to show that defendant intended to take plaintiff's land; all that plaintiff need show is that the taking of its land was the natural and probable consequence of the acts of the defendant." *Richard v. U.S.*, 152 Ct.Cl. 225, 230 (Ct. Cl. 1960). "It is not even necessary for plaintiff to show that defendant was aware of the taking of an interest in its property would naturally result from its acts. It is only necessary to show that this was in fact the natural and probable consequence of them." *Id.*

Defendants further argue that Plaintiffs have not alleged a taking for a "public purpose." (Mot. at p. 22). The public use requirement is satisfied "where the exercise of the eminent domain power is rationally related to a conceivable public purpose." *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 241 (1984). Here, Plaintiffs assert Defendants' intent to take Plaintiffs' hangars "whilst the hangar still has useful life and value in order to turn a profit thereon through facility lease agreements." (Am. Compl. at ¶ 134; *see also* ¶¶ 104, 108). The City's Business Plan states "[t]he current financial plan is simply not sustainable . . . . Due to the lease methodology, most [Hangar Owners] are just leasing the land directly beneath their hangar." (Am. Compl. ¶ 106). The Amended Complaint further alleges that "[t]he Business plan lays out the Airport's scheme to obtain additional revenues from the Hangar Owners whose hangars had been substantially improved by the lessees at great expense." (Am. Compl. ¶ 107). Making money for a public entity is rationally related to a public purpose—that is, to turn a profit for the airport and/or city. The Amended Complaint therefore states a public use for Defendants' takings.

Lastly, Defendants assert that Plaintiffs' claims should be precluded for public policy purposes—because it would expose the government "to the risk that upon the conclusion of the lease or license term they would be on the hook for a renewal guaranteed by the tenant or

licensee's threat of litigation for a taking." (Mot. at p. 23). But Defendants are confused about Plaintiffs' claims for relief. Plaintiffs are not seeking a lifetime renewal of their leases; rather, Plaintiffs are seeking compensation for the value of their hangars. Defendants' prior treatment of the ground leases have shown no intent to exercise any reversionary interests and, especially, no intent to exercise an abandonment clause to obtain control of the hangars. In reliance thereon, Plaintiffs have expended hundreds of thousands or even millions of dollars in hangar improvements. Now, Plaintiffs are learning through the City's implication of its Business Plan and Title 8 that their leases (with terms that may have only a few months left) will not be renewed under any circumstances—thus barring Plaintiffs from realizing any return on or enjoyment of their investments in their hangars. This unlawful taking demands just compensation.

### VI. DEFENDANTS' UNLAWFUL DEPRIVATION OF AIRPORT ACCESS GIVES RISE TO A SECTION 1983 ACTION.

> Every person who, under color of any statute, ordinance, ***regulation***, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the ***deprivation of any rights***, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (emphasis added). "Section 1983 was designed as comprehensive, remedial legislation for the deprivation of federal constitutional and statutory rights." *Green v. Dumke, 480 F.2d 624, n. 7 (9th Cir. 1973)*. "Because it is remedial in nature, § 1983 is appropriately suited to address any new method of interference with the rights which its words protect." *Id.* (altered for flow). Municipalities and other local government units are included among those

16

"persons" to whom § 1983 applies. Monell v. Dept. of Soc. Svcs. Of City of N.Y., 436 U.S. 658, 690 (1978).

Defendants assert that this claim should be brought as a breach of contract claim. However, there is no contract which controls Plaintiffs' rights to access the property. Rather, "Ogden Airport . . . requires all tenants to apply for and receive a badge to obtain access to airport property as required by [Transportation Security Administration]." (Am. Compl. ¶ 122). The security badge program is governed and regulated by the Federal Transportation Security Administration ("TSA"). 49 C.F.R. § 1542.101. TSA requires that Defendants adopt a Tenant Security Program. Id. at § 1542.113. And Defendants are prohibited from using the Security Program "in any other manner than that for which it was issued." Id. at § 1540.105. As alleged in the Amended Complaint, Defendants are abusing the authority granted them under Federal authority, and the rights granted unto Plaintiffs under Federal Regulation. This gives rise to a 1983 action.

Defendants also proclaim that Plaintiffs must exhaust the administrative remedies provided by Ogden City before they pursue their cause of action. However, section 1983 provides the exclusive remedy for alleged violations of federal law. Thomas v. Shipka, 818 F.2d 496, 499 (6th Cir. 1987) (Vacated and remanded on other grounds). Defendants have not cited to any federal statutory or regulatory requirement for exhaustion of administrative remedies. "[W]here not clearly required by Congress, exhaustion applies as a matter of judicial discretion." Osage Producers Assoc. v. Jewell, 191 F.Supp.3d 1243 (N.D. Okla. 2016) (citing Darby v. Cisneros, 509 U.S. 137 (1993)). Where Defendants cannot cite any federal requirement for exhaustion of remedies under the Tenant Security Program, any request for such is subject to this Court's discretion. The Court should deny Defendants' request here because the City's

administrative process would have a preclusive and prejudicial effect. *Atiya v. Salt Lake County, 988 F.2d 1013 (10th Cir. 1993)*. Therefore, this Court should retain its exclusive jurisdiction over these proceedings.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' motion and allow Plaintiffs to proceed on all their causes of action.

                                        DURBANO LAW FIRM, P.C.

                                        */s/ John E. Keiter*
                                        DOUGLAS M. DURBANO
                                        JOHN E. KEITER
                                        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on October 4, 2021, I electronically filed the foregoing document with the Court's ECF system, and notice of said filing was served upon the following as indicated:

| | | |
|---|---|---|
| Steve Noel | ☐ | U.S. Mail – Postage Prepaid |
| Kenyon Dove | ☐ | Hand Delivery |
| SMITH KNOWLES, P.C. | ☑ | Electronic Filing |
| 2225 Washington Blvd., Ste. 200 | ☐ | Email |
| Ogden, UT 84401 | | |
| snoel@smithknowles.com | | |
| kdove@smithknowles.com | | |

                                                                       */s/ John E. Keiter*