Stephen F. Noel (7952)
Ken Brown (15554)
**SMITH KNOWLES, P.C.**
2225 Washington Blvd., Suite 200
Ogden, UT  84401
Telephone:    (801) 476-0303
Facsimile:    (801) 476-0399
Email:         snoel@smithknowles.com
               kbrown@smithknowles.com

*Attorney for Defendant*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| OGDEN REGIONAL AIRPORT ASSOCATION, INC., a Utah Non-Profit Corporation; *et al.*<br><br>                    Plaintiffs,<br>     v.<br><br>OGDEN CITY AIRPORT; and OGDEN CITY, a municipality in the State of Utah,<br><br>                    Defendant. | **DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**<br><br>Civil No. 1:21-cv-00075-JNP-DBP<br>Judge Jill N. Parish |

Defendant, Ogden City, by and through its counsel of record, Steve Noel and Ken Brown of the law firm Smith Knowles, hereby submits this memorandum in opposition to Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order:

## RESPONSE TO REQUESTED RELIEF

Ogden City respectfully requests that Plaintiffs' motion for injunctive relief be denied. Plaintiffs are seeking drastic and even radical injunctive relief that will effectively preclude Ogden City from managing the Ogden City Airport consistent with their municipal authority and responsibilities as well as state and federal statutory and regulatory requirements. Plaintiffs are requesting that the Court rewrite the lease agreements between Ogden City and Plaintiffs and require that Ogden City renew Plaintiffs' lease agreements in perpetuity—effectively converting their lease interests into permanent fee estates. In addition, Plaintiffs filed their suit in June, yet are only now seeking injunctive relief. Presumably, Plaintiffs' request for injunctive relief is in response to Ogden City's Motion to Dismiss filed in August. The Court should decline to consider Plaintiffs' request for injunctive relief until first addressing Ogden City's motion— which is dispositive to each of Plaintiffs' claims.

To obtain preliminary injunctive relief, Plaintiffs must demonstrate "(1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; (4) the injunction is not adverse to the public interest." *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir.2001). Plaintiffs have not provided evidence or argument sufficient to satisfy any of these conditions—let alone all four. Furthermore, because Plaintiffs are seeking a kind of injunctive relief that is disfavored, they have a heightened burden to demonstrate the necessity of their requested relief. *See O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004), aff'd

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 2 of 44

and remanded sub nom. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006).

Ogden City is managing the Airport consistent with federal, state, and municipal ordinances, statutes, and regulations. The recent changes to the administration and management of the Airport have been done for the express purpose of satisfying federal and municipal policy aims and requirements. Plaintiffs' claim to have suffered a constitutional deprivation is the false conflation of their wish to renew their respective lease agreements with a genuine "taking" of public property. Ogden City has complete authority to renew, or not, Plaintiffs' lease agreements consistent with the terms therein as well as applicable municipal, state, and federal guidelines and requirements. Plaintiffs are simply seeking to obtain through injunction what they are not entitled to pursuant to the terms of the lease agreements—a guaranteed renewal of their lease agreements in perpetuity.

## RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS

1.      Ogden Municipal Code § 8-3-3(C)(2) states: "Renewal: Upon lease expiration, lessee shall have the "first right of refusal" to renew their lease; provided however, that the lease is not in default. Each renewal term will be for five (5) years."

**City's Response**: Plaintiffs' citation to the code fails to include additional relevant language that qualifies the section quoted above. Section 8-3-3(A) states that "It shall be the airport's policy to negotiate lease terms that make the airport as self-sufficient as possible; that provide flexibility to manage the airport; that provide high quality and all necessary services; and that provide a fair return on lessee's investment in capital improvements." Ogden City Municipal

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 3 of 44

Code, § 8-3-3(A). Subsections (C) identifies the "Length of Lease" and "Renewal" Terms, including the subsection quoted by Plaintiffs above, and also states "[t]he above lease terms are not absolute and are subject to negotiation. **A final decision will be made by the mayor, upon consultation with the FAA.**"   Ogden City Municipal Code, § 8-3-3(C)(3).

As explained in the Ogden City Administrative Policy Manual:

> Ogden Municipal Code, Section 8-3-3, sets forth general rules governing the term of duration of airport leases, **while preserving to the mayor the discretion to negotiate alternative terms as appropriate to proper management of the Ogden airport**…. Ogden Municipal Code, Section 8-3-3 refers to a "first right of refusal" of an existing tenant to renew its lease in certain circumstances but does not define the meaning of that term. A "first right of refusal" is not intended to grant tenant a perpetual right to unlimited lease renewals throughout all time. Rather, the term signifies that if upon the expiration of a lease the city intends to again lease a parcel for the same purpose that it had previously been leased, it will first offer to renew the lease of an existing tenant in good standing on the same terms it otherwise intends to offer to lease the parcel to other prospective tenants. The city administration has no duty to offer a renewal of lease agreement that is inconsistent with projected or planned future uses, development or redevelopment of the Ogden airport.

Ogden City Administrative Policy Manual, Title 11, Policy 2000, Airport Lease Renewal.

2.      Ed Rich was the manager of Ogden City Airport from 2001 through 2010. Exhibit 1, Declaration of Ed Rich, at ¶4.

**City's Response**: Disputed. Mr. Rich was invited to resign his employment with Ogden City in 2011. *See* Decl. of Bryant Garrett, ¶ 11, Exhibit A.[1]

---

[1] Bryant Garrett is the current manager at the Ogden City Airport.

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 4 of 44

3.      Historically, it was the Airports practice and policy to allow hangar owners to store non-aircraft items in hangars if they did not impede the movement of aircraft, as per the recommendation of the FAA. *Id*. at ¶5.

**City's Response**: Disputed. Since 2010, the FAA has adopted regulations limiting storage of non-aeronautical property in hangars. *See* Decl. of Bryant Garrett, ¶ 22, Exhibit A. In response, Ogden City updated its policies and contracts. *See* Ogden City Administrative Policy Manual, Title 11, Policy 2040, Nonaeronautical Use of Airport Hangars.

4.      The airport has never at any time enforced such a policy and it has always been the airport's understanding that hangar owners were allowed to store non-aircraft items (e.g. cars, RV's, etc) in their hangars alongside their airplanes. *Id*.

**City's Response**: Disputed. This claim is simply false; while Mr. Rich may have chosen to enforce—or not—the requirements contained in municipal, state, and federal ordinances, statutes, and regulations, that does not entail that those requirements were not in effect. The FAA has adopted varying requirements and conditions for the management and operation of airports supported by federal funds, including Ogden City Airport. *See* Decl. of Bryant Garrett, ¶ 18, Exhibit A. Ogden City is required to comply with all policies, requirements, and conditions imposed by the FAA. *See* Decl. of Bryant Garrett, ¶ 15, Exhibit A. As noted in Policy 2040, in 2016 the FAA issued a final policy statement on the use of hangars at federally obligated airports. *See* FAA Policy on the Nonaeronautical Use of Airport Hangars, 81 FR 38906 (June 15, 2016). To comply with that policy, Ogden City enacted Policy 2040—placing a thirty percent

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 5 of 44

limitation on nonaeronautical storage in hangars. *See* Ogden City Administrative Policy Manual, Title 11, Policy 2040, Nonaeronautical Use of Airport Hangars.

5.      To my knowledge, it has always been a standard term of all the airport's lease agreements, or if not then standard practice, that Hangar owners shall have the first right of refusal to renew their leases. *Id*. at ¶6.

**City's Response**: Objection. Mr. Rich's statement lacks foundation and attempts to create a legal standard of care. Ogden City does not dispute that the City may have chosen to exercise its contractual discretion to allow hangar owners to renew their leases at the conclusion of the lease term—that does not entail that the City had any obligation to do so and Mr. Rich fails to identify any written waiver or representation on the part of the City waiving any right to enforcement of the terms of the parties' respective lease agreements.

6.      The airport was aware and even encouraged hangar owners to rely on their right of first refusal. *Id*. at ¶7.

**City's Response**: Disputed and Objection. Mr. Rich fails to identify how the airport "encouraged" hangar owners to rely on this alleged right of first refusal. Furthermore, Ogden City does not dispute that Plaintiffs are entitled to enforcement of the terms of the parties' respective lease agreements. Ogden City disputes any implication that it or any authorized representative waived any right to the enforcement of contract terms and rights secured by those lease agreements.

7.      It was extremely rare that a hangar owner would not automatically renew their lease. In fact, it is so uncommon that airport policy and practice was to presume that owners'

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 6 of 44

would exercise their right of first refusal. Until the last several years, the airport has never cancelled or terminated a lease. Instead of cancelling or terminating a lease, owners would sell their hangers and leases together, which the airport always supported and was standard practice. The airport would then enter a new lease with the new hangar owner under the same terms as the previous owner. This was standard practice and generally required by the buyer's lending institution (bank, credit union, etc.). *Id*. at ¶8.

**City's Response**: Disputed in part and Objection. Again, Mr. Rich offers no foundation for his claim concerning the bundled nature of these alleged purchases and assignments. There is no indication as to the basis of any requirement by the prospective tenant's lending institution, nor is there any indication that the City ever made any written representation that the tenant of a hangar was entitled to more than what was provided in the parties' lease agreement. Furthermore, the Ogden City Airport has evicted several tenants over the years and has also had tenants surrender their hangars to the Airport. *See* Decl. of Bryant Garrett, ¶ 13, Exhibit A. Since 2017, lease agreements for hangars at the Airport have not allowed any "first right of removal" but have instead only stated that the prospective tenant has the right to renew available by law.

8.      Royal Eccles was the manager of Ogden City Airport from 2011 through 2013. Exhibit 2, Declaration of Royal Eccles, at ¶3.

**City's Response**: Undisputed. Mr. Eccles was involuntarily terminated from employment with the City, effective September 30, 2013. In addition, both Mr. Rich and Mr. Eccles were and remain tenants at the Airport. *See* Decl. of Bryant Garrett, ¶¶ 11-12, Exhibit A.

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 7 of 44

9.      About a year ago the City hired Bryant Garrett as the airport manager. Exhibit 1, Declaration of Ed Rich, at ¶11; Exhibit 2, Declaration of Royal Eccles, at ¶11.

**City's Response**: Disputed. Bryant Garrett started work on January 28, 2019, almost three years ago. *See* Decl. of Bryant Garrett, ¶ 3, Exhibit A.

10.     Shortly thereafter, Mr. Garrett, under direction of the City attorney, created and executed a scheme to get around owners' right of first refusal and established policies and practices to terminate owners' leases and take their hangars without fair compensation. Exhibit 1, Declaration of Ed Rich, at ¶12; Exhibit 2, Declaration of Royal Eccles, at ¶12.

**City's Response**: Disputed and Objection. The draft Business Plan referred to as a "scheme" by Plaintiff's was not reviewed, written or approved by the City Attorney, nor by Bryant Garrett's supervisors. *See* Decl. of Bryant Garrett, ¶ 23, Exhibit A. Rather it represented Mr. Garrett's draft work that was confidentially shared Les Briggs—the chair of the Ogden Airport Advisory Committee—who subsequently published it. *Id*. The contents of Mr. Rich and Mr. Eccle's declarations make clear that they have no personal knowledge concerning this alleged "scheme." Instead, they are simply repeating allegations previously made by Plaintiffs in their Complaint. New lease agreements for hangars at the Airport have not contained a right of refusal since 2017, and Ogden City has never promised any kind of perpetual or uneding right to the renewal of lease agreements. Ogden City Ordinance 2021-21, adopted April 20, 2021, eliminated language related to first rights of refusal for airport leases. *See* Ordinance No. 2021-21. As the Ogden City Code makes clear, even prior to the adoption of Ordinance No. 2021-21 the City had authority to structure the lease agreements so as to meet the needs of the Airport.

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 8 of 44

Ogden City Municipal Code, § 8-3-3. In 2016, the City adopted Adminitrative Policy 2000, which stated that lease renewals may not be available, or may carry a shortened term, if a new lease renewal would conflict with airport redevelopment plans. *See* Ogden City Administrative Policy Manual, Title 11, Policy 2000, Airport Lease Renewal. Administrative Policy 2050, adopted in 2017, outlined airport redevelopment parcels which were not available for unrestricted lease renewals. *See* Ogden City Administrative Policy Manual, Title 11, Policy 2050, Airport Redevelopment Plan. Since the adoption of Administrative Policy 2050, the City has entered into dozens of new lease agreements that are subject to ninety or one hundred and eighty day termination clauses by notice of the city.  Most of what Plaintiffs call a "scheme" is merely a restatement or implementation plan of existing laws, policies and leasing practices.  *See* Decl. of Bryant Garrett, ¶ 24, Exhibit A; *See also* Ogden City Administrative Policy Manual, Title 11, Policy 2000, Airport Lease Renewal.

11.     Since implementing its scheme to take over private citizen's hangars, the airport has engaged in the following harassing behavior:

      a.     Refusing to renew leases or honor owners' right of first refusal.

      b.     Evicting hangar owners without just cause.

      c.     Threatening to enforce new policy against storing any non-aircraft items in hangars.

      d.     Arbitrarily disabling owners' airport security badges to prevent them from accessing their hangars without just cause.

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 9 of 44

e.    Destroying and demolishing hangars of owners who were forced out of their

hangar by the airport before they could seek court intervention.

f.    Unilaterally tripled the lease rent last year in contradiction of the

lease terms.

g.    Changed City ordinances to conflict with lease terms and justify

terminating and taking possession of owners' hangars.

Exhibit 1, Declaration of Ed Rich, at ¶13; Exhibit 2, Declaration of Royal Eccles, at ¶14; Exhibit

10, Declaration of Stephen Fabiszak, at ¶6–9.

**City's Response**: Disputed. This entire series of allegations is entirely false. *See* Decl. of

Bryant Garrett, ¶ 25, Exhibit A. All leases currently existing have storage restrictions written into

the agreements as well as language making clear that all leases are subject to after-adopted City

ordinances and policies. This is one aspect of what makes airport leases unique—they are subject

to alteration by a change in law or policy at the municipal or federal level. Furthermore, any

eviction or hangar demolition has been pursuant to court order—not municipal fiat. *See* Decl. of

Bryant Garrett, ¶ 28, Exhibit A. The City's Airport badge access policy was adopted in May

2021 as stated in Policy 2070 of the Ogden City Administrative Policy Manual, has been

reviewed by the TSA. *See* Decl. of Bryant Garrett, ¶ 26, Exhibit A. Plaintiffs' claim that the City

"tripled" rent is false and not in contradiction of the lease agreements; rent is set by ordinance

and the amount is comparable to other similarly situated municipal airports. *See* Decl. of Bryant

Garrett, ¶ 27, Exhibit A.

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 10 of 44

12.     Plaintiffs' hangars are located on the East side of the Airport. The West side of the Airport is vacant and the City can do whatever they want with it. There is no need for the City to take Plaintiffs' hangars. Exhibit 2, Declaration of Royal Eccles, at ¶13.

**City's Response**: Disputed and Objection. This is not a statement of fact, but opinion, and one that Mr. Eccles is not qualified to make. The City is in charge of the administration, management, and control of its undeveloped land—it is not subject to approval by Plaintiffs.

13.     The City has taken possession of and tore down hangar 420. Exhibit 3. The owner wasn't even aware of it until it was already too late. *Id*.

**City's Response**: Disputed and Objection. Ogden City did not take possession of or tear down any hangar without first obtaining court order of possession or an instrument from the tenant reconveying the property to the city . *See* Decl. of Bryant Garrett, ¶ 28, Exhibit A. Plaintiffs' "Exhibit 3" appears to show the demolition of RB Willey's hangar, which was completed following the City's obtaining a court order approving the action. *Id*. In addition, Plaintiffs' mere proffer of a photo and unauthenticated text messages is not sufficient to support this statement of fact.

14.     Recently, the City issued the "Ogden Airport (OGD) Business Plan," which reveals the City's greedy take-over scheme in great detail. Exhibit 4, OGD Business Plan. It states the following:

> The City need the time when the hangar is old enough to revert (30 years) to the City's ownership, but not too old to be able to lease to others without great cost.
> ...
> This is a sweet spot between 30-50 years of age. If hangar revert to the

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 11 of 44

City/Airport at 30 or 40 years of age, we can justify capital improvements to the reverted hangars because there is enough useful life left in the asset to make the investment worth the expense. When we acquire hangars that are 50+ years of age, they are generally worn out and not worthy of investment, just to demolish.

...

Currently, we are attempting to identify all hangars that are approximately 50+ years of age for demolition. It is estimated that this could affect as many as 90 hangars.

Id. at p.5.

We are giving all these 50+ year old hangars a five-year lease, but with a provision to require the owner to vacate with a 180 days notice. Upon the 180-day notice, the hangar owner would be required to remove the hangar from City / Airport land and to return the land to the City in the condition that it was prior to having a hangar on it, or abandon the leasehold improvements to the ownership of the City.

...

We need [to] communicate the expected termination time frames to the various owners, based upon the age of their hangar. All current owners should have an expectation as to when this reversion will occur.

...

Consider City policy reflecting a 30-year lease for new building construction between $500,000 and $3 million. More than $3 million, but less than $6 million gets 35 years and more tha $6 million get 40 years. No one gets more than 40 years. At the end of each of these time periods, the hangar and all improvements revert to the City's ownership.

The City / Airport must prepare for owning buildings/hangars that are leased to others. After reversion, maintenance requirements are the City's/Airport's to bear.

...

Address the cost involved in demolition and the termination of the leases. Hangars needed to be removed before their lawful lease is up, will likely need to be compensated. Such compensation would NOT be for the fair market value of the leasehold improvements, rather it would be based upon the cost to lease a comparable hangar facility elsewhere at another airport.

Id. at p.6.

Needing to free up land that has been either leased long ago for the construction of privately-owned hangars, sold outright, or long-term leased back, per existing leases, but not wanting to lose the pilots or the aircraft from the airfield. If the OGD Airport is to become the only FBO on the

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 12 of 44

airport, these hangar owners and pilots are needed as the new FBO's customers.

**City's Response**: Disputed. This language is taken from a draft that was disclosed without authority or approval by the appropriate City officials. *See* Decl. of Bryant Garrett, ¶ 23, Exhibit A. This statement had not been reviewed or approved by anyone except the author when Les Brigg published the document without authority or approval. *See id*.

15.     The airport has also revoked owners' access badges to the airport and their hangars without just cause. Exhibit 5, Emails from Owners about Security Badges.

**City's Response**: Disputed. As stated above, the City's Airport badge access policy was adopted in May 2021 as stated in Policy 2070 of the Ogden City Administrative Policy Manual has been reviewed by the TSA. *See* Decl. of Bryant Garrett, ¶¶ 25-26, Exhibit A; Ogden City Administrative Policy Manual, Title 11, Policy 2070, Airport Identification Badge.

16.     The City has imposed new lease terms on all hangar owners, granting the City the following reversionary rights upon an event of default: (11) Expiration or Termination:

> A(i) Disposition If Agreement Terminates Before Expiration Date. If as a result of Tenant's default this Agreement terminates before the Expiration Date, within ninety (90) days after such termination, City, in its sole discretion, may determine to accept title to all or any portion of the Tenant Improvements. Upon City accepting any such title, all of Tenant's rights, title, and interests in the same shall be forfeited to City and title thereto shall vest in City automatically. Tenant shall surrender the Premises upon termination (and shall surrender any Tenant Improvements as accepted by City) in accordance with Section 11.B and Exhibit E, Section E.13. If City rejects any such title, or if such ninety-day period expires, Tenant shall (within sixty (60) days thereof) remove all Tenant Improvements that were not accepted by City at Tenant's sole expense in a manner acceptable to City (and the obligations of Section 6.A shall apply to such removal). If

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 13 of 44

Tenant fails to remove any such improvements, City may do so in any manner acceptable to City pursuant to Section 10.B.

(ii) Disposition Upon Expiration. Upon the expiration of this Agreement, if Tenant has not qualified for lease renewal pursuant to Section 2.B, Tenant may either: (a) transfer its interests in the Tenant Improvements to a party who, prior to such expiration, has been accepted by City, in its sole discretion, and has entered an agreement for the Premises that is acceptable to City; or (b) Tenant shall surrender the Premises (in accordance with Section 11.B) and, within ninety (90) days after such expiration, shall remove the Tenant Improvements (and the obligations of Section 6.A shall apply to such removal). If Tenant fails or is unable to perform either such alternative, City shall have the rights set forth in Section 11.A.i and may exercise them at any time.

B. Surrender of Premises. Upon any expiration or termination of this Agreement, Tenant, at Tenant's sole cost, shall (i) promptly and peaceably surrender to City the Premises (and any Tenant Improvements accepted by the City pursuant to Section 11.A) "broom clean" and in good order and condition; (ii) repair in a good and workmanlike manner any damage to the Premises or the Airport that arises from or relates to Tenant's use, occupancy, or operations under this Agreement (including, but not limited to, while removing any property upon expiration or termination); (iii) deliver to City all keys and access credentials relating to the Airport; (iv) perform Tenant's environmental obligations as provided in Section 7.D; and (v) remove all movable personal property and trade fixtures (including signage) that are not owned by City, (except that Tenant must obtain City's prior written consent to remove any such property if Tenant is in default under this Agreement or if such removal may impair the structure of any building). Upon any expiration or termination of this Agreement (which includes, but is not limited to, termination for abandonment of the Premises), all property that Tenant leaves on the Premises shall conclusively be deemed to have been abandoned and may be appropriated, sold, stored, destroyed, or otherwise disposed of by City without notice to, and without any obligation to account to, Tenant or any other person (except that Tenant Improvements shall be as provided in Section 11.A)

Exhibit 6 at p.17; Exhibit 10, Declaration of Stephen Fabiszak, at ¶6–9.

**City's Response**: The contract terms speak for themselves and represent the binding

terms entered into by the tenant and the City. Ogden City disputes any implication that it has

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 14 of 44

foisted any contract term on Plaintiffs. Any changes of the terms of the lease agreements were made pursuant to proper administrative and municipal enactments. *See* Decl. of Bryant Garrett, ¶ 30, Exhibit A. Furthermore, Plaintiffs' implication that the City "took" a reversionary interest is false; Plaintiffs' rights concerning the hangars on the Airport were limited by their lease agreements and the City has complete authority to renew, or not, those lease agreements pursuant to standard contract principles.

17.     At no time has the City offered any form of compensation to Plaintiffs for taking possession of their hangars. Exhibit 1, Declaration of Ed Rich, at ¶12.

**City's Response**: Objection. Ogden City has never "taken" possession of any hangar from Plaintiffs, nor does it intend to. Ogden City's control and management of the hangars is dictated by the respective lease agreements in conjunction with applicable federal, state, and municipal ordinances, statutes, and regulations.

18.     According to the head of the Ogden Regional Airport Association ("ORAA"), the airport has already bullied several hangar owners into abandoning their hangars to the city. Exhibit 9, Declaration of Ed Mckenney, ¶7–8.

**City's Response**: Disputed. Not one of the Plaintiffs has abandoned a hangar at the Airport as a result of "bullying" on the part of Ogden City; some tenants have sought tax advantages and formally conveyed their hangars to the City. *See* Decl. of Bryant Garrett, ¶ 20, Exhibit A.

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 15 of 44

19.     The city has bulldozed several of these hangars and plans to bulldoze another 90 or so, including many of those owned by ORAA members. Exhibit 9, Declaration of Ed Mckenney, ¶7–8.

**City's Response**: The City has never removed any hangar to which it did not have legal possession and ownership and has no intention of removing any hangar owned by another party; Plaintiffs are attempting to conflate the City's decision to exercise authority over those hangars to which it has control by means of court order or the non-renewal of lease agreements with their purported claim to being "deprived" of their property. The Court should reject this conflation.

20.     Approximately half of the hangars owned by ORAA members are cinderblock hangars that cannot be removed or transported to another location. Exhibit 9, Declaration of Ed Mckenney, ¶7–8.

**City's Response**: Disputed, and irrelevant. The hangars are composed of materials that can be moved—if not entirely then in parts—and regardless that does not affect the City's right to not renew the parties' lease agreements.

## ADDITIONAL FACTS

1.     Ogden City Corporation is the sole owner of the Ogden Airport. The Airport is managed by the Community and Economic Development Department, an administrative department of the City. *See* Decl. of Bryant Garrett, ¶ 4, Exhibit A.

2.     Ogden City is a council-mayor form of government featuring separation of powers, with the city council exercising all legislative powers and the mayor exercising all administrative and executive powers. Utah Code Ann. §§ 10-3b-201-203. The mayor is

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 16 of 44

empowered to manage all city property and negotiate and enter into all city agreements.

*Martindale v. Anderson*, 581 P.2d 1022, 1027 (Utah 1978); Utah Code Ann. § 10-3b-202.

3.      As a recipient of substantial federal grants from the FAA, the City is required to

operate the airport consistent with all federal laws and regulations, including thirty-nine

enumerated FAA grant assurances.[2] *See* Decl. of Bryant Garrett, ¶ 15, Exhibit A; *see also*

https://www.faa.gov/airports/aip/grant_assurances/media/airport-sponsor-assurances-aip-

2020.pdf. Through a variety of orders and letters, the FAA provides interpretation and guidance

to airport sponsors to instruct them on leasing best practices and how to properly comply with

grant assurances. *See* Decl. of Bryant Garrett, ¶ 16, Exhibit A.

4.      In his 2018 letter to Ventura Airport, Mr. Kevin C. Willis, FAA Director of

Airport Compliance and Management Analysis, provided a clear outline of policies and practices

at play when determining the appropriate length of lease terms for Airport leases. *See* 2018 FAA

Letter to Ventura Airport, Exhibit B. Mr. Willis recommended best practices of lease terms

between twenty-five and fifty years to amortize hangar construction and pointed out that the IRS

allows a maximum of thirty-nine years to depreciate a building.  *See* 2018 FAA Letter to Ventura

Airport, p. 3, Exhibit B.

---

[2] Violations of FAA grant assurances may be informally appealed pursuant to 14 C.F.R. § 13.1, et seq., or formally appealed pursuant to 14 C.F.R. § 16.1.  Plaintiffs have not initiated either process.  Plaintiff's must exhaust administrative appeal remedies to enforce grant assurances, before seeking review by the courts. Town of Fairview v. U.S. Dept. of Transp., 201 F. Supp. 2d 64, 70 (D.D.C. 2002).

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 17 of 44

5.      FAA Airport Compliance Manual 5190.6b, provides the following guidelines for FAA staff to consider when reviewing proposed airport lease agreement forms, suggesting a thirty to thirty-five year lease term to amortize a tenant's investment:

> **(3). Term.** Does the term exceed a period of years that is reasonably necessary to amortize a tenant's investment? Does the lease provide for multiple options to the term with no increased compensation to the sponsor? Most tenant ground leases of 30 to 35 years are sufficient to retire a tenant's initial financing and provide a reasonable return for the tenant's development of major facilities. Leases that exceed 50 years may be considered a disposal of the property in that the term of the lease will likely exceed the useful life of the structures erected on the property. FAA offices should not consent to proposed lease terms that exceed 50 years.
> . . .
> **(5). Title.** Does the title to tenant facilities vest in the sponsor at the expiration of the lease? Do any lease extension or option provisions provide for added facility rent once the title of facilities vests in the sponsor?

See FAA Order 5190.6B, Airport Compliance Manual, pp. 12-13, Exhibit C.

6.      While the FAA often recommends best practices to airports, occasionally it will inspect an airport's leasing policies and demand a corrective action plan to eliminate violations of grant assurances. *See* Decl. of Bryant Garrett, ¶ 17, Exhibit A. For example, in 2018 the FAA inspected the Shreveport Airport's leasing policies. *See* FAA Shreveport Airport Inspection Report, Exhibit D. The FAA found the airport violated grant assurances by: (1) granting unlimited ground lease extensions, (2) failing to exercise reversionary clauses to take title to hangars after hangar leases had expired, (3) failing to raise rents and fees to make the airport as self-sustaining as possible. The same criticisms would have applied to Ogden City's leasing practices before the adoption of Ordinance No. 2021-21. *See* Decl. of Bryant Garrett, ¶¶ 19-21, Exhibit A.

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 18 of 44

7.      For many years, city ordinance allowed for ground lease terms of only fifteen years for a private hangar, twenty years for a special services operator, and twenty-five years for a fixed based operator. *See* Decl. of Bryant Garrett, ¶ 19, Exhibit A. The mayor could negotiate longer lease terms in cases of extraordinary investment. *See id.*  In recent years, market forces and changes in best practices led to new tenant expectations for longer ground lease terms for new construction on the airport. *See id.*

8.      To meet market demand, Ogden City officials determined that longer lease terms would be necessary to attract tenants to construct new airport structures. *See* Decl. of Bryant Garrett, ¶ 20, Exhibit A.  Following current FAA guidance, the City's administration proposed an ordinance change to the city council that would allow for ground lease terms long enough to amortize tenant's construction costs, but not to exceed forty years. *Id.* The lease term length would be determined by amortization of investment, rather than the type of use. *Id.*

9.      This language was included in Ordinance No. 2020-21, which was adopted by the Ogden City Council on April 20, 2021. *See* [Ordinance No. 2021-21](). Ordinance 2021-21 also eliminated "the first right of refusal" to renew a ground lease for 5 years, which had been previously granted to a ground lease tenant at the expiration of their initial ground lease. *Id.*

10.     The Ogden City Council also determined that lease renewals for pre-existing construction would be limited to forty years from the date of the original construction ground lease, which is the maximum forty years that a new construction ground lease tenant could expect under the new ordinance. *See id.* at p. 15.

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 19 of 44

11.     After completion of 40 years from the new construction lease date, a tenant may not renew an expired ground lease agreement.  *See* Ordinance No. 2021-21, p. 15. Tenants are not entitled to renew their lease agreements but have the option to remove improvements from the premises or abandon them. *Id*. at p. 15-16. Upon termination of the ground lease, the leased premises reverts to the possession and ownership of the City, together with any improvements remaining thereon. *Id*.  The above-described options are completely consistent with all airport ground lease agreements previously entered into by the City. *See* Decl. of Bryant Garrett, ¶ 30, Exhibit A.

12.     When an old hangar reverts to Ogden City, the City may enter into a facility lease for the premises for the fair market rental value of the land ***and*** the improvements.  *See* Ordinance No. 2021-21, p. 16-17. Ordinance 2021-21 also requires that the prior ground lease tenant be granted a first preference to enter into a facility lease, before the City leases the property to another tenant.  *Id*. at p. 16.  This provision preserves tenant's "first right of refusal" clause that may exist in any preexisting lease agreements—those that require the city to lease the premises to the prior tenant on the same terms as it would lease to a third party. *See also* Ogden City Administrative Policy Manual, Title 11, Policy 2000, Airport Lease Renewal.

13.     Ord. 2021-21 was adopted on April 20, 2021. The presentation to the Ogden City Council was recorded. *See* https://www.facebook.com/watch/live/?ref=watch_permalink&v=264685848723645.

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 20 of 44

14.     All current lease agreements for hangars located at the Airport contain clauses

that allow rents to be changed or increased in two ways: (1) a Consumer Price Index adjustment

or (2) city council ordinance amendment. *See* Decl. of Bryant Garrett, ¶ 31, Exhibit A.

15.     In lease agreements executed prior to October 2016,[3] the two relevant clauses are

found in Section V, Subsections C and D, as follows:

> C. The rent of the above described land for [_____] and each
> following year of the agreement shall be $ [_____] , as adjusted
> by the Consumer Price Index (CPI) and is due and payable to Ogden
> City Corporation, in advance, on the first day of each calendar year
> of the Agreement.
>
> D. Rents provided for herein are subject to change as provided in
> Ogden City Ordinances, Title 8, which is hereby incorporated herein
> by reference.

*See* Durbano Properties, Inc. Lease Agreement, Hangar S-631, June 16, 2008, Exhibit E.

16.     In addition, prior to October 2016, all lease agreements contained the following

provision:

> ### X. TITLE 8, OGDEN CITY ORDINANCES.
>
> Lessee hereby acknowledges the applicability of Title 8, Ogden City
> Ordinances to this Lease Agreement. Lessee hereby acknowledges notice
> of the terms, conditions and requirements presently contained therein and
> agrees, so far as said ordinance applies to persons such as Lessee herein, to
> comply with such ordinance as now in effect or as it may be amended during
> the term of this Lease or any renewal. **Specifically, the terms and
> conditions of Title 8-3-3 (A through G) Leases and Agreements as
> currently existing or as may be amended are incorporated herein by
> reference and made part hereof as though written herein.**

---

[3] In October 2016, the city adopted wholly new lease agreement forms, based on St. George airport lease forms.
They were subsequently amended several times.  At the footer of each of the new-form lease agreements, there is a
numeric code that indicates the date on which the particular lease form was adopted for use.  The airport then used
the newly adopted form for all similar situated tenants – until the form changed again.

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 21 of 44

*See* Durbano Properties, Inc. Lease Agreement, Hangar S-631, June 16, 2008, Exhibit E.

17.     Furthermore, after October 2016, all lease agreements contained the following

clause:

> **4.      Tenant's Use of Premises and Airport**
>
> …
>
> **B.      Comply with All Laws**. Tenant and Tenant's
> Associates shall comply at all times, at Tenant's sole cost, with any and all
> laws and regulations (as amended or otherwise modified from time to time)
> that are applicable to Tenant's use, occupancy, or operations at the Premises
> or the Airport (the "Laws and Regulations"), which include, but are not
> limited to, all laws, statutes, ordinances, regulations, rules, orders, writs,
> judgments, decrees, injunctions, directives, rulings, guidelines, standards,
> codes, policies, common law, and other pronouncements of any kind having
> the effect of law including, but not limited to, the Airport Rules and
> Regulations, the Airport Minimum Standards, and all laws and regulations
> pertaining to the environment (the "Environmental Laws"); any and all
> plans and programs developed in compliance with such requirements
> (including, but not limited to, the Airport Security Plan); and all lawful,
> reasonable, and nondiscriminatory Airport policies and other requirements.
> Upon request by City, Tenant will verify, within a reasonable time frame,
> compliance with any Laws and Regulations.

*See* Lew Wheelwright SASO Lease Agreement, Hangar S-431, effective January 1, 2019,

Exhibit F.

18.     After October 2016, Exhibit C of all lease agreements contained the following

clauses pertaining to rent increases:

> **C.1. Rent, Fees And Charges**.   Subject to re-negotiation and
> change of rental rates as hereinafter provided, the Tenant agrees to
> pay the City for the use of the premises, facilities, rights, services,
> and privileges granted herein, the following rents, payable to Ogden
> City Corporation.

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 22 of 44

. . .

   **b. Annual Rent**. The annual rent of the above described land for 20\_\_\_ and each following year of the agreement shall be $_____ , as adjusted by the Consumer Price Index (CPI) and is due and payable to Ogden City Corporation, in advance, on the first business day of each calendar year of the Agreement.

   **C.2. Payment of Any Amount Due**.  Any amount due in connection with this Agreement or the use of the Airport shall be subject to the following terms; provided, however, that if any obligation is subject to payment terms pursuant to City ordinance or other City requirements that directly conflict with the following terms, such ordinance or other City requirements shall govern.

. . .

   **g. Reestablishment of Rates and Charges**.  The City in its sole discretion may from time to time reestablish (or newly initiate) any type of rates and charges at the Airport (in a manner consistent with Laws and Regulations) to provide for the Airport's operations (including, but not limited to, reestablishing the rental rate charged to Tenant and all similarly situated tenants)."

*See* Lew Wheelwright SASO Lease Agreement, Hangar S-431, January 1, 2019, Exhibit F.

   19.  Starting in late 2016, the City adopted a new lease agreement form, which was amended in subsequent years. No lease agreement executed in 2017 and later included a first right of refusal. Rather, the lease agreements merely noted that the tenant may exercise any right of renewal provided by airport ordinance or policy:

   **A. Renewal**. If not in default, a Tenant may renew this Agreement for an additional lease term to the extent that such renewal right is

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 23 of 44

> granted and defined in applicable Laws and Regulations described
> in Section 4.B.

*See, e.g.,* Lease Agreement of Kent Wright, June 19, 2017, Section 2.A, Exhibit G.

20.     Lease rental rates are set by Ogden City Ordinance. *See* Ogden City Municipal
Code, § 8-5-2. Currently, Section 8-5-2 forecasts incremental rental rate increases the first day of
January in 2022, 2023, and 2024. *See id.*

21.     In July 2016, the Mayor adopted Administrative Policy No. 2000, "Airport Lease
Renewal." *See* Ogden City Administrative Policy Manual, Title 11, Policy 2000, Airport Lease
Renewal. This policy interpreted "first right of refusal" clauses found in prior lease agreements
and in ordinance to anticipate redevelopment changes in use of airport property over time. The
interpretation was based on a survey of case law related to rights of first refusal. *See id.* The
policy requires notice and inspection prior to lease renewal. *See* Ogden City Administrative
Policy Manual, Title 11, Policy 2000, Airport Lease Renewal. The policy also provides for a
shortened lease renewal term if the city plans to change the use of the premises in the near-term:

> **4. Lesser Lease Term**: If the city's projected or planned uses are
> inconsistent with a five (5) year lease renewal term, but the city's
> projected or planned change of use is not immediate upon expiration
> of tenant's lease, the airport manager and tenant may negotiate a
> shorter lease renewal term if mutually agreeable to both parties."

*See id.*

22.     On April 20, 2017, the Mayor adopted Administrative Policy No. 2050, "Airport
Redevelopment Plan." *See* Ogden City Administrative Policy Manual, Title 11, Policy 2050,
Airport Redevelopment Plan. Policy 2050 prohibited lease renewals that were inconsistent with
airport redevelopment plans. *Id.*  It defined redevelopment areas in the airport, to be amended

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 24 of 44

over time. *Id*. It defined all hangars over fifty years old to be aging or nonconforming and limited lease renewal for such properties to the extent such renewal would interfere with planned redevelopment. *Id*. If the timing of redevelopment was unknown at the time of lease renewal, the airport manager was permitted to enter into lease renewals that were terminable upon ninety days notice of termination. *Id*.  Since 2017, the City has entered into many renewed lease agreements for aging structures with an addendum, separately signed by the parties, stating  that the agreement is terminable upon ninety or one hundred and eighty days notice. *See* Decl. of Bryant Garrett, ¶ 32, Exhibit A. At least ten hangar leases entered into by the named plaintiffs include such addendums, including Dan Blumel (S-2297), Ed Rich (S-449, S-445), Jeff Jerman (N-422), Larry E. Jones – D&S Neo Tech Inc (N-1004), Lew Wheelwright (S-415), Don Pantone – Bonanza Flying Club LLC (S-545) and Pantone Properties (N-360), John Carper (N-349), the Western Group LC (N-714). *See id*. Even if Ordinance 2021-21 was never passed, approximately one-third of the hangars at the Airport would have already been deemed unfit for a full 5 year renewal pursuant to Policies 2000 and 2050. *See* Ogden City Administrative Policy Manual, Title 11, Policy 2000, Airport Lease Renewal.

23.     Ogden City has evicted tenants through legal process whose lease agreements had lapsed without entering into renewed leases, including R.B Willey, Hangar N-420 and David Schamber, Hangar N-1167. *See* Decl. of Bryant Garrett, ¶ 28, Exhibit A. Others have abandoned their hangars, including Alan Thompson, S-543 and TCB Composites, N-850. Hangar S-543 is now torn down, and N-850 is planned for demolition. *See* Decl. of Bryant Garrett, ¶ 29, Exhibit

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 25 of 44

A. The City has also evicted other tenants of the Airport in the past. *See* Decl. of Bryant Garrett, ¶ 13, Exhibit A.

24.     A security badge allows the bearer unescorted access to the airport. *See* Decl. of Bryant Garrett, ¶ 33, Exhibit A. It requires the bearer to take affirmative actions to protect airport security. *Id*. TSA regulations require an extensive application and background check before the City can issue a badge. *Id*. Badges expire within one or two years and re-application is necessary. *Id*.

25.     A tenant may access its leased hangar without a security badge, simply by obtaining badged escort. *See* Decl. of Bryant Garrett, ¶ 35, Exhibit A.

26.     In the past, badges were occasionally denied or withdrawn because of substantial non-compliance with airport laws, policies, or contracts. *See* Decl. of Bryant Garrett, ¶ 34, Exhibit A.

27.     In May 2021, the city formalized its security badge policy as Administrative Policy No. 2070, cited above. *See* Ogden City Administrative Policy Manual, Title 11, Policy 2070, Airport Identification Badge.

28.     Policy 2070 allows denial of a badge for policy/contract violations and provides an appeal process. *See id*.

## **ANALYSIS**

### *1.     Preliminary Injunction Standard*

"As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *SCFC ILC, Inc. v. Visa USA, Inc*., 936 F.2d 1096, 1098 (10th Cir.1991)

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 26 of 44

(citation omitted) *overruling recognized on other grounds by* <u>Lorillard Tobacco Co. v. Engida,</u> <u>213 Fed.Appx. 654 (10th Cir. 2007)</u>; *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc*., 883 F.2d 886, 888–89 (10th Cir. 1989) ("Because it constitutes drastic relief to be provided with caution, a preliminary injunction should be granted only in cases where the necessity for it is clearly established."). In order to be entitled to entry of a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, the moving party must establish that:

> (1) [he or she] will suffer irreparable injury unless the injunction issues; (2) the threatened injury ... outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood [of success] on the merits.

<u>Heideman v. South Salt Lake City</u>, 348 F.3d 1182, 1188 (10th Cir. 2003) (quoting <u>Resolution</u> <u>Trust Corp. v. Cruce</u>, 972 F.2d 1195, 1198 (10th Cir.1992)).

Because the limited purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held," <u>Univ. of Tex. v.</u> <u>Camenisch</u>, 451 U.S. 390, 395 (1981), federal courts have "identified the following three types of specifically disfavored preliminary injunctions ...:(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." <u>O Centro</u> <u>Espirita Beneficente Uniao Do Vegetal v. Ashcroft</u>, 389 F.3d 973, 977 (10th Cir.2004) (en banc ) (internal citations and quotations omitted), cert. granted sub nom on other grounds, *Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal*, 544 U.S. 973 (2005). Such disfavored

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 27 of 44

injunctions "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *O Centro*, 389 F.3d at 975. The Tenth Circuit has "explained that the status quo is 'the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing.' " *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp*., 269 F.3d 1149, 1155 (10th Cir.2001) (quoting *SCFC ILC, Inc*., 936 F.2d at 1100 n.8). "In determining the status quo for preliminary injunctions, [federal courts] looks to the reality of the existing status and relationship between the parties and not solely to the parties' legal rights." *Id*.

In this case—for the reasons discussed below—Plaintiffs fail to satisfy the requirements of Rule 65 necessary to obtain a preliminary injunction. In addition, Plaintiffs' claim for injunctive relief runs afoul of the rule against disfavored preliminary injunctions set forth by the Tenth Circuit in *O Centro*. See *O Centro*, 389 F.3d at 977 (10th Cir. 2004). Plaintiffs claim to be seeking to preserve the status quo, but, in fact are actually seeking a kind of prophylactic relief in which Ogden City is effectively prevented from exercising its function as landlord and manager of the Ogden City Airport. In preventing Ogden City from managing and maintaining the Airport, Plaintiffs are not simply keeping things as they are pending the conclusion of this litigation—they are wreaking havoc on Ogden City's capacity to manage and maintain the Airport consistent with municipal objectives and federal statutory and regulatory requirements. Furthermore, Plaintiffs are seeking mandatory and positive relief from this Court **requiring** Ogden City to renew their lease agreements in perpetuity despite Ogden City having clear authority as a contracting agent and municipal entity to choose to not renew those agreements.

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 28 of 44

Thus, Plaintiffs have a higher burden of proof necessary to sustain their claim for injunctive relief that they simply cannot meet.

Plaintiffs would have the Court believe that lease ordinances, policies, and leasing practices have been constant and unchanging for decades, and that Ogden City's efforts to redevelop its aging airport is a sudden and covert "scheme" of its current airport manager. In reality, the city ordinances, policies, and leasing practices have been dynamic and changing throughout time—especially with regards to airport redevelopment. For example, Administrative Policies 2000 (adopted in 2016) and 2050 (adopted in 2017) limited lease renewals that would interfere with redevelopment. Admin Policy 2050 required that any new leases for hangars within a designated redevelopment area, or more than 50 years of age, would only be granted if they did not conflict with redevelopment plans. In addition, any such leases granted would contain a clause to terminate the lease upon 90 days notice. Since 2017, many tenants have entered into lease agreements that provide for termination of the lease agreement upon ninety or one hundred and eighty days notice. These termination clauses are attached to the lease agreement as addenda to the lease agreement, separately signed and agreed to by the respective tenant. At least 10 of the named plaintiffs entered into such agreements with termination clauses. Now, three, four, or five years after entering into these lease agreements, Plaintiff tenants urgently seek judicial intervention to rewrite or even unwrite the lease agreements to which they have entered.

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 29 of 44

**2.    Plaintiffs have failed to satisfy the requirements of Rule 65.**

       *a.    Plaintiffs have not demonstrated that they will suffer irreparable injury if they are denied injunctive relief.*

The first requirement of Rule 65 is that the Plaintiffs must demonstrate that they will suffer irreparable injury if they are denied injunctive relief. "Irreparable harm" means that "the injury 'must be both certain and great' and that it must not be 'merely serious or substantial.' ... [I]rreparable harm is often suffered when 'the injury can [not] be adequately atoned for in money,' or when 'the district court cannot remedy [the injury] following a final determination on the merits.' " *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) (citations omitted). A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain. *See Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir.2001) (citing *Tri–State Generation & Transmission Assoc., Inc., v. Shoshone River Power, Inc.*, 874 F.2d 1346, 1354 (10th Cir.1989)).

Plaintiffs claim that they will suffer irreparable injury without injunctive relief arguing that they will lose possession of and access to their properties. Plaintiffs' allegations, however, are the opposite of certain. Plaintiffs claim that the City has announced their intention to take possession of and destroy "many of Plaintiffs' hangars." Plaintiffs cite to two declarations, those of Ed Rich and Royal Eccles. Those declarations, however, contain **no evidence** of any kind of imminent action. *See* Decl. of Ed Rich, ¶ 12, Exhibit H; Decl. of Royal Eccles, ¶ 12, Exhibit I. In paragraph twelve of his declaration, Mr. Rich only states that the City has "created and executed

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 30 of 44

a scheme to get around owners' right of first refusal and established policies and practices to terminate owners' leases and take their hangars without fair compensation." *See* Decl. of Ed Rich, ¶ 12, Exhibit H. Mr. Eccles simply repeats Mr. Rich's statement. *See* Decl. of Royal Eccles, ¶ 12, Exhibit I. Neither of these statements identify any imminent or immediate action on the part of Ogden City justifying injunctive relief. Instead, they simply repeat Plaintiffs' allegations contained in the Complaint.

Furthermore, Plaintiffs have not demonstrated "a significant risk that [they] will experience harm that cannot be compensated after the fact by monetary damages." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1209 (10th Cir.2009) (citing *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003)). That a real property interest is at issue does not automatically entail that any impairment thereof would constitute irreparable injury, yet Plaintiffs fail to offer any substantive argument as to how they will be irreparably harmed in the event that the Court denies injunctive relief. In determining whether plaintiffs have made the requisite showing, the Court determines "whether such harm is likely to occur before the district court rules on the merits." *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1260 (10th Cir. 2003) ; *see Winter v. Nat'l Res. Defense Council, Inc.*, 555 U.S. 7, 22 (2008) (plaintiffs seeking preliminary relief must demonstrate that irreparable injury is likely in absence of injunction). An injury must be certain, great, actual "and not theoretical." *Heideman*, 348 F.3d at 1189. Irreparable harm is not harm that is "merely serious or substantial." *Id*. The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm. *Id*.

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 31 of 44

Plaintiffs have failed to make this showing. They have not demonstrated a certain, great, actual, and imminent injury such as to justify the Court's granting of injunctive relief—which is an extraordinary remedy. As such, Plaintiffs' request for injunctive relief should be denied.

        i.    <u>Plaintiffs' claim to have suffered a violation of their constitutional rights is without foundation.</u>

Plaintiffs claim that their constitutional rights have been and will be violated in the absence of injunctive relief and that this constitutes an irreparable injury. Plaintiffs offer nothing to substantiate this claim. First, Plaintiffs fail to establish how Ogden City's decision to exercise its contractual rights to not renew a lease agreement constitutes a constitutional violation. Instead, Plaintiffs simply repeat language from a lease agreement and claim that it constitutes a "blatant disregard of Plaintiffs' constitutional rights." Plaintiffs imply that the imposition of these lease terms was somehow connected with the revocation of the access badges for Ruth Kendrick, Dave Westwood, Jared Esselman,[4] Scott Major, and Shelia Garvey. This is false; Plaintiffs' proffered lease is between Seth Christopher, Katherine Schall, and the City—not any of the aforementioned parties—and there is no indication that the lease is connected with the revocation of any security badge.

Plaintiffs cannot simply allege that their constitutional rights have been violated and thereby circumvent their requirement to demonstrate an irreparable injury. As noted in Ogden City's Motion to Dismiss, filed previously and now submitted to the Court for decision, Plaintiffs have not identified any credible property right of which they are being deprived by the City.

---

[4] Mr. Esselman is a state director of aviation; the City has never revoked his badge access.

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 32 of 44

Rather, what is occurring is that the City is deciding to exercise its rights pursuant to contract and **not renew** lease agreements. This may disappoint Plaintiffs, but it is not a constitutional violation of any alleged right on their part.

        b.      *Imposing injunctive relief will wreak havoc on Ogden City's efforts to manage and maintain the Airport and would be adverse to the public interest.*

The second factor requires the Court to weigh the comparative injuries suffered by the parties should injunctive relief be granted—or not. "This factor is simply a comparison between the injury [Plaintiffs] would suffer should no [temporary restraining order] enter, ...versus the injury [Ogden City] would suffer if the [temporary restraining order] does enter." *Haggard v. Spine*, No. 09-cv-721, 2009 WL 1655030, *15 (D. Colo. June 12, 2009).

As discussed above, Plaintiffs have failed to demonstrate any concrete and imminent injury that would follow the denial of requested injunctive relief. The harm alleged is speculative and based on allegations concerning possible future conduct on the part of the City. Furthermore, the "harm" is the result of Ogden City exercising its rights pursuant to contract—not any affirmative "government taking" or course of conduct. By contrast, if Plaintiffs' request for injunctive relief is granted, it would wreak havoc on the City's efforts to manage and maintain the Airport. Plaintiffs claim that there is no threat of harm to the City, but this is flatly incorrect. Plaintiffs are seeking to prevent Ogden City from exercising its rights pursuant to the parties' agreements **and** to prevent the City from exercising **any** management of the facility pending a resolution of this matter by the Court. Plaintiffs want the City to be prevented from evicting hangar owners without any kind of qualification or condition, from increasing rent even if

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 33 of 44

necessitated by economic conditions, from negotiating and enforcing lease terms "that are not in harmony with the status quo," and from choosing to not renew leases as allowed by their lease agreements. In other words, Plaintiffs' request is that the City be wholly prevented from exercising its rights pursuant to its lease agreements. It is impossible to imagine crafting an order with sufficient detail and clarity based upon the Plaintiffs' overly broad and generalized requests.

Consider the implications of Plaintiffs' claim. Were Plaintiffs' request granted, the City could not evict any hangar owner—even if that hangar owner was in violation of the parties' lease agreement. The City's standard customary management of the Airport would be subject to continual review and approval by the Court to clear potential objections by Plaintiffs. The City would also be entirely prevented from exercising any rights pursuant to the respective lease agreements that Plaintiffs may claim are not "in harmony with the status quo." What if a hangar owner allowed their facilities to deteriorate to the point of dilapidation? Would the City be prevented from exercising its authority to ameliorate that condition?

Finally, each of Plaintiffs' requested forms of injunctive relief would prohibit or limit Ogden City's authority and capacity to act in accordance with federal and state statutes and regulations concerning the management of the Ogden Airport, as noted in Ogden City's Statement of Facts.

c.    *Plaintiffs have not demonstrated a substantial likelihood of success.*

Finally, Plaintiffs have not demonstrated a substantial likelihood of success. Defendants filed a Motion to Dismiss in August of this year. In that motion, Defendants outlined a series of arguments as to why Plaintiffs' claims fail as a matter of law. Rather than repeat those

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 34 of 44

arguments, Defendant will provide a simple summary and direct the Court's attention to its motion for a more thorough treatment.[5]

    i. <u>Plaintiffs have failed to demonstrate a substantial likelihood of success concerning their claim for estoppel and waiver.</u>

  Plaintiffs have failed to even allege facts sufficient to sustain a claim for estoppel and waiver and cannot demonstrate a substantial likelihood of success on the merits for that claim. As a rule, estoppel may not be invoked against a government entity. *Terry v. Retirement Bd.*, 157 P.3d 362, 364-65 (Utah Ct. App. 2007) (quoting *Anderson v. Public Serv. Comm'n*, 839 P.2d 822, 827 (Utah 1992)). This is because the doctrine of estoppel—were it to have full force against governmental entities—would "interfere with the discharge of governmental duties or where the officials on whose conduct estoppel is sought to be predicated acted beyond their power." *Kitsap-Mason Dairymen's Ass'n v. Washington State Tax Comm'n*, 467 P.2d 312 (Wash. 1970).

  Utah courts have rarely allowed exceptions to this rule, and the exceptions have been found when the government has issued very specific written representations by authorized government entities. *See Eldredge v. Utah State Retirement Bd.*, 795 P.2d 671 (Utah Ct.App.1990); *Celebrity Club, Inc. v. Utah Liquor Control Commission,* 602 P.2d 689 (Utah 1979). No such promise exists in this case; Plaintiffs have provided declarations from prior Ogden City Airport managers, but have failed to point to any **specific, written, and authorized**

---

[5] Defendant's arguments will focus on the merits of Plaintiffs' substantive claims, rather than their request for certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 35 of 44

representations by any government entity that could justify a claim for estoppel. In this case,

Plaintiffs have merely alleged estoppel and waiver—and do not even argue a likelihood of

success in their request for injunctive relief.

ii.  <u>Plaintiffs have failed to demonstrate a substantial likelihood of success concerning their claim for constitutional violations.</u>

Plaintiffs have not demonstrated a substantial likelihood of success concerning their

claims for constitutional deprivations. Plaintiffs claim that they have suffered both a physical and

regulatory taking as a result of Defendant's conduct. Neither claim bears up under any level of

scrutiny. Plaintiffs' claim is actually one for breach of contract—not a physical or regulatory

taking. Plaintiffs' claim is that by refusing to renew their lease agreements the City has "taken"

their property. This claim is nonsensical. Were Plaintiffs' claim correct, **any time** that a

government entity entered into any kind of a contract subject to renewal at the government's

discretion, the non-governmental party could claim that the government's refusal to renew was a

denial of their property rights. This principle has been recognized by federal courts; a plaintiff

suing in connection with a government contract "is entitled to a takings remedy only if it is

foreclosed from bringing a breach of contract action, i.e., if its contract rights have been 'taken'."

*Pi Electronics Corp. v. United States*, 55 Fed.Cl. 279, 285 (Fed. Cl. 2003); *Hughes*

*Communications v. United States*, 271 F.3d 1060, 1070 (Fed. Cl. 2002); *Castle v. United States*,

301 F.3d 1328, 1342 (Fed. Cir. 2002). When a claimant has a viable claim for breach of

contract—a takings claim has limited applicability. *See Pi Electronics*, 55 Fed. Cl. at 285. "This

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 36 of 44

is so because '[v]irtually every contract operates, not as a guarantee of particular future conduct, but as an assumption of liability in the event of non-performance.' " *Id.*

Plaintiffs' argument for a physical (and regulatory) taking misunderstand the relationship between the Fifth Amendment and government contracts. While Plaintiffs' lease interests are property that are subject to protection by the Fifth Amendment, the Supreme Court and federal courts have repeatedly held that for government contracts, as for any other property, Fifth Amendment issues potentially can arise when the federal government, through legislative or administrative action, interferes with the property owner's use of its property. *See First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 315, 107 S.Ct. 2378, 2385–86, 96 L.Ed.2d 250 (1987); *Richmond, Fredericksburg & Potomac R.R. v. United States,* 75 F.3d 648, 657 (Fed.Cir.1996) (*RF & P* ). In *Janicki Logging Co. Inc. v. U.S., 36 Fed.Cl. 338 (Fed. Cl. 1996),* the court found that the plaintiff did not state a taking claim because it did not allege "that the [government] ever engaged in legislative or administrative action that abrogated or repudiated any contract obligation or otherwise impaired plaintiff's ability to enforce the rights plaintiff secured under the contract." *Id.* at 346. "Hence, rather than acting as a sovereign and taking plaintiff's property for public use, the [government] acted in a proprietary capacity as a party to a contract and purported to exercise its rights for which it bargained under the contract." *Id.* "Plaintiff's property interest was not adversely affected because plaintiff remained unfettered in its ability to use the legal process defined in the contract...." *Id.* The facts and analysis are analogous in this case. Plaintiffs are free to sue for breach of contract and to claim estoppel and waiver—as they have done. They cannot, however,

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 37 of 44

transform a breach of contract claim into one for a constitutional taking when no taking for the public good has occurred. *See Cross Continent Dev., LLC v. Town of Akron, Colo., 742 F. Supp. 2d 1179, 1186 (D. Colo. 2010).*

Furthermore, Plaintiffs cannot even demonstrate that they have suffered a "classic" physical taking or regulatory taking for public use—and they certainly have not produced evidence to support this claim. Plaintiffs claim that Ogden City's decision to not renew their lease agreements and then to proceed with further developments of the Airport constitutes a physical and regulatory taking ignores the nature and purpose of just compensation caselaw. That the best evidence Plaintiffs can muster is a notice to quit provided to Wendy Marsell illustrates this point. Plaintiffs' property is not being "taken" so that it may be put to public use; instead, Ogden City is exercising **its** right pursuant to the parties' lease agreements to not renew those agreements. This is neither a physical or regulatory taking.

iii.    <u>Plaintiffs are not excused from demonstrating a substantial likelihood of success.</u>

In their motion, Plaintiffs claim that if they can establish three of the requirements necessary for injunctive relief— that the movant will suffer irreparable injury if the injunction is denied; that the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and that the injunction would not be adverse to the public interest—they are excused from demonstrating that they have a substantial likelihood of success to qualify for injunctive relief. Instead, they only have to prove that there are serious, substantial, difficult, and doubtful questions going to the merits that make the issue ripe for litigation and deserving of

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 38 of 44

more deliberate investigation. *See Federal Lands Legal Consortium v. United States,* 195 F.3d 1190, 1194 (10th Cir. 1999).  As demonstrated above, Plaintiffs have failed to satisfy the requirements necessary to meet this exception.

In addition, for the reasons discussed below, because the type of injunctive relief sought by Plaintiffs is historically discofavored, they are not entitled to rely on the modified-likelihood-of-success-on-the-merits standard. *O Centro*, 389 F.3d at 975-76. "Instead, a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms, and may not rely on our modified likelihood-of-success-on-the-merits standard." *Id*. Plaintiffs have failed in all respects.

### 3.    *Plaintiffs request for injunctive relief is disfavored.*

In *SCFC ILC, Inc. v. Visa USA, Inc.,* the Tenth Circuit identified the following three types of specifically disfavored preliminary injunctions and concluded that a movant must "satisfy an even heavier burden of showing that the four [preliminary injunction] factors ... weigh heavily and compellingly in movant's favor before such an injunction may be issued": (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits. 936 F.2d 1096, 1098–99 (10th Cir.1991). The Tenth Circuit has made clear that any preliminary injunction fitting within one of the disfavored categories must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course. *See O Centro*, 389 F.3d at 975-76. "Furthermore, because a historically disfavored preliminary injunction operates outside of the normal

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 39 of 44

parameters for interim relief, movants seeking such an injunction are not entitled to rely on [the Tenth Circuit's] modified-likelihood-of-success-on-the-merits standard. Instead, a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms, and may not rely on our modified likelihood-of-success-on-the-merits standard." *Id*.

        a.    *Plaintiffs' request for injunctive relief does not preserve the status quo.*

Plaintiffs' claim that they are merely seeking to maintain the status quo pending the resolution of this matter, but this ignores the nature and scope of Plaintiffs' request for relief. Plaintiffs are requesting that this Court order Ogden City to affirmatively renew the parties' lease agreements concerning certain hangars located at the Ogden City Airport. In effect, Plaintiffs are seeking affirmative relief from this Court that creates new contractual rights in their benefit and at the detriment of Ogden City. This is clearly more than a matter of "preserving the stsatus quo." In addition, Plaintiffs are requiring the Court to interpose itself in the daily administration and management of the Ogden City Airport and to prohibit the City from continuing with its development and management of the Airport. This does not preserve the status quo and Plaintiffs should be required to meet a heightened burden before obtaining any kind of injunctive relief.

        b.    *Plaintiffs' request for injunctive relief is mandatory—not simply prohibitive—and affords them the relief that they would obtain at trial.*

Federal courts have characterized an injunction as mandatory if the requested relief "affirmatively require[s] the nonmovant to act in a particular way, and as a result ... place[s] the

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 40 of 44

issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction." *O Centro*, 389 F.3d at 979 (quoting *SCFC ILC, Inc.*, 936 F.2d at 1099). The Tenth Circuit has stated that "when a court issues a mandatory preliminary injunction, we should more closely scrutinize whether the irreparable harm to the movant substantially outweighs any harm to the non-movant or to the public interest. The movant should clearly show the exigencies of the situation justify the rather unusual injunction." *Id*. at 1003; *see also Tom Doherty Assocs.*, 60 F.3d at 34 ("[A] mandatory injunction should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial or preliminary relief." (internal quotations omitted)); *Anderson*, 612 F.2d at 1114 (mandatory preliminary relief justified only where "facts and law clearly favor the moving party" or where "extreme or very serious damage will result"); *In re Microsoft*, 333 F.3d at 525 (showing for preliminary mandatory relief "must be indisputably clear"); *Wetzel*, 635 F.2d at 286 (mandatory preliminary injunctions "should be granted only in those circumstances when the exigencies of the situation demand such relief").

Plaintiffs' requested relief is not merely prophylactic, but requests the Court to ensure that Ogden City does not evict hangar owners—even if they are in breach of their lease agreements—to ensure that the City does not increase rent "beyond what was allowed for by historic lease terms" or impose and enforce new lease terms "that are not in harmony with the status quo." In addition, Plaintiffs request that the Court ensure that the City not "[p]revent or refuse hangar owners from exercising their rights of first refusal to renew their leases." Each of these requests requires this Court to "provide ongoing supervision to assure the nonmovant is

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 41 of 44

abiding by the injunction" and also entails the mandating of specific action on the part of Ogden City. The City can no longer exercise its function as owner and manager of the Ogden City Airport and cannot even exercise its basic contractual right to not renew Plaintiffs' leases— Plaintiffs' injunctive relief would require the City to affirmatively act so as to be bound to recognize their claimed lease interests.

Finally, Plaintiffs' requested injunctive relief should be denied because it largely affords them the relief that they would obtain at trial. Plaintiffs are requesting that the Court recognize their right to perpetual renewal of their lease agreements, protection against any changes in the lease agreements that are not "in harmony with the status quo" or justified by "historic lease terms," and the right to continued access to the Airport. Besides their requests for damages in the complaint, these measures of injunctive relief are nearly identical to what Plaintiffs are seeking in their Complaint.

Plaintiffs' proposed preliminary injunction would alter the status quo, is mandatory, and affords them all the relief that they could reasonably hope to recover at trial. As such, they carry a higher burden of persuasion to justify their request to the Court. Plaintiffs have failed, however, to even demonstrate that they meet the conditions imposed by Rule 65 of the Federal Rules of Civil Procedure—to say nothing of the heightened standard imposed by the nature of their requested relief. *See* *O Centro*, 389 F.3d at 1003.

## **CONCLUSION**

Plaintiffs have failed to satisfy the requirements of Rule 65 of the Federal Rules of Civil Procedure and also cannot meet the heightened burden imposed as a result of the nature of their

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 42 of 44

request for injunctive relief. As a result, Ogden City respectfully requests that the Court deny

their motion and request for injunctive relief.

DATED this 12th day of November, 2021.

SMITH KNOWLES, P.C.

/s/ Ken Brown
Stephen F. Noel
Ken Brown
*Attorneys for Defendant Ogden City*

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 43 of 44

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of November, 2021 I filed the foregoing pleading electronically through the federal court system.  I certify that on such date I served the foregoing pleading on the following parties by electronic means through the federal courts online filing system:

Douglas M. Durbano
John E. Keiter
DURBANO LAW FIRM, P.C.
3103 S. 1730 E.
Salt Lake City, Utah 84106
office@durbanolawfirm.com
john@durbanolawfirm.com

Bruce R. Baird
2150 S. 1300 E., 5th Floor
Salt Lake City, Utah 84106
bbaird@difficultdirt.com

/s/ Shannon Strausbaugh
Paralegal

Defendant Ogden City's Opposition to Plaintiffs' Motion for Preliminary Injunction
*Ogden Regional Airport Association, et al. v. Ogden Airport*
Page 44 of 44