THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| OGDEN REGIONAL AIRPORT ASSOCIATION, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> OGDEN CITY AIRPORT and OGDEN CITY, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** <br><br> Case No. 1:21-cv-00075-DBB-DBP <br><br> District Judge David Barlow |

This case involves a dispute between dozens of plaintiffs and Defendants Ogden City Airport and Ogden City regarding hangars Plaintiffs have built and maintained on land located at and leased from Ogden City Airport.[1] Plaintiffs claim that Defendants are planning to cease renewing Plaintiffs' ground leases, contrary to Defendants' historical course of conduct, and rely on the abandonment provisions in the parties' lease agreements to seize ownership of and use Plaintiffs' hangars to improve the profitability of Ogden City Airport.[2] Plaintiffs argue that these actions violate their equitable and constitutional property rights in their hangars.

Defendants have moved to dismiss Plaintiffs' amended class action complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively.[3] Plaintiffs have filed a

---

[1] *See* ECF No. 7, filed June 15, 2021.

[2] *See generally id.*

[3] ECF No. 11, filed August 23, 2021.

response[4] opposing the motion and Defendants have replied.[5] Having considered the parties'

briefing and relevant law, the court determines that oral argument is not needed to resolve the

motion.[6]

## BACKGROUND

Ogden City Airport "is a public aviation facility owned and managed by" the city of

Ogden, Utah.[7] Historically, Defendants have leased ground within the Ogden City Airport

compound to the public for the construction, maintenance, and use of aircraft hangars.[8] Under

the terms of the ground lease agreements,[9] lessees own any hangars or other improvements they

have built on the leased ground.[10] However, if a lease is not renewed, and lessees fail to remove

their hangars and other improvements within 60 days of the agreement's expiration or

termination, the improvements are deemed abandoned and become the property of Defendants.[11]

---

[4] ECF No. 16, filed October 4, 2021.

[5] ECF No. 29, filed November 10, 2021.

[6] *See* DUCivR 7-1(f).

[7] ECF No. 7 at 12. The court "present[s] the facts in the light most favorable to [Plaintiffs], drawing all reasonable inferences in [their] favor." *See Donahue v. Wihongi*, 948 F.3d 1177, 1183 (10th Cir. 2020).

[8] *Id.* at 13–14.

[9] Plaintiffs state some of the terms of their ground lease agreements with Defendants in their amended complaint but did not submit a copy of any such agreement. Defendants, however, submitted their agreement with Durbano Properties LLC, one of the named plaintiffs, as an exhibit with their motion to dismiss. *See* ECF No. 11 at 29–50. "Although the sufficiency of a complaint must rest on its contents alone," *Wasatch Equal. v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016) (internal quotation marks omitted), the court may also consider "(1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity; and (3) matters of which a court may take judicial notice." *Id.* Because the Durbano Properties LLC ground lease agreement is one of the dozens of ground lease agreements referred to in Plaintiffs' amended complaint, its authenticity is not disputed, it provides an example of the terms each of the agreements contains, and those terms are central to Plaintiffs' claims, the court will rely on the Durbano Properties agreement when considering the material terms of the lease agreements between Plaintiffs and Defendants.

[10] ECF Nos. 7 at 16; 11 at 32–33, 35.

[11] ECF Nos. 7 at 16; 11 at 32–33, 35, 44.

Defendants have not acquired ownership of any hangars in this way for several decades, however, because they virtually always have renewed ground lease agreements upon Plaintiffs' request.[12]

Plaintiffs are individuals and entities who own hangars on leased ground at Ogden City Airport.[13] Due to Defendants' historical practice of consistently renewing lease agreements, some hangars have been passed from generation to generation within families or been put into family trusts for inheritance.[14] The consistency and ease with which ground leases have been renewed has led many hangar owners to spend hundreds of thousands, and even millions, of dollars to build, maintain, and upgrade their hangars over the years.[15]

At the end of 2018, Ogden City Airport proposed adopting a new business plan to improve its profitability, as it was operating at a loss of approximately $450,000 per year.[16] As one way to increase its revenue, Ogden City Airport proposed modifications to its leasing policy.[17] All future ground leases for construction of new hangars would last no longer than a period of time sufficient to allow lessees to amortize the costs of construction, after which the hangars would belong to Ogden City Airport and be leased out.[18] Similarly, all ground leases for existing hangars would not be renewed beyond the point at which their owners could have adequately amortized their costs.[19] If owners did not remove their hangars after their existing

---

[12] ECF No. 7 at 13, 16.

[13] With the exception of Ogden Regional Airport Association, Inc., which "is an association representing the interests of various individuals whose hangars are located at Ogden [City] Airport." ECF No. 7 at 12.

[14] *Id.* at 13.

[15] *Id.* at 14, 17.

[16] *Id.* at 14. The proposed business plan was attached to the amended complaint. *See* ECF No. 7-1.

[17] ECF No. 7 at 14–15.

[18] *Id.*; *see also* ECF No. 7-1 at 5–6.

[19] *Id.*

ground leases expired, Ogden City Airport would deem the hangars abandoned, claim ownership pursuant to the lease agreement, and then lease them if they were younger than 50 years old and destroy them if they were older.[20] The business plan was not formally adopted at that time.[21]

However, on or about April 5, 2021, Bryant Garrett, the manager of Ogden City Airport, submitted proposed amendments to Title 8 of Ogden City's Municipal Code that would implement the business plan's proposed modifications to ground leases.[22] Over objections from the Ogden City Airport advisory board, the Ogden Regional Airport Association, and the majority of hangar owners, the Ogden City Council adopted the amendments to Title 8.[23] According to Plaintiffs, the amendments allow Defendants to "exploit" the abandonment provisions in the ground lease agreements to take ownership of Plaintiffs' hangars as soon as Defendants decide not to renew the leases.[24] Although the agreements allow hangar owners to remove their hangars when their lease term ends, the great expense of removal makes it unlikely that they will do so.[25] Thus, Defendants' refusal to renew Plaintiffs' lease agreements as consistently as they have done in the past may prevent Plaintiffs from seeing any significant return on their investments in building, updating, and improving their hangars.[26]

On May 26, 2021, Plaintiffs filed a complaint against Defendants seeking relief on five grounds: estoppel, physical taking, regulatory taking, deprivation of rights under 42 U.S.C.

---

[20] *Id.*

[21] ECF No. 7 at 15.

[22] *Id.*

[23] *Id.* at 17.

[24] *Id.* at 16.

[25] *Id.*

[26] *Id.* at 17.

§ 1983, and a claim for declaratory relief.[27] On June 15, 2021, Plaintiffs filed an amended class action complaint asserting the same five causes of action.[28] Defendants moved to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on August 23, 2021.[29]

## LEGAL STANDARDS

Motions to dismiss for lack of jurisdiction under Rule 12(b)(1) generally take one of two forms. First, a moving party may make "a facial attack on the complaint's allegations as to subject matter jurisdiction."[30] "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."[31] Second, a party may go beyond a complaint's allegations and challenge the facts upon which subject matter jurisdiction is based, known as a factual attack.[32] When reviewing a factual attack, the court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts."[33] Ultimately, the burden of establishing subject matter jurisdiction "rests upon the party asserting jurisdiction."[34]

---

[27] *See* ECF No. 2.

[28] *See* ECF No. 7.

[29] The judge originally presiding over this matter recused on December 21, 2021, and the matter was reassigned.

[30] *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001).

[31] *Id.*

[32] *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001).

[33] *Id.*

[34] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Under Rule 12(b)(6), dismissal is required when the complaint, standing alone, is insufficient to state a claim upon which relief may be granted.[35] To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[36] Generally, to be facially plausible, each claim must be supported by well-pleaded facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[37] There must be "more than a sheer possibility that a defendant has acted unlawfully."[38] A claim supported only by "labels and conclusions," "a formulaic recitation of the elements," or "naked assertions devoid of further factual enhancement" is deficient and subject to dismissal.[39] In assessing whether a claim is plausible, courts must "draw on [their] judicial experience and common sense."[40]

## DISCUSSION

Defendants argue that Plaintiffs' claims should be dismissed on two independent grounds. First, Defendants argue that the court lacks jurisdiction over Plaintiffs' proposed class action.[41] Second, Defendants argue that Plaintiffs' estoppel, physical taking, regulatory taking, and

---

[35] *See Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.").

[36] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[37] *Id.*

[38] *Id.*

[39] *Id.* (citations, brackets, and internal quotation marks omitted).

[40] *Id.* at 679.

[41] ECF No. 11 at 5–11.

unlawful deprivation of airport access claims should be dismissed for failure to state a claim.[42]
The court will address these arguments in turn.

## I.      The Court Has Jurisdiction Over this Action.

Plaintiffs assert that the court has jurisdiction under 28 U.S.C. § 1331 because this
dispute involves claims under federal law, specifically, their physical taking, regulatory taking,
and § 1983 claims.[43] Defendants argue that, notwithstanding Plaintiffs' federal claims, the court
lacks jurisdiction because (1) 28 U.S.C. § 1332(d)(5) prohibits federal courts from exercising
jurisdiction over class actions in which "States, State officials, or other governmental entities
against whom the district court may be foreclosed from ordering relief" are "primary
defendants," as is the case here, and (2) the current class action falls within the "local
controversy exception" of the Class Action Fairness Act of 2005 ("CAFA").[44]

Defendants' jurisdiction arguments are misguided, however, because neither the
government entity defendant exception nor the local controversy exception applies to class
actions that are based on federal question jurisdiction, such as this case. The local controversy
and government entity exceptions are both part of CAFA and are codified at 28 U.S.C.
§ 1332(d)(4) and (d)(5), respectively.[45] The fact that Congress placed these limitations on
jurisdiction over class actions within the diversity jurisdiction statute indicates that they limit

---

[42] *Id.* at 12–26.

[43] ECF No. 7 at 10.

[44] ECF No. 11 at 5, 8–9. As part of their jurisdictional argument, Defendants ask the court to deny
certification of Plaintiffs' class for lack of commonality under Federal Rule of Civil Procedure 23(a). *See
id.* at 9–11. However, the issue of class certification under the Rule 23 factors is not presently before the
court and does not bear upon the question of whether this case should be dismissed for lack of jurisdiction
or otherwise. Denying certification only prevents the formation of a class action; it does not determine the
merits of a plaintiff's claims. Therefore, the court will not consider Defendants' class certification
arguments. *See Meyers ex rel. Meyers v. Board of Education*, 905 F. Supp. 1544, 1578 (D. Utah 1995)
("The court has discretion to determine the most appropriate point in the proceedings for certification.").

[45] *See See* Pub. L. No. 109-2, § 4(a)(5), 119 Stat. 4, 10 (2005).

only the jurisdiction district courts otherwise possess under that statute. Further, nothing in the language of those limitations indicates that Congress intended to divest federal courts of jurisdiction over class actions in any other context.[46] Indeed, the court has found no authority—and Defendants have cited none—that suggests that they do.

Because some of Plaintiffs' claims arise under federal law and the others fall within the court's supplemental jurisdiction, Plaintiffs have met their burden of establishing that the court has subject matter jurisdiction over this case. Therefore, Defendants' motion to dismiss under Rule 12(b)(1) is denied.

## II.     Plaintiffs Have Failed to State Any Claim Upon Which Relief Can Be Granted.

Defendants argue that Plaintiffs' estoppel, physical taking, regulatory taking, and unauthorized deprivation of airport access claims should be dismissed for failure to state a claim. Defendants do not address Plaintiffs' claim for declaratory relief in their motion to dismiss, but the fate of that claim is largely intertwined with the fate of the others, as will be discussed in more detail below. Because the court ultimately finds that Plaintiffs have failed to state claims of estoppel, physical taking, regulatory taking, and a deprivation of rights under § 1983, and Plaintiffs have provided no other jurisdictional basis for the court to provide the additional declaratory relief they seek, Plaintiffs' Amended Complaint must be dismissed.

### A.     Plaintiffs Have Failed to State a Claim for Promissory Estoppel.

Plaintiffs' first claim is that they are entitled to recover damages under the doctrine of estoppel.[47] According to Plaintiffs, an estoppel claim arises when a party "lulls another into false

---

[46] *See, e.g.*, *Blevins v. Aksut*, 849 F.3d 1016, 1020 (11th Cir. 2017) ("Nothing in the language of § 1332(d)(4) indicates that Congress intended to divest district courts of jurisdiction under § 1331.").

[47] ECF No. 7 at 18–19.

security and into a position he would not take only because of such conduct."[48] They allege that Defendants' consistent renewing of hangar owners' ground leases in the past invoked in them a sense of continuing ownership that has led them to invest hundreds of thousands or millions of dollars in their hangars.[49] If Defendants stop renewing their leases, the argument goes, Plaintiffs will lose the investments they made in reliance on Defendants' historical course of conduct.[50]

Defendants argue that Plaintiffs' estoppel claim should be dismissed for two reasons. First, Defendants argue that estoppel claims are generally unavailable against government entities, such as themselves, and Plaintiffs cannot show that the limited exception to this rule applies here.[51] Second, although the Amended Complaint does not specify whether Plaintiffs' estoppel claim is based on promissory estoppel or equitable estoppel, Defendants argue that it must be considered a promissory estoppel claim, and that Plaintiffs have failed to allege that Defendants made any promise that could support such a claim.[52]

Defendants are correct that, "as a general rule, estoppel may not be invoked against a governmental entity."[53] The sole exception to that rule is when "the facts may be found with such certainty, and the injustice suffered is of sufficient gravity," that it is clearly in the interests of justice to apply estoppel.[54] However, there is no need to determine whether that rule or its

---

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] ECF No. 11 at 12–14.

[52] *Id.* at 14–16.

[53] *Anderson v. Pub. Serv. Comm'n of Utah*, 839 P.2d 822, 827 (Utah 1992).

[54] *Id.* (quoting *Utah State Univ. of Agric. & Applied Sci. v. Sutro & Co.*, 646 P.2d 715, 720 (Utah 1982)).

exception applies here because Plaintiffs have failed to adequately allege a claim of promissory estoppel.[55]

Fundamentally, estoppel is an equitable doctrine through which courts prevent injustice by barring a party from asserting certain rights, facts, or positions when it would be inequitable to allow them to do so.[56] Two of the most commonly recognized types of estoppel under Utah law are equitable estoppel and promissory estoppel.[57] Equitable estoppel prevents a party from contradicting or repudiating a past representation when doing so would harm another party who has relied on it.[58] Promissory estoppel provides a basis for enforcing a promise a party has detrimentally relied on when the promise cannot otherwise be considered contractually binding.[59]

Although they are similar, Utah law has traditionally recognized equitable and promissory estoppel as "distinct legal principles" on two main grounds.[60] First, equitable estoppel applies when a party has made representations of past or present fact, whereas promissory estoppel applies when a party makes a representation or promise regarding its future

---

[55] *See Prows v. State*, 822 P.2d 764, 769 (Utah 1991) (considering whether plaintiff could assert a promissory estoppel claim against the state only after establishing that plaintiff had adequately alleged the elements of promissory estoppel).

[56] *See Hilton v. Sloan*, 108 P. 689, 694 (1910); *Brixen & Christopher, Architects v. Elton*, 777 P.2d 1039, 1043 (Utah Ct. App. 1989); 31 C.J.S. *Estoppel and Waiver* § 1, Westlaw (database updated November 2021); 28 Am. Jur. 2d *Estoppel and Waiver* § 1, Westlaw (database updated November 2021).

[57] *See Youngblood v. Auto-Owners Ins. Co.*, 158 P.3d 1088, 1092 (Utah 2007); *Ravarino v. Price*, 260 P.2d 570, 574–78 (1953).

[58] *Youngblood*, 158 P.3d at 1092–93.

[59] *Id.* at 1092.

[60] *Id.*

10

intent or actions.[61] Second, equitable estoppel is a defensive measure, whereas promissory estoppel is usually a cause of action.[62]

The parties' dispute over Plaintiffs' estoppel claim is based heavily on whether these traditional distinctions apply here. Defendants argue that because Plaintiffs assert estoppel as a cause of action instead of a defense, their claim must be analyzed as one of promissory estoppel.[63] Analyzed as such, Defendants argue, Plaintiffs' claim fails because they have not alleged that Defendants made any reasonably certain and definite promise regarding the renewal of ground lease contracts.[64] Plaintiffs disagree, arguing that the Utah Supreme Court has found that the traditional distinctions between equitable and promissory estoppel "ha[ve] become inconsequential" and eliminated them in *Youngblood v. Auto-Owners Insurance Co.*[65] According to Plaintiffs, *Youngblood* essentially established a single type of "estoppel" action that is based on the traditional elements of equitable estoppel, and the allegations in their Amended Complaint adequately state such a claim.[66]

While it is true that the Utah Supreme Court recognized a need to "depart from [the] traditional distinctions between equitable and promissory estoppel in evaluating the applicability of estoppel" in *Youngblood*, Plaintiffs' interpretation and application of that case here is erroneous. The *Youngblood* court repeatedly explained that it was the type of case before it—an insurance coverage case—that warranted the departure from strict adherence to the traditional

---

[61] *Id.* at 1092–93.

[62] *Id.*

[63] ECF No. 11 at 12.

[64] *Id.* at 14–17.

[65] ECF No. 16 at 7–8 (quoting *Youngblood*, 158 P.3d at 1094).

[66] *Id.* at 8–9.

distinctions between equitable and promissory estoppel.[67] There are no indications that the Utah

Supreme Court intended to eliminate or disregard the traditional distinctions in all cases in which

a plaintiff alleges a form of estoppel, and the fact that some Utah state and federal courts have

continued to recognize and follow the traditional distinctions after *Youngblood* further

discourages any inference of such intent.[68]

     Furthermore, the factual circumstances to which the Utah Supreme Court applied

"principles of estoppel" in *Youngblood* and its predecessors provide no grounds to believe that

*Youngblood* created a new, stand-alone estoppel cause of action or otherwise altered the

traditional distinction that equitable estoppel is a defensive measure while promissory estoppel is

a cause of action. In *Youngblood* and other similar insurance coverage-related cases, plaintiffs

asserted estoppel to enforce an agent's or insurer's representations about the scope, effect, or

interpretation of insurance coverage that were actually inconsistent with the terms of an

---

[67] *See Youngblood*, 158 P.3d at 1092 ("*[I]n insurance coverage cases like this one* the technical distinction between equitable and promissory estoppel is of less analytic utility and approaches being irrelevant. Consequently, we depart from our traditional distinctions between equitable and promissory estoppel in evaluating the applicability of estoppel, as a general concept, to *cases of this type*." (emphasis added)); *id.* at 1093 ("Ultimately, the distinctions make little difference *in the matter of insurance coverage disputes . . . .*" (emphasis added)); *id.* ("[T]he difference between equitable and promissory estoppel has become inconsequential particularly in *insurance* cases."); *id.* at 1094 ("Although our prior caselaw may have made a distinction between equitable estoppel and promissory estoppel, we must modify that position. *In this case, and in other similar insurance coverage claims*, it is unnecessary to decide whether the agent's misrepresentations are to past or to future facts." (emphasis added).

[68] *See, e.g.*, *Water Servs. v. Zoeller Co.*, No. 2:12-CV-723 TS, 2013 WL 5964457, at *6 (D. Utah Nov. 7, 2013) ("There appears to be confusion between equitable estoppel and promissory estoppel on the part of both parties. 'The primary difference between promissory and equitable estoppels is that the former is offensive and can be used for the affirmative enforcement of a promise whereas the latter is defensive and can be used only for preventing the opposing party from raising a particular claim or defense.' Because equitable estoppel is not a claim but a defense, the Court will grant summary judgment in favor of Defendant on Plaintiffs' equitable estoppel claim." (citation omitted)); *Howick v. Salt Lake City Corp.*, 424 P.3d 841, 845 (Utah 2018) ("Although equitable estoppel can be a *defense* to a contract claim, it requires proof of three elements unrelated to the elements of contract." (emphasis added)); *ZB, N.A. v. Crapo*, 394 P.3d 338, 344 (Utah 2017) ("To make out an estoppel *defense*, a *defendant* must prove three elements"—the three elements for equitable estoppel (emphasis added)).

agreement into which the parties entered.[69] Thus, estoppel was not asserted as the cause of action in these cases—the parties' agreement, in most cases an insurance policy, was the fundamental basis for recovery—but as a defensive measure to prevent an insurer from asserting that an agreement should be interpreted or applied in a way that was inconsistent with a previous representation regarding its interpretation, application, or coverage.[70] In other words, *Youngblood* recognized that "[e]stoppel may be applied to modify terms of an insurance policy when" the elements of equitable estoppel are met, but that does not mean that it replaced the policy as the basis for recovery.[71] In this way, the application of "principles of estoppel" in *Youngblood* and its predecessors is similar to the application of waiver in any breach of contract action: available to be asserted as a defensive measure when attempting to enforce an agreement, but not as a stand-alone cause of action.[72] Therefore, there is no basis for the court to conclude that the traditional

---

[69] *See, e.g.*, *Youngblood*, 158 P.3d at 1091 (plaintiff sought to enforce an agent's assurances "that he would be covered under the [underinsured motorist] provisions of the policy in the event he was struck and injured while a pedestrian" even though the policy eventually signed clearly "d[id] not extend protection to him" in such circumstances); *Harding v. Indus. Comm'n of Utah*, 28 P.2d 182, 184 (Utah 1934) (plaintiff sought to enforce coverage that was provided when insurer later claimed that it had previously misinterpreted the scope of coverage); *Benge v. Cody Ekker Constr.*, 451 P.3d 667, 673 (Utah Ct. App. 2019) (employee sought to enforce worker's compensation coverage on the basis that coverage was previously provided); *Travelers Ins. Co. v. Kearl*, 896 P.2d 644, 646–48 (Utah Ct. App. 1995) (plaintiff sought to enforce coverage of a vehicle involved in an accident when insurer had previously allowed him to include a new vehicle on his policy through a phone call without immediately providing all the details the policy required for a vehicle to be insured).

[70] *See Youngblood*, 158 P.3d at 1094; *see also Harding*, 28 P.2d at 184–85 (estopping an insurer from claiming that its policy did not cover the plaintiff's injuries after the insurer had previously stated that the injuries were covered, paid compensation, and did not assert that it had mistakenly provided coverage until after plaintiff's opportunity to challenge any denial of coverage had passed due to the statute of limitations).

[71] *See Youngblood*, 158 P.3d at 1094.

[72] *See id.* at 1093 n.10 ("[T]here is no independent cause of action for 'equitable estoppel' ...—it may only be asserted as a defense. The only sense in which there is a cause of action for 'equitable estoppel' is insofar as the phrase is sometimes used interchangeably with *promissory* estoppel, a related but distinct concept." (alterations in original) (quoting *Jodek Charitable Trust, R.A. v. Vertical Net, Inc.*, 412 F. Supp. 2d 469, 477 (E.D. Pa. 2006))); 28 Am. Jur. 2d *Estoppel and Waiver* § 183 ("Waiver is not a cause of action because it cannot create liability in and of itself, and a cause of action cannot be based on a waiver.

distinctions between equitable and promissory estoppel—particularly the distinction that equitable estoppel is a defense while promissory estoppel is usually a cause of action—did not survive *Youngblood*.

Accordingly, Plaintiffs' "estoppel" claim is most appropriately analyzed under the doctrine of promissory estoppel. Plaintiffs assert estoppel as a cause of action, not a defense; the alleged representation at the heart of their estoppel claim is essentially a promise—that Defendants would always renew their ground leases—not a representation of past or present fact. Further, to the extent that the "principles of estoppel" recognized in *Youngblood* are applicable in this type of case, Plaintiffs have failed to show any agreement that governed the parties' rights with respect to the renewal of ground leases[73] or that Defendants ever made representations inconsistent with such an agreement. Thus, Plaintiffs' estoppel claim can survive Defendants' motion to dismiss only if they have adequately stated a claim of promissory estoppel.

A review of Plaintiffs' Amended Complaint reveals that they have failed to do so. Promissory estoppel requires a showing of four elements:

(1) "[t]he plaintiff acted with prudence and in reasonable reliance on a promise made by the defendant,"

(2) "the defendant knew that the plaintiff had relied on the promise which the defendant should reasonably expect to induce action or forbearance on the part of the plaintiff or a third person,"

---

It follows that a waiver is defensive in nature and operates to prevent the loss of existing rights." (footnotes omitted)).

[73] The ground lease agreements between the parties do include a provision giving hangar owners a right of first refusal to renew the leases. *See* ECF No. 7 at 14; 11 at 32–33. However, Plaintiffs do not claim that this provision gave them any right to an automatic renewal of their lease agreements, and rightly so. Under Utah law, a right of first refusal to renew provision "constitute[s] only an offer to give [the lessee] the first opportunity to lease the property at such rental as the lessor would be willing to lease to anyone," not a "right or assurance of a new lease." *Valley Lane Corp. v. Bowen*, 592 P.2d 589, 591 (Utah 1979). There is no other provision in the ground lease agreements that touches upon the parties' obligations with respect to renewing the lease.

(3) "the defendant was aware of all material facts," and

(4) "the plaintiff relied on the promise and the reliance resulted in a loss to the plaintiff."[74] Plaintiffs have failed to show that Defendants, through their historical conduct or otherwise, made any promise with respect to future ground lease renewals that could be considered reasonably "clear and definite."[75] At most, Plaintiffs have alleged a subjective belief that Defendants would always renew the ground leases upon their request, but this does not support a promissory estoppel claim.[76] Additionally, Plaintiffs have made no allegations as to whether Defendants were aware of all material facts or why Defendants reasonably should have expected that renewing contracts for fixed periods of time would induce Plaintiffs to make investments in their hangars that they would not otherwise have made.

Because Plaintiffs cannot assert equitable estoppel as a stand-alone cause of action, and they have failed to adequately allege all elements of promissory estoppel, their estoppel claim must be dismissed for failure to state a claim.

### B.   Plaintiffs Have Failed to State a Physical Taking Claim.

Plaintiffs' second claim is that Defendants' plan to cease lease renewals destroys their personal property rights in their hangars.[77] Because Defendants do not intend to offer Plaintiffs just compensation upon seizing ownership of the hangars when leases are not renewed, Plaintiffs argue, Defendants' actions amount to an unconstitutional physical taking.[78]

---

[74] *Id.* at 1092 (alteration in original) (quoting *Nunley v. Westates Casing Servs., Inc.*, 989 P.2d 1077, 1088 (Utah 1999)).

[75] *See id.* at 1093 (quoting 28 Am. Jur. 2d *Estoppel and Waiver* § 35 (2004)); *Nunley*, 989 P.2d at 1089.

[76] *See Nunley*, 989 P.2d at 1089 ("[A] claimant's subjective understanding of the promissor's statements cannot, without more, support a promissory estoppel claim.").

[77] ECF No. 7 at 19–20.

[78] *Id.*

Defendants argue that Plaintiffs' physical taking claim should be dismissed for three reasons. First, Defendants argue that Plaintiffs' property rights in their hangars are governed by the lease agreements between them.[79] Defendants assert that Plaintiffs can obtain a takings remedy in such circumstances only if Defendants have prevented them from bringing a breach of contract action by taking their contractual rights, and Plaintiffs have made no such allegations.[80] Second, Defendants argue that Plaintiffs' claim fails as a matter of law because they have failed to allege both that they have a credible property interest in their hangars and that Defendants are "taking" it for a public use.[81] Third, Defendants argue that Plaintiffs' claim must be dismissed as a matter of public policy, because recognizing a taking in these circumstances "would wreak havoc upon governmental entities' efforts to manage their lease and license agreements."[82] Because the court agrees that the first of these reasons warrants dismissal, it will only address that argument.

A physical taking occurs whenever "the government physically takes possession of an interest in property for some public purpose."[83] "Taking claims rarely arise under government contracts because the Government acts in its commercial or proprietary capacity in entering contracts, rather than in its sovereign capacity."[84] In fact, "it is well established that a plaintiff who is suing in connection with a government contract 'is entitled to a takings remedy only if it is foreclosed from bringing a breach of contract action, *i.e.*, if its contract rights have been

---

[79] ECF No. 11 at 19–20.

[80] *Id.* at 19–20.

[81] *Id.* at 22.

[82] *Id.* at 23.

[83] *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002).

[84] *Hughes Comm'ns Galaxy, Inc. v. United States*, 271 F.3d 1060, 1070 (Fed. Cir. 2001).

'taken.'"[85] Thus, when rights related to a contract with a government are in dispute, "interference with [those] rights generally gives rise to a breach claim not a taking claim."[86]

Plaintiffs argue that their physical taking claim does not arise under their lease agreements because the agreements concern only "the *ground* upon which the hangars sit," not the hangars themselves.[87] According to Plaintiffs, Defendants have no right to occupy or take their hangars, so "*any* occupation or exclusion of Plaintiffs' hangars amounts to a taking."[88]

Although it is true that Plaintiffs leased ground—and not hangars—from Defendants, Plaintiffs have provided no grounds from which the court can reasonably infer that the lease agreements do not control Plaintiffs' property interests in their hangars. The allegations in Plaintiffs' Amended Complaint, and the copy of a lease provided by Defendants, indicate that Plaintiffs own their hangars while their ground leases are in effect. However, after the ground leases expire, the hangars—if they are not removed by their owners—are considered abandoned property of which Defendants can claim ownership.[89] Plaintiffs' argument that Defendants cannot "occupy or take Plaintiffs' hangars"[90] is therefore a dispute of contractual rights, either

---

[85] *Cross Continent Dev., LLC v. Town of Akron*, 742 F. Supp. 2d 1182, 1184 (D. Colo. 2010) (quoting *PI Elecs. Corp. v. United States*, 55 Fed. Cl. 279, 285 (2003)).

[86] *Sun Oil Co. v. United States*, 572 F.2d 786, 818 (Ct. Cl. 1978) (citation omitted).

[87] *See* ECF No. 16 at 12, 14.

[88] *Id.* at 14.

[89] *See* ECF Nos. 7 at 15–16; 11 at 33, 44.

[90] Plaintiffs' Amended Complaint is not a model of clarity, and it is not entirely evident how, exactly, Ogden City Airport has physically taken Plaintiffs' hangars. Indeed, the Amended Complaint suggests that Ogden City Airport *intends* to take Plaintiffs' hangars but has not yet done so. *See* ECF No. 7 at 19 ("The Airport's Business Plan lays out its *scheme and intent* to take possession of each and every hangar located within its compound whilst the hangar still has useful life and value in order to turn a profit thereon through facility lease agreements." (emphasis added)). Thus, another ground for dismissing Plaintiffs' claim is for failure to allege an actual taking for which just compensation is required. *See Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2168 (2019) ("So long as the property owner has some way to obtain compensation after the fact, governments need not fear that courts will enjoin their activities."); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984) ("Equitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation

that Defendants do not actually have a right under the contract to not renew leases or claim abandoned property, or have waived such rights if they do.[91] Otherwise, Defendants' claim to ownership of any hangar that is not removed after the leases expire appears to be an act within its commercial or proprietary capacity, similar to a landlord who takes possession of a previous tenant's abandoned property.[92] Thus, "[r]ather than raising a constitutional issue, the instant action involves nothing more than a garden variety contract dispute."[93] And because Plaintiffs have alleged no grounds for inferring that Defendants have taken Plaintiffs' contractual rights or otherwise prevented them from seeking relief on a contractual basis, their physical taking claim must be dismissed.[94]

### C.      Plaintiffs Have Failed to State a Regulatory Taking Claim.

Plaintiffs' third claim is that Defendants' plan to cease renewing ground leases also constitutes a regulatory taking. The parties' arguments regarding dismissal of this claim virtually echo those made regarding Plaintiffs' physical taking claim.

Regulatory takings are distinct from physical takings in that they arise when the government issues "regulations prohibiting private uses" rather than when it acquires "property

---

can be brought against the sovereign subsequent to the taking."); *Custer Cnty. Action Ass'n v. Garvey*, 256 F.3d 1024, 1042 (10th Cir. 2001) ("The Fifth Amendment does not preclude the taking of private property for public use. Rather, it requires the government to justly compensate the private property owner for any authorized taking. Injunctive relief is not available under the Fifth Amendment absent an allegation the purported taking is unauthorized by law.").

[91] Indeed, one of the grounds for declaratory relief Plaintiffs allege is that Defendants have waived the abandonment provisions in the lease agreements. *See* ECF No. 7 at 22.

[92] *See Hughes Comm'ns*, 271 F.3d at 1070; *see also Janicki Logging Co. v. United States*, 36 Fed. Cl. 338, 346 (1996) (granting defendant's motion to dismiss plaintiff's takings claim and noting that, "at all times, the [government] purported to act pursuant to and consistent with the terms of the contract and never suggested that it was not bound by each term in the contract").

[93] *See Janicki Logging*, 36 Fed. Cl. at 346.

[94] *See Cross Continent Dev.*, 742 F. Supp. 2d at 1184.

for public use."[95] A *per se* regulatory taking—or categorical taking—occurs in "the extraordinary circumstance when *no* productive or economically beneficial use of land is permitted" due to government regulation.[96] "Anything less than a complete elimination of value, or a total loss," from government regulation must be analyzed under the framework set forth in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978).[97] "The major factors under the [*Penn Central*] inquiry are (1) '[t]he economic impact of the regulation on the claimant,' (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations,' and (3) 'the character of the governmental action."[98] A plaintiff seeking to establish a regulatory taking has a "heavy burden."[99]

Plaintiffs allege that Title 8 of the Ogden City Municipal Code, as amended, effects a regulatory taking of their property interest in their hangars.[100] Specifically, Plaintiffs allege that Title 8 denies them "of an economically viable use of their hangars."[101] This conclusory allegation is not enough,[102] however, as Plaintiffs allege no specific way in which Title 8 impacts

---

[95] *Tahoe-Sierra*, 535 U.S. at 323; *see also Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021) (noting that a regulatory taking occurs "[w]hen the government, rather than appropriating private property for itself or a third party, instead imposes regulations that restrict an owner's ability to use his own property"); *Blundell v. Elliott*, No. 1:20-cv-00143-RJS-DBP, 2021WL 4473426, at *7 (D. Utah Sept. 30, 2021) (noting that regulatory takings "stem from government-imposed regulations restricting an owner's ability to use his own property").

[96] *Tahoe-Sierra*, 535 U.S. at 330.

[97] *Id.*

[98] *Ramsey Winch, Inc. v. Henry*, 555 F.3d 1199, 1210 (10th Cir. 2009) (quoting *Penn Central*, 438 U.S. at 124).

[99] *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 375 (2d Cir. 2006).

[100] ECF No. 7 at 21.

[101] *Id.*

[102] *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) ("[I]n examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable.").

their use of the hangars for the duration of their ownership. It appears that while Plaintiffs'

current ground leases are in effect, Title 8 has no effect on Plaintiffs' right to possess, exclude

people from, derive income from, sell, demolish, or remove their hangars. Although Title 8 may

ultimately affect who owns and can use the hangars if leases are not renewed and the hangars are

not removed, it does not "interfere in any way with the present uses of the" hangars.[103]

Moreover, Title 8 does not appear to have any effect on Plaintiffs' ownership rights to

their hangars. It does not change the fact that they own the hangars for the duration of their

current leases. Nor does it prevent them from removing the hangars from the leased grounds

once the leases expire. Plaintiffs have alleged no grounds for inferring that Title 8 affects

Plaintiffs' or Defendants' rights to the hangars in any way that is not already envisioned by the

contract between them. Title 8 appears to do no more than enable Defendants to exercise their

rights under the lease agreements to their fullest. Plaintiffs' regulatory taking claim is not

plausible.

For these reasons, Plaintiffs' regulatory taking claim must be dismissed.

### D.      Plaintiffs Have Failed to State a Claim Under 42 U.S.C. § 1983.

Plaintiffs' fourth claim is brought under 42 U.S.C. § 1983.[104] They allege that Defendants

unlawfully deprived them of access to Ogden City Airport in violation of federal law by revoking

or disabling their security badges.[105]

Defendants argue that Plaintiffs' § 1983 claim should be dismissed because, as with

Plaintiffs' taking claims, Plaintiffs have alleged no more than a common breach of contract

---

[103] *See Penn Central*, 438 U.S. at 136.

[104] ECF No. 7 at 21–22.

[105] *Id.*

claim, and the United States Supreme Court has held that such claims "do[] not give rise to a claim under 42 U.S.C. § 1983."[106] Defendants also argue dismissal is warranted because Plaintiffs have failed to exhaust available administrative remedies.[107]

"Section 1983 provides that a person acting under color of state law who 'subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.'"[108] "The statute 'is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred.'"[109] "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'"[110] "It is now settled that nothing 'short of an unambiguously conferred right' will support a cause of action under § 1983."[111]

Plaintiffs assert that Defendants, by using the security badges it has issued to penalize and retaliate against hangar owners, have violated Plaintiffs' federal rights under 49 C.F.R. § 1540.105.[112] Section 1540.105(a)(3), which is titled "Security responsibilities of employees and other persons," provides that "[n]o person may . . . [u]se, allow to be used, or cause to be used, any airport-issued or airport-approved access medium or identification medium that

---

[106] ECF No. 11 at 24.

[107] *Id.* at 25.

[108] *Margheim v. Buljko*, 855 F.3d 1077, 1084 (10th Cir. 2017) (quoting 42 U.S.C. § 1983).

[109] *Id.* (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

[110] *Baker*, 443 U.S. at 140 (quoting 42 U.S.C. § 1983).

[111] *Doe v. Gillespie*, 867 F.3d 1034, 1040 (8th Cir. 2017) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002)).

[112] Plaintiffs' Amended Complaint cites Title 29 of the Code of Federal Regulations, but it is evident to the court that Plaintiffs are actually citing Title 49, which covers federal regulations concerning transportation.

authorizes the access, presence, or movement of persons or vehicles in secured areas, AOA's, or SIDA's in any other manner than that for which it was issued by the appropriate authority under this subchapter."

It is evident that § 1540.105 promotes aviation security and prohibits conduct that could compromise such security. On its face, however, § 1540.105(a)(3) does not confer on individuals any specific right, let alone one that does so "unambiguously."[113] Accordingly, Plaintiffs have failed to sufficiently allege a specific right of which they have been denied, and their § 1983 claim for unauthorized deprivation of airport access must be dismissed.

### E.      Plaintiffs Have Alleged No Basis for the Court to Exercise Jurisdiction Over their Claim for Declaratory Relief.

Plaintiffs' fifth and final claim is for declaratory relief under the Declaratory Judgment Act.[114] In addition to claiming that they are entitled to declaratory relief on all their other claims, Plaintiffs claim that they are also entitled to a declaratory judgment finding that Defendants waived their rights under the ground lease agreements and created a protectable reliance interest in Plaintiffs through their historical course of conduct.[115]

The court must dismiss Plaintiffs' claim for lack of jurisdiction.[116] The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party."  The Act thus allows federal

---

[113] *Doe*, 867 F.3d at 1040.

[114] ECF No. 7 at 22.

[115] *Id.*

[116] *See Citizens Concerned for Separation of Church & State v. City & Cty. of Denver*, 628 F.2d 1289, 1301 (10th Cir. 1980) ("A federal court must in every case, and at every stage of the proceeding, satisfy itself as to its own jurisdiction . . . .").

courts to provide relief to plaintiffs by recognizing their rights, even if they do not seek to immediately enforce them.[117] However, it is important to remember that "[t]he operation of the Declaratory Judgment Act is procedural only," meaning that even though it "enlarged the ranges of remedies available in the federal courts," it "did not extend their jurisdiction."[118] Thus, the court does not have "power to issue declaratory judgments" unless there is "some independent basis of jurisdiction" for doing so, namely diversity jurisdiction or federal question jurisdiction.[119]

Here, the court has no independent basis of jurisdiction to consider Plaintiffs' claims for declaratory relief. Although Plaintiffs' first four claims invoked the court's federal question jurisdiction, the court's dismissal of those substantive claims means that Plaintiffs' "request for declaratory relief in relation to those claims is not viable."[120] And while Plaintiffs seek declaratory relief on two issues not directly related to another claim—the waiver and reliance issues—Plaintiffs have not provided, nor can the court find, independent grounds for exercising jurisdiction over them. Waiver and reliance are questions of state law, and thus do not invoke federal question jurisdiction. And the parties here are not diverse, so the court cannot exercise diversity jurisdiction. Therefore, the court does not have jurisdiction to provide the declaratory relief Plaintiffs seek and their claims must be dismissed.[121]

---

[117] *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Before the Act, "a federal court would entertain a suit on a contract only if the plaintiff asked for an immediately enforceable remedy like money damages or an injunction." *Id.*

[118] *Id.* (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937)).

[119] *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 964 (10th Cir. 1996).

[120] *Long v. Wells Fargo Bank, N.A.*, 670 F. App'x 670, 671 (10th Cir. 2016) (unpublished) (explaining that "[t]he availability of declaratory relief 'presupposes the existence of a judicially remediable right,'" and no "'judicially remediable right' exists" when the plaintiff's "substantive claims have failed" and been dismissed (citation omitted)).

[121] *See also Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1238 (10th Cir. 2020) ("The Supreme Court has encouraged the practice of dismissing state claims or remanding

### III.   Plaintiffs May Seek Leave to File a Motion to Amend Complaint.

In Plaintiffs' Opposition to Defendants' Motion to Dismiss, Plaintiffs requested that the court grant them leave to file a second amended complaint if the court dismisses their claims.[122] Under Federal Rule of Civil Procedure 15(a)(2), a party may amend its pleadings after the time for amending as a matter of course "with the court's leave." The rule instructs the court to "freely give leave when justice so requires."[123] The Tenth Circuit has further instructed that "[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[124]

The court finds that it is in the interests of justice to allow Plaintiffs an opportunity to amend, if they have good cause to do so, though they must seek such an opportunity through a separate motion.[125] If Plaintiffs elect to file a motion seeking leave to amend, it must be filed with the court within 14 days of entry of this order.

### ORDER

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART. Defendants' motion to dismiss for lack of subject-matter jurisdiction is DENIED and its motion to dismiss for failure to state a claim upon which relief can be granted is GRANTED.

---

them to state court when the federal claims to which they are supplemental have dropped out before trial.").

[122] ECF No. 16 at 2.

[123] Fed. R. Civ. P. 15(a)(2).

[124] *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

[125] *See* DUCivR 7-1(a)(3); DUCivR 15-1.

Plaintiffs may file a motion seeking leave to file an amended complaint if they so desire within 14 days of this order.

DATED January 11, 2022.

BY THE COURT

_____
David Barlow
United States District Judge