IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| OGDEN REGIONAL AIRPORT ASSOCIATION, INC. *et al.*, individually and on behalf of similarly situated individuals,<br><br>    Plaintiffs,<br><br>v.<br><br><br>OGDEN CITY AIRPORT, OGDEN CITY, and BRYANT GARRETT, in his capacity as manager of the Ogden City Airport,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER DENYING [103] DEFENDANTS' MOTION FOR ATTORNEY FEES<br><br><br>Case No. 1:21-cv-00075-DBB<br><br><br>Judge David Barlow<br><br>Magistrate Judge Cecilia M. Romero |

Before the court is Defendants Ogden City Airport, Ogden City, and Bryant Garretts' (Defendants) Motion for Attorney Fees (Motion) (ECF 103). The Motion was filed on August 9, 2022, and referred to the undersigned on October 25, 2022 (ECF 126). Plaintiffs filed their Opposition (ECF 114) to the Motion and Defendants thereafter filed their Reply (ECF 125). Having carefully considered the relevant filings, the court finds that oral argument is not necessary and decides this matter on the written memoranda. *See* DUCivR 7-1(g). The court DENIES Defendants' Motion for the reasons stated below.

## I.    BACKGROUND

Plaintiffs filed their first Complaint on May 26, 2021 (ECF 2), and their Amended Complaint on June 15, 2021 (ECF 7). The Amended Complaint contained five claims for relief for: (1) promissory estoppel; (2) physical takings under the Fifth and Fourteenth Amendments; (3) regulatory takings under the Fifth and Fourteenth Amendments; (4) a 42 U.S.C. § 1983 claim alleging unauthorized deprivation of airport access; and (5) declaratory relief claim under 28

1

U.S.C. § 2201 (*id.* at 18–22). Defendants filed a Motion to Dismiss the Amended Complaint for lack of subject matter jurisdiction and failure to state a claim (ECF 11). The court issued an order on January 11, 2022 (the First Order) (ECF 46) granting dismissal for failure to state a claim and permitting Plaintiffs fourteen days to file a motion for leave to amend (*id.* at 24–25).

The parties filed a stipulated motion (ECF 55) to allow Plaintiffs' Second Amended Complaint, which the court granted (ECF 56). The Second Amended Complaint (ECF 57) contained eight claims for relief for: (1) promissory estoppel; (2) physical takings under the Fifth and Fourteenth Amendments; (3) regulatory takings under the Fifth and Fourteenth Amendments; (4) a 42 U.S.C. § 1983 claim alleging retaliation in violation of the First Amendment; (5) breach of contract; (6) breach of the covenant of good and fair dealing; (7) declaratory relief under 28 U.S.C. § 2201; and (8) a 42 U.S.C. § 1983 claim alleging liability based on an official policy, practice or custom that violates the law (*id.* at 26–36). Defendants again moved to dismiss the Second Amended Complaint (ECF 61). On July 11, 2022, the court issued its order (the Second Order) (ECF 98) dismissing all the federal and constitutional claims for failure to state a claim and declining to maintain supplemental jurisdiction over Plaintiffs' state law claims (*id.* at 1).

Defendants' Motion requests $77,719.25 as the costs and fees incurred in this case (ECF 103 at 1). Defendants argue they are entitled to attorney fees because they were the prevailing party in this action and because of two attorney fee provisions in lease agreements that allow the prevailing party to recover attorney fees (ECF 103 at 3). Defendants assert the attorney fee provisions permit recovery of fees because, despite Plaintiffs largely not seeking relief under either lease agreement, most of their claims "consisted of claims for breach of the lease agreements cloaked as claims" under other causes of actions (*id.* at 4; *see also* ECF 57-2 at 17 and 108). Defendants further argue they are entitled to attorney fees because "[t]he entirety of the lawsuit

has been dismissed, twice," the claims dismissed for lack of jurisdiction were dismissed because the application of the lease agreements made it so they "could not survive," and because "there were no amounts awarded on any of the claims (*id.* at 8). Defendants also argue they are entitled to fees as to all the successfully defended claims regardless of the reason for dismissal, and that the fees they seek to recover are "reasonable" (*id.* at 9–12).

Plaintiffs oppose the Motion and argue that Defendants' failure to "explain how each claim in the various complaints are based upon or related to a contract claim" makes it so that Defendants cannot meet their burden of proof for attorney fees (ECF 114). The first attorney fees provision (First Contract) (*see* ECF 57-2 at 17) reads as follows:

> In the event either the Lessor of the Lessee commences legal action against the other claiming a breach or default of this Lease, the prevailing party in such litigation shall be entitled to recover from the other reasonable attorney fees and all costs connected with said litigation.

Plaintiffs argue Defendants are not entitled to attorney fees under the First Contract and the Amended Complaint because the Amended Complaint lacked breach or default of contract claims (ECF 114 at 6). With respect to the Second Amended Complaint, Plaintiffs argue Defendants are not entitled to any attorney fees under the First Contract because most of the claims in the Second Amended Complaint did not involve breach or default of contract claims, and those that were related to the First Contract failed not on their merits but because the court refused to extend supplemental jurisdiction over them (*id.* at 7–8).

The second attorney fees contract provision (Second Contract) (ECF 57-2 at 108), in relevant part, allows for attorney fees recovery under the following circumstances:

> If any action is brought to recover any rent or other amount under this Agreement because of any default under this Agreement, to enforce or interpret any of the provisions of this Agreement, or for recovery of possession of the Premises, the party prevailing in such action shall be entitled to recover from the other party reasonable attorney fees, court costs, the fees of experts and other professionals,

3

>and other costs arising from such action (including those incurred in connection with any appeal).

Plaintiffs argue Defendants are not entitled to attorney fees under the Second Contract because the underlying claims in the Second Amended Complaint are not "based upon or related to default, enforcement or interpretation of the agreement, and/or recovery of the premises" (ECF 114 at 8).

Alternatively, Plaintiffs argue any awarded fees should be apportioned to only those claims "related to the leases' attorney fee provisions" and that were dismissed with prejudice (*id.* at 13). In addition, Plaintiffs argue that Defendants' requested attorney fees are not reasonable and not supported by evidence because the attorneys' hourly rates are too high and the submitted "time entries do not allocate their fees with respect to Plaintiffs' separate claims" (*id.* at 15).

Defendants' Reply argues they are entitled to attorney fees under both the First and Second Contracts (hereinafter, the Contracts) and both Complaints because Plaintiffs' "non-contractual causes of action were nothing more than thinly veiled allegations," and it would be impossible to apportion amounts spent in defending the non-contractual causes of action tied to the Contracts (ECF 125 at 3). Defendants also argue the Contracts apply to all Plaintiffs because "Plaintiffs voluntarily and purposefully chose to merge their interests" to keep the lawsuit as a class action (*id.* at 4). Further, Defendants argue attorney fees are appropriate under the Second Contract because the Second Order required, "at a minimum, an *interpretation* of the Contracts" in dismissing the claims (*id.* at 5). Defendants assert that apportionment of fees depending on whether a claim was dismissed with or without prejudice is not required under Utah law (*id.* at 6–9). That "the dates and descriptions of the entries" regarding the time spent on this case by Defendants' attorneys provide sufficient "information to accurately reflect the reason for each charge" (*id.* at 9). And that the rates charged by Defendants attorneys are reasonable (*id.* at 9–10).

## II.     LEGAL STANDARD

Whenever the recovery of attorney fees is tied to a state law cause of action and to the outcome of the litigation, the issue is considered substantive and state law therefore applies. *See Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 460 (10th Cir. 2017) (applying the *Erie* doctrine, differentiating between substantive and procedural attorney fee requests, and holding state law governs when the requested attorney fees are tied to state-created rights and obligations and the outcome of litigation). Under Utah law, "a party may recover attorney fees only when provided for by statute or contract—the so-called American Rule." *USA Power, LLC v. PacifiCorp*, 372 P.3d 629, 662 (Utah 2016). "If the legal right to attorney fees is established by contract, Utah law requires the court to apply the contractual attorney fee provision strictly in accordance with the contract's terms." *Express Recovery Servs. V. Olson*, 397 P.3d 792, 794 (Utah Ct. App. 2017) (quoting *Hahnel v. Duchesne Land, LC*, 305 P.3d 208, 212 (Utah Ct. App. 2013)).

To determine if attorney fees should be awarded for a Utah state law cause of action, the Tenth Circuit applies Utah law to the prevailing party analysis. *Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227, 1239 (10th Cir. 2018). Under Utah law, the prevailing party inquiry is determined through a "flexible" and "common sense" approach. *Neff v. Neff*, 247 P.3d 380, 399 (Utah 2011). This approach requires a case-by-case evaluation of several factors, including: (i) the language of the provision that awards the attorney fees, (ii) the number of claims brought by the parties, (iii) the importance of each claim relative to the litigation as a whole, and (iv) the amounts awarded on each claim. *Id.* at 398. The court has "broad discretion" when conducting the prevailing party inquiry. *Anderson & Karrenberg v. Jerry Warnick*, 289 P.3d 600, 604 (Utah Ct. App. 2012).

### III.  DISCUSSION

This Motion first presents questions of contract interpretation. Although not cited by either party, the case of *Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, No. 2:13-CV-00204-DN, 2017 WL 3382066, at *5 (D. Utah Aug. 4, 2017) is helpful for this court's analysis. *Global Fitness* also looked to Utah law in addressing competing interpretations of an attorney fees provision, which in relevant part read:

> In the event that either party hereto is successful in any legal action or the defense thereof with regard to this Agreement, there will be included in the judgment or decree the reasonable expenses and attorney's fees of the successful party.

*Id.* According to Global Fitness Holdings, the provision applied "only to the parties' contract claims and defenses." *Id.* Federal Recovery Acceptance, however, argued that the contract provision applied "to all claims and defenses because the entire case was 'with regard to' the parties' contracts." *Id.* Because of the parties' dispute on the scope of the contract's provision, the court first looked at the plain meaning of the provision before determining the prevailing party under Utah law. *Id.* at 5–6. The court concluded that the contract's provision was broad enough to cover "legal actions beyond those seeking only a contract's enforcement, termination, or the remedying of a contractual default" and thus "all the parties' claims and defenses" were considered in determining the "successful party." *Id.* at 6. In this case, because the scope of the Contracts is disputed, the court begins by looking at the plain language of the Contracts to determine which claims, if any, may be considered in the prevailing party analysis.

**A. The Plain Language of the Contracts is Narrow and Does not Encompass all of Plaintiffs' Claims for Attorney Fees.**

Defendants argue they are entitled to attorney fees because most of Plaintiffs' claims "consisted of claims for breach of the lease agreements cloaked as claims" under other causes of actions (ECF 103 at 4). Plaintiffs respond that neither of the Contracts give Defendants paths for

attorney fees because all but two of the claims in both Complaints were claims for breach or default of contract and those claims were not dismissed on their merits (ECF 114 at 8). The court turns to the language of the First and Second Contracts.

The First Contract is very narrow as to the types of claims for which a prevailing party in litigation may be able to recover attorney fees. It only covers claims of "breach or default" from the respective lease agreement (ECF 103 at 4). Plaintiffs did not assert any breach or default claims in the Amended Complaint and had only two breach of contract claims in the Second Amended Complaint (the fifth claim for breach of contract and the sixth for breach of the covenant of good faith and fair dealing). While Defendants focus on their use of the lease agreements as a defense to determine if the claims were viable, the plain language of the First Contract does not authorize an award in such circumstances. Under the strict application this court must use when interpreting the attorney fee provision, only Plaintiffs' breach of contract and breach of the covenant of good faith and fair dealing claims in the Second Amended Complaint can be considered in the prevailing party analysis under the First Contract (ECF 57 at 32–34). *See Olson*, 397 P.3d at 794 (Utah law requires courts to apply contractual attorney fee provisions "strictly" to the contract's terms).

The Second Contract is broader and does encompasses other types of claims, but the additional types of claims the Second Contract covers were not brought by Plaintiffs. The court focuses on the "to enforce or interpret any of the provisions of this Agreement" language for the subsequent analysis as this is the language Defendants focus on, and none of the claims in either of the Complaints relate to the recovery of rent or the recovery of premises as outlined by the Second Contract (ECF 57-2 at 108; ECF 125 at 5).

Defendants argue that the claims raised by Plaintiffs fall under the First and Second Contracts because "both complaints were at least rooted in the claim that Defendants had

breached" the lease agreements and that "at a minimum" the court's Orders required interpretation of the Contracts (ECF 103 at 4; ECF 125 at 5). However, the claims brought by Plaintiffs in the Second Amended Contract still fall outside the scope of the First and Second Contracts. The First and Second Contracts are not broad like in *Global Fitness* and are very specific as to the claims that are compensable. *See* 2017 WL 3382066, at *6. The court cannot add meaning to the plain words of the Contracts. Even if most of Plaintiffs' claims are related to, or even rooted in a breach of contract claim, strictly applying the Contracts, Plaintiffs' claims fall outside of the Contracts as most are not about breaching or defaulting on the contract directly.

Looking at the language of the Second Contract more closely, "to interpret" means "to explain or tell the meaning of: present in understandable terms."[1] None of the claims in either of the Complaints relate to some ambiguity or misunderstanding in the terms of a contract that the court had to explain or tell the meaning of. Plaintiffs could have very well brought their claims with an effort to avoid triggering either of the Contracts, but this does not allow the court to add meaning to the language of either of the Contracts so that the claims could fall within their reach.

Defendants point to the court's language in the Orders in which the court states that Plaintiffs' claims lacked merit because they are more so contract claims than any other type of claim (*see* ECF 125 at 5–6). For example, the court stated in the First Order as to Plaintiff's Physical Takings Claim, "Plaintiffs have provided no grounds from which the court can reasonably infer that the lease agreement do not control Plaintiffs' property interests in their hangars" (ECF 46 at 17); and again in the Second Order also as to Plaintiff's Physical Takings Claim, "the allegations evince that any cause of action Plaintiffs may have against Defendants sounds in

---

[1] *Interpret*, Merriam-WEBSTER.COM DICTIONARY, MERRIAM-WEBSTER.

contract" (ECF 98 at 12). However, this language does not validate Defendants' assertion that the court necessarily had to interpret the contract to "determine that Plaintiffs' claims were redundant to their contractual rights" (ECF 125 at 6).

Despite the court mentioning multiple times that the contractual agreement governed the claims asserted by Plaintiffs, the physical takings claim in the First Order was ultimately dismissed because there were no allegations that Defendants had "taken Plaintiffs' contractual rights" (ECF 46 at 18). Similarly, the Second Order explicitly states that the proper contract cause of action under the physical takings claims would "require[] interpreting the parties' Agreements," not that the court had interpreted those agreements.[2] A statement from the court that the relevant claims would be more adequately pled as contract claims rather than constitutional ones does not transform the constitutional claims into contract ones. The physical and regulatory takings claims are therefore outside the scope of the First and Second Contracts.

Following this same logic, and having to strictly apply the Contracts' attorney fee provisions, the promissory estoppel claims (ECF 7 at 18; ECF 57 at 26–27), § 1983 claims (ECF 7 at 21; ECF 57 at 31–32 and 35–36), declaratory relief claims (ECF 7 at 22; ECF 57 at 35–36), in both of the Complaints fall outside the scope of the First and Second Contracts. These claims cannot be considered in the prevailing party analysis because they are not breach of contract claims nor do they directly seek to enforce or interpret any provision in either Contract. The court further notes that Defendants relied on the claims being collectively dismissed instead of explaining how each claim could have fallen within the reach of either of the Contracts. Accordingly, only

---

[2] In similar fashion, the court's analysis dismissing Regulatory Taking in the First and Second Order acknowledges the existence of a governing contract (*see* ECF 46 at 20; ECF 98 at 15). However, the regulatory taking claim in the First Order was dismissed because Title 8 had no effect on Plaintiffs' ownership rights to their hangars (ECF 46 at 20) and because of Plaintiffs' failure to address the relevant standard in the Second Order (ECF 98 at 16). Ultimately, these claims were analyzed under the relevant constitutional framework by which they were alleged.

Plaintiffs' breach of contract and breach of the covenant of good faith and fair dealing claims in the Second Amended Complaint can be considered in the prevailing party analysis under the First Contract (ECF 57 at 32–33). However, for the reasons stated below, the court does not reach the prevailing party analysis as to Plaintiffs' breach of contract claims.

### B. Plaintiffs' Breach of Contract Claim was not Dismissed on its Merits and the Court Therefore Declines to Grant Attorney Fees for its Defense.

Before reaching the prevailing party analysis as to Plaintiffs' breach of contract and breach of the covenant of good faith and fair dealing claims, the court considers Plaintiffs' argument that the court should decline to grant attorney fees to Defendants because the court declined to exercise supplemental jurisdiction over the state law contract claims (ECF 114 at 10–12; ECF 125 at 6). Plaintiffs cite to *Johnson v. Heath*, No. 2:17-CV-00416, 2020 WL 4747828, at *3 (D. Utah Aug. 17, 2020), *aff'd on other grounds,* 56 F.4th 851 (10th Cir. 2022), and *Major v. Valderra Dev., LLC*, No. 2:17-CV-00974-DN, 2019 WL 399154, at *4 (D. Utah Jan. 31, 2019), to support their argument. Defendants argue the Plaintiffs' cases are not binding and the court should instead follow *Knight Adjustment Bureau v. Funaro*, 495 P.3d 221, 228 (Utah 2021), and *Giles v. Min. Res. Int'l, Inc.*, 338 P.3d 825, 831 (Utah Ct. App. 2014).

The court is persuaded by Plaintiffs' cases and declines Defendants' request for attorney fees. In *Johnson*, the court concluded that the defendants there were "not entitled to attorney fees under" a purchase agreement because the court "declined to exercise jurisdiction over the state law claims" brought by Plaintiff and thus "neither party prevailed on a claim under which Plaintiff sought recission." 2020 WL 4747828, at *3. In *Major*, the court granted attorney fees to defendants as to plaintiff's first and fourth causes of actions because those claims were actions to enforce the declaration in question but held that the second and third causes of action were "non-compensable" because they were dismissed for lack of subject matter jurisdiction. 2019 WL 399154, at *5. Like

those cases, here, the breach of contract and breach of the covenant of good faith and fair dealing claims were dismissed because the court declined to extend supplemental jurisdiction and not on the claims' merits. The court finds that the reasoning in *Johnson* and *Major* is persuasive. Defendants' defense of Plaintiffs' breach of contract claim is non-compensable because the claims was merely dismissed for lacking subject matter jurisdiction.

The cases cited by Defendants are inapposite. In *Furano*, the Utah Court of Appeals held that a court could consider and rule on defendant's motion for attorney fees despite lacking subject matter jurisdiction over a defendant. 495 P.3d at 228. Regardless, the court there explicitly refrained for expressing an opinion on whether that defendant was entitled to attorney fees or not. *Id.* This court is not stating that it lacks jurisdiction to award fees on the breach of contract claims, but rather rejects the request to grant fees because the claim was dismissed based on supplemental jurisdiction. Moreover, although some claims may be compensable despite the fact that they were dismissed without prejudice, as stated in *Giles*, this does not change the court's holding that the breach of contract claim is non-compensable here. 338 P.3d 825, 830–31 (highlighting the broadness of the attorney fees provision at issue in that case).

## IV. CONCLUSION

For the reasons stated above, the court DENIES Defendants' Motion for Attorney Fees (ECF 103).

DATED this 26 September 2023.

*Cecilia M. Romero*
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah